**IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT**
**IN AND FOR ST. JOHNS COUNTY, FLORIDA**

SOUTHEAST DEVELOPMENT
PARTNERS, LLC and SOUTHEAST
LAND VENTURES, LLC,

       Plaintiffs,                             Case No. 2023-CA-306

vs.

ST. JOHNS COUNTY, FLORIDA

       Defendant/Third-Party Plaintiff,

vs.

DAY LATE ENTERPRISES, INC.
and SOUTHEAST LAND VENTURES,
LLC,

       Third-Party Defendants.
_____/

**AMENDED COMPLAINT**
**FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**

Plaintiffs SOUTHEAST DEVELOPMENT PARTNERS, LLC (**"SEDP"**) and

SOUTHEAST LAND VENTURES, LLC (**"SELV"**) (collectively, **"PLAINTIFFS"**) file this

Amended Complaint for Declaratory, Injunctive, and Other Relief against ST. JOHNS COUNTY,

FLORIDA (**"COUNTY"**), stating as follows:

**THE NEED FOR THIS AMENDED COMPLAINT**

1.     This Amended Complaint for Declaratory, Injunctive, and Other Relief

(**"Complaint"**) is required due to the County's obfuscation and delay in responding to garden-

variety public records requests.[1] Now that those records are coming to light from other agencies,

it is clear why the County seemingly prefers they not exist: the documents lay bare the County's

---

[1]     SEDP was forced to file a separate action due to the County's multiple violations of chapter
119. *See Southeast Development Partners, LLC v. St. Johns County*, Case No. CA23-1265.

unlawful attempt to seize more than $5 million as part of the County's extortionate Proportionate Fair Share Program (the **"Program"**).

2.      As detailed below, SEDP and the County entered into the Concurrency and Impact Fee Credit Agreement for the Grand Oaks Planned Unit Development (the **"Agreement"**) wherein SEDP would pay approximately $15 million toward roadway improvements purportedly to address the anticipated impacts of the Grand Oaks Planned Unit Development (the **"Grand Oaks PUD"** or the **"Project"**). After construction costs for those improvements skyrocketed to approximately $57 million, on February 21, 2023, the County claimed SEDP was in default of the Agreement for failing to spend $57 million on the construction. The County's own records make clear that this default finding was mere pretext.

3.      More than a year prior, in a series of emails, the County's Transportation Development Manager advised the County: "[SEDP is] committed to provide $15 million so that the applicant can widen SR 16 to 4-lane (from San Giacomo to its Eastern entrance)." He then confirmed "as long as [SEDP complies and pays] for required proportionate share then *we (SJC) cannot require them to pay more than their prop share amount*," and that "[t]here were thresholds in place to trigger commencement of the widening but *those thresholds have not been met* so at this time, we have no scheduled timeline for construction." *See* **Exhibit E** attached hereto and incorporated herein (emphasis added).

4.      Not only was the County aware that it could not legally force SEDP to construct $57 million in roadway improvements, but it also knew that any obligation to fund construction (beyond the $5 million paid so far) had not yet been triggered. The claimed default was nothing more than a sham to facilitate the County's unlawful confiscation of over $5 million in payments made under the Agreement, which should have been protected in an escrow account but was not.

2

## NATURE OF THE ACTION

5.      This is an action for declaratory and injunctive relief concerning a manufactured and erroneous decision by the St. Johns County Board of County Commissioners (the **"Commission"**) finding SEDP in default of the Agreement and improperly directing disbursement of more than $5 million purportedly held in escrow.

6.      This is also an action against the County for breach of the Agreement, for injunctive relief prohibiting disbursement of the escrow funds, for inverse condemnation, and for violations of due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution.

7.      Plaintiffs seek: (i) a declaration that the County's default finding is improper; (ii) an order enjoining the County's breaches of the Agreement, including a permanent injunction prohibiting the County from disbursing and/or transferring escrow funds; (iii) compensation for the County's unlawful taking of property in violation of Article X, Section 6(a) of the Florida Constitution; and (iv) damages for the County's violations of the due process protections provided by the Fifth and Fourteenth Amendments to the U.S. Constitution.

## PARTIES

8.      SEDP is a Florida limited liability company and the applicant for the Grand Oaks PUD located in unincorporated St. Johns County, Florida.

9.      SELV is a Florida limited liability company and the assignee of certain development rights in the Grand Oaks PUD located in unincorporated St. Johns County, Florida.

10.      The County is a political subdivision of the State of Florida and is responsible, through its Commission, for enacting and applying the County's Land Development Code (**"LDC"**), including the Program.

3

11.     Pursuant to *England v. State Board of Medical Examiners*, <u>375 U.S. 411</u> (1964), Plaintiffs respectfully reserve the right to have the U.S. District Court independently address any and all available federal claims not expressly raised herein.

## JURISDICTION AND VENUE

12.     This is an action for declaratory relief pursuant to chapter 86, Florida Statutes, to determine the validity and enforceability of the County's erroneous default finding. The Court has jurisdiction to grant declaratory relief. §§ 86.011, 86.021, 86.101, Fla. Stat. The amount in controversy exceeds $50,000.00 exclusive of interest, fees, and recoverable costs.

13.     This action further seeks injunctive relief to bar enforcement of the County's erroneous default finding and to enjoin the County's breaches of the Agreement. The Court has jurisdiction to grant injunctive relief. Art. V § 20, Fla. Const.; § 26.012(3), Fla. Stat.

14.     This is also an action for inverse condemnation for the unlawful taking of property without just compensation.  This Court has jurisdiction pursuant to Art. V § 5, Fla. Const.; Art. 10 § 6, Fla. Const.; and §§ 26.012(2) and 86.011, Fla. Stat.

15.     Finally, this is an action under <u>42 U.S.C. §§ 1983</u> and <u>1988</u> seeking declaratory relief and damages against the County for violating due process rights guaranteed by the U.S. Constitution.  This Court has concurrent jurisdiction to grant declaratory relief for claims arising under <u>42 U.S.C. §§ 1983</u> and <u>1988</u>.  §§ 86.011, 86.021, 86.101, Fla. Stat.  *Lloyd v. Page*, <u>474 So. 2d 865</u> (Fla. 1st DCA 1985); *Howlett By and Through Howlett v. Rose*, <u>496 U.S. 356, 358</u> (1990).

16.     Venue is proper in this Court because the Defendant resides, the cause of action accrued, and the subject property is located in St. Johns County, Florida. § 47.011, Fla. Stat.

17.     All conditions precedent to the institution of this lawsuit have occurred, been performed, or been waived.

## GENERAL ALLEGATIONS

18.     The Florida Constitution grants non-charter counties – like St. Johns County – broad power of self-government. That power is not unlimited. Counties may only enact ordinances to the extent "not inconsistent with general or special law." Art. VIII § 1(f), Fla. Const.; *see also* § 125.01(1), Fla. Stat.

19.     Local governments are further limited by the due process clauses of the Federal and Florida Constitutions, both of which prohibit government from taking private property without just compensation. One of the primary purposes of the takings clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). This includes the burden of providing and maintaining critical infrastructure to serve the needs of the public.

## I.     *Transportation Concurrency and the County's Proportionate Share Program.*

20.     Concurrency is a process by which local governments ensure that public facilities and services (*e.g.*, roads, utilities, parks, libraries, etc.) will be adequate to meet the demands of new development. The concurrency process is set forth in section 163.3180, Florida Statutes.

21.     Generally, if existing public facilities and services are inadequate to meet the demand, a development may not be able to proceed unless the developer agrees to pay for a proportionate share of the costs to expand the facilities or services. This payment is mitigation for the impacts of the development on those facilities or services.

22.     Florida law does not *require* local governments to implement concurrency for transportation facilities. However, if a local government *chooses* to do so, section 163.3180 includes mandatory guidelines designed to balance mitigation of the development's impacts on transportation facilities with the developer's constitutionally protected due process rights.

23.     As relevant here, if a local government chooses to implement transportation concurrency, it must allow developers to mitigate impacts by entering into an agreement "to pay for or construct its proportionate share of required improvements." § 163.3180(5)(h)1.c., Fla. Stat. These proportionate share agreements typically require: (1) the developer to make a payment or construct a transportation improvement to mitigate the development's impacts on transportation facilities; (2) the local government to issue a transportation concurrency certificate for the development; and (3) the local government to provide the developer with road impact fee credits for its proportionate share contribution on a dollar-for-dollar basis.[2] *Id.* at § 163.3180(5)(h)2.e.

24.     Importantly – to ensure protection of the developer's property rights – "a local government may not require payment or construction of transportation facilities whose costs would be greater than a development's proportionate share of the improvements necessary to mitigate the development's impacts." *Id.* at § 163.3180(5)(h)2.

25.     The local government may not hold the developer responsible for the cost of eliminating transportation deficiencies that exist independent of the proposed development. *Id.* Funding correction of existing roadway deficiencies is the responsibility of the public entity that maintains the roadway – not the development community. *Id.* at § 163.3180(5)(h)2.b.

26.     Section 163.3180(5)(h)2.b., Florida Statutes, provides additional guidance as to how proportionate share is calculated if a development will impact a roadway that is already

---

[2]     To ensure developers are not charged twice for the same improvement, local governments provide impact fee credits in exchange for proportionate share contribution. Impact fee credits are issued to developers who contribute proportionate share for improvements that would otherwise be covered by the local government's impact fee system. These credits are created at the time of contribution and applied in the future to offset against the development's impact fee obligations. The developer's proportionate share contribution "must be applied on a dollar-for-dollar basis at fair market value to reduce any impact fee collected for the general category or class of public facilities or infrastructure for which the contribution was made." § 163.31801(5)(a), Fla. Stat.

deficient independent of the proposed development. For those roadways determined to be deficient without the development under review, "the costs of correcting that deficiency *shall be removed from the project's proportionate-share calculation* and the necessary transportation improvements to correct the deficiency *shall be considered to be in place for purposes of the proportionate-share calculation*." (Emphasis added). This methodology ensures that developers are not required to pay more than the development's proportionate share necessary to mitigate impacts. Put another way, Florida law mandates that a developer cannot be held liable for impacts not caused by its development and any attempt by a local government to exact more is unlawful.

27.     In addition to the statutory safeguards prohibiting a local government from demanding more than a development's proportionate share, the exaction of roadway improvements as a condition of development approval is also subject to scrutiny under the U.S. Supreme Court's "Essential Nexus/Rough Proportionality" test. In order for a local government to impose conditions on issuance of a permit without effecting a taking, the local government must demonstrate: (1) an "essential nexus" between the exaction and a legitimate public purpose for which the exaction is being imposed; and (2) that the exaction is "roughly proportionate" to the impacts of the proposed development. *Nollan v. California Coastal Commission*, 483 U.S. 825, 837 (1987); *Dolan v. Tigard*, 512 U.S. 374, 391 (1994).

28.     The County implements transportation concurrency through its Program, codified as part 11.09.00 of the County's LDC. The Program "provides a method by which the impacts of development on transportation facilities can be mitigated by the cooperative efforts of the public and private sectors," and "allows developers to proceed under certain conditions, notwithstanding the failure of transportation concurrency, by contributing their proportionate fair share of the cost of a transportation facility." LDC § 11.09.02.

29.     Pursuant to the Program, developers can satisfy transportation concurrency obligations for a project by making a proportionate share contribution, which can take several forms including private funds, contributions of land, construction and contribution of facilities, or a combination thereof. *Id.* at § 11.09.06.A. The Program explicitly acknowledges that in making a proportionate share contribution, "[a] development shall not be required to pay more than its proportionate fair share," and "[t]he fair market value of the proportionate fair share mitigation for the impacted facilities shall not differ regardless of the method of mitigation." *Id.* at § 11.09.06.B.

30.     The Program includes methodologies for calculating the developer's proportionate share obligation and for determining the value of transportation improvement provided by the developer. *Id.* at §§ 11.09.06.C-D. Proportionate share contributions – regardless of form – are then applied as a credit toward the road impact fees for the project. *Id.* at § 11.09.06.E.

31.     Despite acknowledging the state law requirement that a development shall not be required to pay more than its proportionate share, the Program does exactly that. The Program's methodology for calculating proportionate share for a specific development fails to consider and remove existing roadway deficiencies as state law requires, thereby significantly inflating a developer's proportionate share obligations. The Program improperly shifts the burden of correcting existing roadway deficiencies onto private developers, in violation of state law and the due process clauses of the Federal and Florida Constitutions.

## II.     *The Concurrency and Impact Fee Credit Agreement.*

32.     Notwithstanding the Program's constitutional infirmities, developers within the County are forced to comply with its illegal provisions as a precondition of development approval. Accordingly, on September 21, 2018, SEDP and the County entered into the Agreement, attached and incorporated as **Exhibit A**. The Agreement requires SEDP to pay $15 million in exchange for

a certificate of concurrency allowing development of up to 674 non-age-restricted single-family residential units, 325 age-restricted single-family residential units, 100,000 square feet of commercial space, and 50,000 square feet of office space with related amenities. *See* Agreement ¶¶ 2.a, 3, 4.c. That certificate of concurrency, as well as all of SEDP's rights under the Agreement, was assigned to SELV as set forth in an Assignment of Development Rights dated October 1, 2018 (the **"Assignment"**) (attached and incorporated as **Exhibit B**).

33.     Under the Agreement, SEDP's $15 million payment includes $10,132,643.00 in proportionate share contribution, calculated based on "the opinion of probable construction costs estimate *to improve all deficient roadways*" within the project's impact area (the **"Proportionate Share Amount"**), and an additional $4,867,357.00 in public benefit contribution (the **"Public Benefit Contribution"**) (collectively, the **"Total Project Transportation Contribution"**). *See* Agreement ¶¶ 4.a-c. (Emphasis added).

34.     The Agreement contemplates that SEDP will use the Total Project Transportation Contribution to widen a three-mile stretch of State Road 16 between San Giacomo Road and the eastern entrance to the project (the **"SR 16 Improvements"**). *See* Agreement ¶ 4.d. However, in the event that the SR 16 Improvements are constructed or funded by some entity other than SEDP – such as the Florida Department of Transportation (**"FDOT"**) – the Total Project Transportation Contribution remains payable to the County as mitigation for the Project's impacts. *See* Agreement ¶ 4.e.v. Additionally, the County would add the SR 16 Improvements to its Five-Year Schedule of Capital Improvements at the next scheduled update. *See* Agreement ¶ 6.c.

35.     As the Project is developed, SEDP (or its assignee) is required to make payments to the County on a per unit basis at the time of plat approval up to the Total Project Transportation Contribution, with the County escrowing those payments for the SR 16 Improvements. The

Agreement mandates that the County "hold the aggregate Per Unit Payments (the 'Escrow Funds') *in a separate escrow account* (the "Escrow Account') *to be used only for the SR 16 Improvements*." *See* Agreement ¶ 4.e.iv. (emphasis added). To date, the County has accepted more than $5 million in payments under the Agreement. In exchange for these payments, the County is required to provide SEDP with road impact fee credits on a dollar for dollar basis for the first $10,132,643.00 of the Total Project Transportation Contribution. *See* Agreement ¶¶ 5, 10.

36.     The arrangement set forth in the Agreement violates state law and SEDP's due process rights. First, implementing the Program's illegal methodology, the Agreement inflates the Proportionate Share Amount by including the cost to improve existing roadway deficiencies in violation of section 163.3180(5)(h)2.b., Florida Statutes. According to estimates prepared by SEDP's transportation consultant and presented to the County, once existing roadway deficiencies are removed from the calculation as required by state law, a conservative estimate of the Project's proportionate share is less than $1 million – a more than $9 million difference.

37.     The Agreement also violates state law and SEDP's due process rights by imposing an additional Public Benefit Contribution of $4,867,357.00 beyond SEDP's already-inflated Proportionate Share Contribution. This Public Benefit Contribution far exceeds the cost to mitigate the Project's impacts, in violation of section 163.3180(5)(h)2, Florida Statutes, and constitutes an unlawful exaction. Further, SEDP does not receive impact fee credit for the Public Benefit Contribution, in violation of sections 163.3180(5)(h)2.e. and 163.31801(5)(a), Florida Statutes.

### III.     *Funding the SR 16 Improvements.*

38.     At the time the Agreement was executed, a cost estimate for the design, permitting, and construction of the SR 16 Improvements totaled $15,013,392.49 (the **"Estimated Total Cost"**). *See* Agreement ¶ 4.d. Since that time, the cost of the SR 16 Improvements has increased

unexpectedly and dramatically. SEDP's most recent design efforts concluded that the cost as of this filing is approximately *$57 million* as opposed to the $15,013,392.49 outlined in the Agreement (*i.e.*, nearly four times more than the Estimated Total Cost). Given this increase in cost, SEDP cannot fund the SR 16 Improvements through its Proportionate Share Amount or through its Total Project Transportation Contribution.

39.     Rather than spend $57 million constructing the SR 16 Improvements – which it legally and practically cannot be required to do – SEDP voluntarily engaged with FDOT and reached a conceptual agreement whereby FDOT would receive up to $15 million in funds from the County, through SEDP's Total Project Transportation Contribution, and would then commence design and widening of a longer roadway segment, inclusive of the SR 16 Improvements.

40.     The County consented to FDOT assuming responsibility for the SR 16 Improvements and communicated its "strong intent to convey, not to exceed, $15,000,000 to FDOT toward the construction of State Road 16," urging FDOT "to begin the project design phase of construction of State Road 16 by FY23 and include the completion of State Road 16 in a 5-year work plan." *See* County Letter to FDOT dated 8/2/2022, attached and incorporated as **Exhibit C**.

41.     Based on this understanding, SEDP submitted an application to the County requesting to amend the Agreement to reflect the County's consent to FDOT's commitment. If approved, the amendment would have required SEDP to expedite payment of the Total Project Transportation Contribution into escrow with the County. Those funds would then be provided to FDOT for its use in constructing the SR 16 Improvements.

42.     Despite declaring its intent to convey $15 million in funding to FDOT for the SR 16 Improvements, and despite urging FDOT to include the SR 16 Improvements in a 5-year work plan, at a public hearing on February 21, 2023, the Commission denied SEDP's request to amend

the Agreement. The Commission instead found the amendment to be inconsistent with the purpose and intent of the original Agreement, as well as inconsistent with the County's illegal Program. *See* Transcript of Commission Meeting, p. 20:5-18 (attached and incorporated as **Exhibit D**).

43.     Without notice, without having placed the issue of compliance on an agenda for consideration, and without any legal or factual support, the Commission found SEDP in default of the Agreement *for failing to spend $57 million to complete the SR 16 Improvements*. The Commission directed disbursement of more than $5 million paid by SEDP (and/or its assignees) into escrow under the Agreement and transfer of those funds to FDOT for its construction of the very same SR 16 Improvements. *See* Transcript, p. 20:20 – 22:2.

44.     The Commission's default finding is based on its absurd, extortionist, and legally unsupportable interpretation of the Agreement as requiring SEDP to construct the SR 16 Improvements regardless of cost. This erroneous interpretation – *which the County knew was incorrect* – violates SEDP's due process rights and attempts to unlawfully exact the contribution of improvements that *far exceed* SEDP's mitigation obligations. Further, it violates state law, as well as the County's own Comprehensive Plan and LDC.

### IV.     *The County's Conspiracy to Steal SEDP's Escrow Funds.*

45.     In finding SEDP in default of the Agreement, the County knowingly and willfully violated SEDP's due process rights in a coordinated effort to defraud SEDP of millions of dollars. Approximately a year prior to the default finding, the County internally reviewed SEDP's obligations under the Agreement at the request of one of the Commissioners. Specifically, the County reviewed SEDP's financial commitment as stated in the Agreement, whether a verbal commitment to construct the SR 16 Improvements could be legally enforced, and whether that

verbal committment could be reflected in a stipulated amendment to the Agreement. The response from County staff and the County Attorney was unequivocal:

> **The Grand Oaks developers are committed to provide $15 million . . . We have not captured any additional commitment since 2018.**
>
> **. . .**
>
> **[A]s long as they comply and pay for required proportionate share then we (SJC) cannot require them to pay more than their prop share amount regardless of verbal commitment.**
>
> **. . .**
>
> **We cannot stipulate to any additional commitment/payment beyond their prop share amount.**

*See* **Exhibit E** (attached hereto and incorporated herein) (emphasis added).

46. When efforts to strong-arm SEDP into acceding to its unlawful demands proved unsuccessful, the County changed course. Instead, the County – acting through its Commission – abused its legislative authority to take what it *knew* it was not legally entitled to. While the County feigned negotiating an amendment to the Agreement in good faith, it was simultaneously concocting a deal with FDOT, the terms of which the County could not perform unless it wrongfully found SEDP in default of the Agreement and seized the more than $5 million paid by SEDP (and/or its assignees) into escrow.

47. Originally, FDOT provided the County with a draft Locally Funded Agreement (**"LFA"**) that effectuated the terms of SEDP's proposed amendment. The draft LFA required the County to transfer $13 million (presumably from SEDP's Total Project Transportation Contribution) to FDOT for its use in designing and widening a segment of SR 16, inclusive of the SR 16 Improvements, by no later than May 15, 2023. However, a month *before* SEDP's request to amend the Agreement was scheduled for hearing before the Commission, the County responded

that it had $5,040,000 it could transfer to FDOT by the funding deadline – the exact amount the County was supposed to be holding in escrow under the Agreement. In other words, the County knew it was going to transfer the funds, which could only be done if it found SEDP in default.  *See* **Exhibit F** (attached and incorporated herein).

48.     The public hearing on SEDP's request to amend the Agreement concluded at 10:17 a.m.  *Four minutes later*, the County Administrator sent an email to the Director of the Office of Management & Budget stating:

> Can you please work with the Clerk, GM, and legal to coordinate the transfer of the approximately $5 million in escrow funds. Whatever documents to be signed or approved by me should be completed ASAP. Consider this a #1 priority. I believe legal has the necessary documents prepared, but you may need to come down and check with Christine or David. Thank you.

*See* **Exhibit G** (attached and incorporated herein).

49.     As a result of the County Administrator's email and subsequent efforts to transfer the $5,040,000, the *County discovered for the first time that approximately half of the funds were missing*.[3] *See* **Exhibit H** (attached and incorporated herein). Worse, *none of the funds collected by the County under the Agreement were maintained in a separate escrow account* as required. Instead, they were comingled in a balance sheet account, which allowed the County complete control of the funds while avoiding the escrow protections it had promised to SEDP.

50.     By its actions, the County knowingly and willfully violated constitutionally-protected due process rights, intentionally obstructed the Project's remaining development

---

[3]     The County lost a check from Pulte Group (SEDP's assignee) in the amount of $2,415,000, which had been submitted to the County ten months earlier as part of Pulte's plat approval. The check has since been reissued.

entitlements, and maliciously interferred with private third-party builder contracts, all while the County itself had been in material default of the Agreement since its inception.

## COUNT I
### Declaratory Judgment
### Default Finding

51.     Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 50 of this Complaint.

52.     Section 86.021, Florida Statutes, provides:

Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

53.     Plaintiffs are interested and/or in doubt concerning their rights and obligations under the Agreement. In particular, Plaintiffs contend the County's interpretation of the Agreement as requiring SEDP to construct the SR 16 Improvements regardless of cost is invalid, illegal, and unconstitutional. Plaintiffs further contend that SEDP is not in default of the Agreement.

54.     An actual, immediate, substantial, justiciable controversy exists between the parties concerning whether the County's interpretation of the Agreement is invalid, illegal, and unconstitutional, as well as whether the County's default finding is improper.

55.     There is a bona fide, actual, present, practical need for the declaration, and the rights, powers, and obligations of Plaintiffs and the County are dependent on the facts or the law applicable to the facts. The requested relief is not merely the giving of legal advice by the court or the answers to questions propounded from curiosity.

56.     The parties have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law. Plaintiffs have joined all known interested parties in this action.

57.     Plaintiffs are entitled to a declaratory judgment determining that the County's interpretation of the Agreement as requiring SEDP to construct the SR 16 Improvements regardless of cost is invalid, illegal, and unconstitutional. Plaintiffs are further entitled to a declaratory judgment determining that SEDP is not in default of the Agreement.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment declaring the County's interpretation of the Agreement invalid, illegal, and unconstitutional, declaring that SEDP is not in default of the Agreement, prohibiting the County from enforcing its default finding by means of temporary and permanent injunctive relief, and granting such other relief as this Court deems just and proper.

## COUNT II
### Breach of Contract – Injunctive Relief

58.     Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 50 of this Complaint.

59.     The County breached the Agreement by, at a minimum:

(i)     Failing to adopt the SR 16 Improvements into its Five-Year Schedule of Capital Improvements in the Capital Improvements Element of its Comprehensive Plan "at the next scheduled update" as required by Paragraph 6.c of the Agreement.

(ii)    Failing to properly account for Per Unit Payments as required by Paragraph 4.e.iv. of the Agreement.

(iii)   Failing to maintain "a separate escrow account" as required by Paragraph 4.e.iv. of the Agreement.

(iv)    Erroneously finding SEDP in default of the Agreement and directing that funds paid into escrow be disbursed and transferred to FDOT.

      (v)    Failing to cooperate with SEDP to effectuate the terms of the Agreement and failing to coordinate the performance of respective obligations under the Agreement, as required by Paragraph 22 of the Agreement.

60.    Each of the County's breaches independently goes to an essential element of the Agreement and destroys the basis of the bargain.

61.    In the event of default, Paragraph 11 of the Agreement provides that "all parties shall be entitled to all remedies available at law or in equity, including the remedies of specific performance and all forms of injunctive relief."

62.    SEDP fully performed all of its obligations required to be performed pursuant to the terms of the Agreement. Plaintiffs face a likelihood of irreparable harm if this Court does not enjoin the County's breaches of the Agreement.

63.    Plaintiffs have no adequate remedy at law, as their injuries cannot be adequately remedied through money damages against the County.

64.    The public interest strongly favors entry of an order enjoining the County's breaches of the Agreement.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order permanently enjoining the County's breaches of the Agreement, including a permanent injunction against the County prohibiting the disbursement and transfer of funds held in escrow pursuant to the Agreement, and granting such other relief as this Court deems just and proper.

## COUNT III
### Inverse Condemnation

65.    Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 50 of this Complaint.

66.    This is an action for inverse condemnation under Article X, Section 6(a) of the Florida Constitution, which states: "[n]o private property shall be taken except for a public purpose

17

and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."

67.     The U.S. Supreme Court has clarified that, although "the classic taking [is one] in which the government directly appropriates private property for its own use . . . [n]othing in the text or history of the Takings Clause . . . suggests that the rule is any different when it comes to appropriation of personal property." *Horne v. Dep't of Agriculture*, 576 U.S. 350, 357 (2015).

68.     The County's unlawful seizure of over $5 million of funds paid by SEDP (or its assigns) under the Agreement constitutes an uncompensated taking of personal property in violation of Article X, Section 6(a) of the Florida Constitution.

69.     Plaintiffs have performed all conditions precedent to bringing this cause of action, and this case is ripe for consideration by this Court.

WHEREFORE, Plaintiffs respectfully request that this Court grant a bench trial on the issue of whether the County has taken property; declare that the County has taken property without just compensation; adjudicate the amount of compensation that should be awarded for the taking of property by the County; award pre-judgment interest and reasonable attorney's fees and costs in accordance with Chapters 73 and 74, Florida Statutes; and grant such other and further relief that this Court determines to be equitable, just, proper, and necessary under the circumstances.

## COUNT IV
## Unlawful Exaction – 42 U.S.C. § 1983

70.     Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 50 of this Complaint.

71.     This is an action pursuant to 42 U.S.C. §§ 1983 and 1988 seeking declaratory relief and damages against the County for violating due process rights guaranteed by the Fifth and

Fourteenth Amendments to the U.S. Constitution, as well as the unconstitutional conditions doctrine enunciated in *Koontz v. St. Johns River Water Management District*, 570 U.S. 595 (2013).

72.     In order for government to impose conditions on issuance of a permit without effecting a taking in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, the government must demonstrate: (1) an "essential nexus" between the exaction and a legitimate public purpose for which the exaction is being imposed; and (2) that the exaction is "roughly proportionate" to the impacts of the proposed development. *Nollan v. California Coastal Commission*, 483 U.S. 825, 837 (1987); *Dolan v. Tigard*, 512 U.S. 374, 391 (1994).

73.     As a condition of development approval, the County extortionately leveraged its police powers to require SEDP to pay $15 million in Total Project Transportation Contribution, including $10,132,643.00 in proportionate share contribution and $4,867,357.00 in additional public benefit contribution. Knowing that it could not proceed with the Project unless it complied with the County's demands, SEDP was forced to acquiesce to the Agreement's unlawful terms.

74.     The monetary exactions imposed upon SEDP by the County do not bear an essential nexus to a legitimate public purpose and are not roughly proportionate to the impacts of the Project and, therefore, constitute an uncompensated taking of property in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

75.     As a condition of development approval, the County attempted to extortionately leverage its police powers to require SEDP to contribute $57 million in roadway improvements. SEDP refused to accede to the County's unlawful demands and as a result Plaintiffs are unable to proceed with development of the Project.

76.     The $57 million exaction the County attempted to impose upon SEDP does not bear an essential nexus to a legitimate public purpose and is not roughly proportionate to the impacts

of the Project and, therefore, constitutes an uncompensated taking of property in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

77.     The County imposed these unlawful conditions on SEDP under color of state and local law, and in its legislative capacity. Plaintiffs have performed all conditions precedent to bringing this cause of action, and this case is ripe for consideration by this Court.

WHEREFORE, Plaintiffs respectfully request that this Court declare the County violated due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution; award damages against the County caused by its violation of due process rights; award pre-judgment interest and reasonable attorney's fees and costs in accordance with 42 U.S.C. § 1988; and grant such other and further relief that this Court determines to be equitable, just, proper, and necessary under the circumstances.

STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON, P.A.

/s/ Erin J. Tilton
**Glenn Burhans, Jr.**
Florida Bar No. 605867
**Erin J. Tilton**
Florida Bar No. 104729
**Liz Desloge Ellis**
Florida Bar No. 97873
106 E. College Avenue, Suite 700
Tallahassee, Florida 32301
(850) 580-7200 / (850) 329-4861 (fax)
gburhans@stearnsweaver.com
etilton@stearnsweaver.com
lellis@stearnsweaver.com

and

**Jacob T. Cremer**
Florida Bar No. 83807
**Nicole A. Neugebauer**
Florida Bar No. 1025043
401 E. Jackson Street, Suite 2100

Tampa, Florida 33602
(813) 223-4800 / (813) 222-5089 (fax)
jcremer@stearnsweaver.com
nneugebauer@stearnsweaver.com

*Counsel for Southeast Development Partners, LLC*
*and Southeast Land Ventures, LLC*