EXHIBIT A

Public Records of St. Johns County, FL
Clerk number: 2018070392
BK: 4618 PG: 1451
9/28/2018 1:24 PM
Recording $239.50

## CONCURRENCY AND IMPACT FEE CREDIT AGREEMENT

(Proportionate Fair Share Methodology, LDC Section 11.09.04)
(Grand Oaks PUD)

**THIS CONCURRENCY AND IMPACT FEE CREDIT AGREEMENT** ("**Agreement**") is made as of this 21 day of Sept. , 2018 ("**Effective Date**"), by and between **SOUTHEAST DEVELOPMENT PARTNERS, LLC**, a Florida limited liability company ("**Applicant**"), and **ST. JOHNS COUNTY**, a political subdivision of the State of Florida ("**County**").

### WITNESSETH:

**WHEREAS**, the Applicant is the contract purchaser of approximately 524 acres described in **Exhibit "A"** attached hereto and incorporated herein by this reference (the "**Property**"), which is subject to the Grand Oaks Planned Unit Development, which is recorded in Official Records Book 4615, Page 1848 , Public Records of St. Johns County, Florida (Ordinance No. 2018-40, PUD 2017-02) (the "**Grand Oaks PUD**").

**WHEREAS**, the Grand Oaks PUD allows the Property to be developed with a maximum of 674 non-age-restricted single-family units, a maximum of 325 age-restricted single-family units, a maximum of 100,000 square feet of commercial use and a maximum of 50,000 square feet of office use.

**WHEREAS**, the County has determined that adequate public facilities and services (except for schools, which will be addressed in a separate agreement) are available ("**Concurrency**") for the development of the Grand Oaks PUD.

**WHEREAS**, the County, the St. Johns County School District and the Applicant will enter into a School Concurrency Proportionate Share Mitigation Agreement to mitigate for any Grand Oaks PUD's impacts on public schools.

**WHEREAS**, the County has adopted a Proportionate Fair Share Program, as defined in Part 11.09.00 of the St. Johns County Land Development Code ("**LDC**" or "**Code**"), that establishes a method whereby the impacts of development on transportation facilities can be mitigated by the cooperative efforts of the public and private sectors.

-1-

**WHEREAS**, the Applicant seeks by this Agreement to obtain a certificate of concurrency benefiting the property within the Grand Oaks for development of a maximum of 674 non-age-restricted single-family units, a maximum of 325 age-restricted single-family units, a maximum of 100,000 square feet of commercial space and a maximum of 50,000 square feet of office space with related amenities ("**Concurrency Development**").

**WHEREAS**, the Applicant seeks by this Agreement to set forth its obligations regarding the widening of the segment of State Road 16 between San Giacomo Road and the eastern Grand Oaks Entrance from two (2) to four (4) lanes, pursuant to Section 163.3180, Florida Statutes (collectively, the "**Applicant's Transportation Contribution**"), to mitigate for the Concurrency Development's transportation impacts.

**WHEREAS,** the Applicant also seeks by this Agreement to set forth its obligations regarding dedication to the County of certain right-of-way for future construction of County Road 2209 (the "**CR 2209 ROW**") within the Property (the "**CR 2209 ROW Dedication**").

**WHEREAS**, the Applicant's Transportation Contribution and the CR 2209 ROW Dedication will provide a significant benefit to the impacted transportation system and advance implementation of the County's adopted Traffic Circulation Element.

**WHEREAS**, the St. Johns County Road Impact Fee Ordinance No. 87-57, as amended, allows impact fee credits to be granted for proportionate fair share payments, right-of-way dedication and transportation facility construction ("**Road Impact Fee Credits**").

**WHEREAS**, the County deems it to be in the public interest to recognize the Applicant's Transportation Contribution and the CR 2209 ROW Dedication described in this Agreement in improving the transportation system in the portion of the County in which the Grand Oaks PUD is located.

**WHEREAS**, the County has determined that Applicant is making commitments binding on it and its successors and assigns in the Grand Oaks PUD to St. Johns County to provide the Applicant's Transportation Contribution and the CR 2209 ROW Dedication to County transportation facilities to mitigate the impacts of the Concurrency Development pursuant to LDC Section 11.09.04.B.

-2-

**WHEREAS**, the Code, as amended from time to time, allows the County's execution of this Agreement.

**WHEREAS**, this Agreement strengthens the public planning process, encourages sound capital improvement planning and financing, assists in assuring there are adequate capital facilities for the development, encourages private participation and comprehensive planning and reduces the costs of development.

**WHEREAS**, the Applicant or its successors and assigns will be required to pay road impact fees ("**Road Impact Fees**") for roads in connection with the Concurrency Development and, as a result, the Applicant is a "**Feepayer**" as defined in Ordinance #87-57, as amended, which establishes the existence of Road Impact Fees and provides a procedure for awarding Road Impact Fee Credits to Feepayers under certain circumstances.

**NOW, THEREFORE**, in consideration of the mutual terms, covenants and conditions contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is mutually agreed as follows:

1.   **Findings of Fact**

The foregoing statements are true and correct and incorporated herein by reference as Findings of Fact.

2.   **Purpose**.      The Purpose of this Agreement is:

a.      To grant any owner of the Grand Oaks PUD, or any portion thereof, traffic concurrency as provided for in Concurrency Certificate No. CONMAJ 2018-10 (the "**Concurrency Certificate**") as required for the construction of the Concurrency Development authorized by this Agreement at any time during the term of this Agreement, as this Agreement may be amended or extended from time to time, subject to compliance with the terms and conditions of this Agreement and the Concurrency Certificate, as appropriate; and

b.      To recognize the Applicant's Transportation Contribution and the CR 2209 ROW Dedication as significant benefits to the impacted transportation system in the area of the Grand Oaks PUD.

-3-

3. **Densities and Intensities Statement**.

The Grand Oaks PUD is to be developed with a maximum of 674 non-age-restricted single-family residential units, a maximum of 325 age-restricted single-family units, a maximum of 100,000 square feet of commercial space and a maximum of 50,000 square feet of office space with related amenities under the existing Comprehensive Plan future land use designation and PUD zoning for Grand Oaks.

Amendments to the zoning classification and/or the proposed Concurrency Development from time to time, which do not increase the transportation impacts beyond the development intensities proposed or allowed therein or the equivalent thereof as identified in traffic impact analysis report submitted in support of any such ordinance and the request for concurrency, shall not affect the validity or vary the terms of this Agreement.  If a zoning and/or Concurrency Development change is made that in any way increases such transportation impacts as set forth herein, this Agreement shall not be effective only as to the incremental development causing the increased impacts, but such incremental development shall not limit or impair any rights, privileges and benefits afforded by this Agreement.

4. **Total Proportionate Share Obligation and Payment Schedule**

a.      The opinion of probable construction costs estimate to improve all deficient roadways within the Concurrency Development's Traffic Impact Area equate to a total cost of Forty-Two Million Five Hundred Fifteen Thousand Two Hundred Forty-Eight and No/100 Dollars ($42,515,248.00), of which the proportionate fair share for the Concurrency Development impacts is calculated to be Ten Million One Hundred Thirty-Two Thousand Six Hundred Forty-Three and No/100 Dollars ($10,132,643.00) (the "**Proportionate Share Amount**"), as detailed in **Exhibit "B"** attached hereto and incorporated herein by this reference.

b.      As part of its transportation public benefit contribution related to the Grand Oaks Large-Scale Comprehensive Plan Amendment application (COMPAMD 2016-08), the Applicant agreed to pay the sum of Four Million Eight Hundred Sixty-Seven Thousand Three Hundred Fifty-Seven and No/100 Dollars ($4,867,357.00) toward the Applicant's Transportation

Contribution, in addition to the Project's Proportionate Share Amount for the Concurrency Development (the "**Public Benefit Contribution**").

      c.     The Applicant's Proportionate Share Amount plus the Applicant's Public Benefit Contribution equals Fifteen Million and No/100 Dollars ($15,000,000.00) (the "**Total Project Transportation Contribution**").

      d.     The Applicant shall use its Total Project Transportation Contribution to widen an approximately three (3) mile-segment of State Road 16 between San Giacomo Road and the eastern entrance into Grand Oaks from two (2) lanes to four (4) lanes, in the location depicted in **Exhibit "C"** attached hereto and incorporated herein by this reference (the "**SR 16 Improvements**"). The preliminary engineering cost estimate for the design, permitting and construction of the SR 16 Improvements, including without limitation the Pond Acquisitions (defined below), is Fifteen Million Thirteen Thousand Three Hundred Ninety-Two and 49/100 Dollars ($15,013,392.49) ("**Estimated Total Cost**") based on the written estimate and preliminary design entitled Engineer's Opinion of Probable Construction Cost prepared by Chindalur Traffic Solutions, Inc. dated May 10, 2018 (the "**Estimate**").

      e.     The terms and schedule for the Applicant's construction of the SR 16 Improvements are as follows:

      (i)     No later than sixty (60) days following the Effective Date of this Agreement (which will run concurrently with the appeal periods for the Grand Oaks Comprehensive Plan Amendment and Planned Unit Development rezoning applications), the Applicant shall commence acquisition of offsite pond sites necessary to provide drainage for the SR 16 Improvements (the "**Pond Acquisitions**") and shall commence design of the SR 16 Improvements (with the final, 100 percent design being defined as the "**Road Design**"). The Road Design shall be made in coordination with the Florida Department of Transportation ("**FDOT**"), by an FDOT-approved engineer, because State Road 16 is a state road. Based on the Estimate, the estimated cost for the Pond Acquisition is Six Hundred Thousand and No/100 Dollars ($600,000.00). Based on the Estimate,

the estimated cost for the Road Design is approximately Two Million and No/100 Dollars ($2,000,000.00).  Costs for the Road Design and Pond Acquisitions may include, without limitation, engineering, geotechnical studies, design, surveying, environmental studies, drainage analysis, other testing, construction management, Pond Contract (defined below) deposits and closing costs, and other costs deemed appropriate by the Applicant or its designated agents or assigns for Pond Acquisitions and Road Design, but excluding Permit Costs (defined hereinafter) which are dealt with separately below (collectively, the **"Pre-Construction Costs"**) and are included as part of the Estimated Total Cost.  The Pre-Construction Costs will be paid for by the Applicant as part of its Total Project Transportation Contribution.

(ii)      The Applicant shall complete the Pond Acquisitions and Road Design prior to the earlier of (x) fourteen (14) months of the Effective Date, or (y) the Board's approval of a plat containing the Project's 443rd residential unit, and as a condition of such approval (the **"Design Period"**).  For purposes of this Agreement, the Pond Acquisitions shall be deemed complete when the offsite ponds required by the Road Design are under contract with the sellers thereof without any contingency in favor of such sellers and are scheduled to close within twenty-four (24) months from the Effective Date (each a **"Pond Contract"**). Closing on such contracts may be contingent on Applicant receiving the required Permits (defined herein) for the SR 16 Improvements.

(iii)     The Applicant shall apply for and pursue all FDOT, environmental and other permits and required governmental approval for the SR 16 Improvements (collectively, the **"Permits"**) within thirty (30) days following the end of the Design Period and shall have obtained all required Permits within one (1) year of the end of the Design Period (the **"Permit Period"**).  Based on the Estimate, the estimated cost of the Permits, including any application fees, for the SR 16 Improvements is One Hundred Eleven Thousand Seven Hundred Thirty-One and 72/100 Dollars ($111,731.72) (the **"Permit Costs"**), and are included as part of the Estimated Total Cost.  Any Permit Costs paid by the Applicant shall be

-6-

credited towards the Total Project Transportation Contribution that the Applicant would otherwise be required to make hereunder.

(iv)   The Applicant, its successors and assigns, prior to and as a condition of approval by the Board of County Commissioners (the "**Board**") of plats containing residential units within the Project, shall pay to the County the following sums:

(a) Seven Thousand Five Hundred and No/100 Dollars ($7,500.00) per unit within each plat for the first 212 units within the Concurrency Development; and

(b) Fifteen Thousand and No/100 Dollars ($15,000.00) per unit within each plat starting with the 213th unit.

The above-referenced per unit payments (each a "**Per Unit Payment**" and collectively the "**Per Unit Payments**") required herein for a pending plat shall be made by the Applicant prior to the scheduled meeting of the Board for the plat for which such payments are due. Applicant shall not be required to pay Per Unit Payments for any plat that is not scheduled for approval by the Board.  A Project platting schedule is attached hereto as **Exhibit "D"** and incorporated herein by this reference (the "**Project Plat Schedule**").  Each Per Unit Payment will count toward the Total Project Transportation Contribution.  Upon the earlier of (x) such time as the total of the Per Unit Payments made by the Applicant (or its assigns), together with the Pre-Construction Costs and the Permit Costs equals the Total Project Transportation Contribution, or (y) Commencement (defined below), Applicant shall no longer be required to make Per Units Payments hereunder.  The County will hold the aggregate Per Unit Payments (the "**Escrow Funds**") in a separate escrow account (the "**Escrow Account**") to be used only for the SR 16 Improvements. The terms of the Escrow Account and provisions for disbursement of Escrow Funds are provided for hereinafter.

(v)     Prior to the earlier of (x) the Board's approval of a plat containing the Project's 581st residential unit (the "**Trigger Plat**"), and as a condition of such approval, or (y) one hundred eighty (180) days following receipt of a Commencement Notice (defined below), the Applicant shall have achieved Commencement of construction of the SR 16 Improvements.   For purposes hereof,  the "**Commencement Notice**" is defined as a written notice from the County to the Applicant indicating that the traffic capacity of State Road 16 has reached 90 percent of its level of service volume (1,971 peak hour trips).   The County shall not be required to deliver the Commencement Notice if the Trigger Plat has already been approved by the County at the time the Commencement Notice would otherwise have been sent.  For purposes hereof, "**Commencement**" shall be defined as the Applicant posting a bond for the SR 16 Improvements with FDOT in a form and amount to be determined by FDOT by separate agreement or approval  with  the  Applicant  for  same.    The  Total  Project  Transportation Contribution is payable to the County in the event the SR 16 Improvements are constructed or funded by others.

(vi)     At the time the Applicant achieves Commencement, the Applicant may apply to the County for a release of the Escrow Funds to the Applicant, which the Applicant shall then have the right to use for payment of all Pre-Construction Costs, Permits Costs and costs related to construction of the SR 16 Improvements (the "**Construction Costs**").    Applicant understands that the Escrow Funds shall not be sufficient to pay the Estimated Total Cost of the SR 16 Improvements and Applicant agrees that it shall pay all costs for the SR 16 Improvements which are in excess of the Escrow Funds.

(vii)     The Applicant shall achieve Completion of construction of the SR 16 Improvements within three (3) years of Commencement.  For purposes hereof, "**Completion**" shall be defined as the Applicant obtaining FDOT acceptance of the completed SR 16 Improvements in accordance with the Permits for same.

f.      Prior to the Board's approval of a plat containing the first residential unit within the Property, the Applicant will dedicate to the County the CR 2209 ROW. The Applicant will provide a survey of the CR 2209 ROW and an appraisal of the land for review prior to the Applicant's dedication of the CR 2209 ROW.

g.      Subject to any limitations elsewhere imposed herein, the Applicant commits to fund and construct the SR 16 Improvements and to make the CR 2209 ROW Dedication to mitigate for traffic impacts as set forth herein. The Applicant's obligations pursuant to this Section 4 shall not be affected by any subsequent change imposed by any state or local agency to transportation concurrency mitigation, nor shall it be affected by any subsequent interpretation of current regulations relating to transportation concurrency mitigation without the express agreement of the County, in its sole discretion.

5.      **Specific Obligations and Rights of Applicant**. The Applicant will make Total Project Transportation Contribution to provide for the Pond Acquisitions, the Road Design, the Permits and the construction of the SR 16 Improvements pursuant to the terms and conditions set forth in Section 4 hereof and, in accordance with Section 10 hereafter will receive Road Impact Fee Credits equal to the sum of Ten Million One Hundred Thirty-Two Thousand Six Hundred Forty-Three and No/100 Dollars ($10,132,643.00) on a dollar for dollar basis in exchange for the first Ten Million One Hundred Thirty-Two Thousand Six Hundred Forty-Three and No/100 Dollars ($10,132,643.00) of the Total Project Transportation Contribution and the CR 2209 ROW Dedication paid or incurred by Applicant (or by others on its behalf). The Applicant will make the CR 2209 ROW Dedication pursuant to the terms and conditions set forth in Section 4 hereof and, in accordance with Section 10 hereafter will receive Road Impact Fee Credits equal to the value of such right-of-way based on the final acreage determined by a survey of the land and an appraisal of the right-of-way. Road Impact Fee Credits shall be provided to the Applicant as and when Applicant incurs Pre-Construction Costs, Permit Costs or Construction Costs, and for Per Unit Payments as and when paid to the Escrow Account. Following Commencement and payment of the Escrow Funds to Applicant, Applicant shall not receive any additional Road Impact Fee Credits until such time as the total costs incurred by Applicant (including pre- and post-Commencement costs) exceed the costs incurred by Applicant prior to Commencement plus the amount of the Escrow Funds released to Applicant at Commencement. In order to receive

Road Impact Fee Credits for costs incurred by the Applicant, Applicant shall, from time to time but no more frequently than monthly, provide a written request for Road Impact Fee Credits (the "**Credit Request**") together with such other evidence as may from time to time be requested by the County including, but not limited to, applications, certificates and affidavits of Applicant, and, as applicable, Applicant's engineer and contractor, all of which shall show or include:

    a.    a copy of the paid invoice for any Pre-Construction Costs or Permit Costs incurred; and

    b.    in the case of construction:

        (i)    the percentage of completion of the SR 16 Improvements completed at that time;

        (ii)    that the liens for all outstanding claims for labor, materials and fixtures through the date of the Credit Request have been waived in writing on the condition of payment, and

        (iii)    that all work prior to date of the Credit Request has been completed in substantial compliance with the applicable portions of the Permits.

Unless otherwise objected to by the County, Road Impact Fee Credits shall be awarded to the Applicant within thirty (30) days of the County's receipt of each Credit Request in the amount of the costs incurred by the Applicant for the SR 16 Improvements evidenced by such Credit Request. The Applicant shall receive Road Impact Fee Credits for the CR 2209 ROW Dedication in the appraised value of such land upon its making the CR 2209 ROW Dedication to the County.

    6.    **County Obligations.**

    a.    By executing this Agreement, the County hereby authorizes this Agreement to be used as a basis for granting traffic or transportation concurrency and public facilities concurrency for the Concurrency Development within the Grand Oaks PUD as provided for in LDC Article XI.  This authority extends, however, only to the authority contemplated by LDC Article XI and neither expressly nor impliedly relieves any party to this Agreement of the obligation to secure any and all other state, federal and local permits necessary

JAX\2530252_4

to authorize the Concurrency Development by this Agreement. The County shall issue a Final Certificate of Concurrency (CONMAJ 2018-10) as of the Effective Date, which Final Certificate of Concurrency may precede the approval of this Agreement and be conditioned upon the approval of this Agreement and compliance with the conditions set forth in this Agreement.

b.    The County recognizes that the Applicant's making the Total Project Transportation Contribution, constructing the SR 16 Improvements and making the CR 2209 ROW Dedication as significantly benefiting the impacted transportation system.

c.    The County will adopt the Applicant's Transportation Contribution and the CR 2209 ROW Dedication into the County's Five-Year Schedule of Capital Improvements in the County's Capital Improvements Element ("**CIE**") of its Comprehensive Plan at the next scheduled update.

7.    **Authority and Duration**.

This Agreement is made and granted pursuant to the St. Johns County Land Development Code and Section 163.3180, Florida Statutes, as they may be amended from time to time, and is effective from the Effective Date through the expiration of the Final Certificate of Concurrency, unless otherwise extended by extension of the Final Certificate of Concurrency or by agreement of the parties to this Agreement.  In the event the Final Certificate of Concurrency is extended, the duration of this Agreement shall also be extended.

8.    **Extension of Agreement: Subsequent Change**.

The duration of this Agreement may be extended by the County.  If the County modifies the Code with respect to the Concurrency Management System subsequent to the execution of this Agreement, or if a change in circumstances warrants, the County may, in its sole discretion, pursue such other method of mitigation so long as the rights granted to the Applicant in this Agreement are not adversely impacted and remain unchanged, and the payment obligations of the Applicant do not increase.

JAX\2530252_4

9.    **Necessity to Obtain Permits**.

        The Applicant acknowledges its obligation to obtain all necessary local development permits which may be needed for the Grand Oaks PUD.  The failure of this Agreement to address any particular permit, condition, term or restriction applicable to the Property shall not relieve the Applicant or its heirs, successors or assigns of the necessity of complying with federal, state and local permitting requirements, conditions, terms or restrictions as may be applicable.  In the event the Applicant encounters unanticipated delays in obtaining the required permits, or is unable to obtain the required permits, the County will not unreasonably deny, upon a showing of good cause, a request to extend the timeframes contemplated herein.

10.    **Impact Fees**.

        Pursuant to Ordinance No. 87-57, as amended (the "**Road Impact Fee Ordinance**"), the County requires any person who seeks to develop land within St. Johns County, as evidenced by such person's application for a building permit or certificate of occupancy, to pay a Road Impact Fee so as to assure that such new development bears a proportional share of the cost of capital expenses necessary to provide roads in St. Johns County.

        a.    Amount.   The Applicant has requested and the County has agreed to provide the Applicant, its successors and assigns, with certain Road Impact Fee Credits equal to Ten Million One Hundred Thirty-Two Thousand Six Hundred Forty-Three and No/100 Dollars ($10,132,643.00) (the "**Total Credit**") paid by the Applicant to construct the SR 16 Improvements and equal to the appraised value of the CR 2209 ROW (the "**Road Impact Fee Payment Amount**").  The Road Impact Fee Payment Amount shall be eligible for Road Impact Fee Credits on a "dollar for dollar" basis as and when paid or otherwise earned as a contribution through the CR 2209 ROW Dedication, Pre-Construction Costs, Permit Costs or Construction Costs made or paid by the Applicant.  Road Impact Fee Credits shall be awarded to the Applicant, its successors and assigns, immediately upon the Applicant's making the CR 2209 ROW Dedication, making each Per Unit Payment or by incurring the aforesaid costs, provided that upon release of the Escrow Funds to Applicant pursuant to Section 4 above, the County shall not be required to award any additional Road Impact Fee Credits for costs incurred following

Commencement until such time as the total costs incurred by the Applicant for the SR 16 Improvements exceeds all such costs incurred prior to Commencement plus the amount of the Escrow Funds so released to Applicant.

      b.    <u>Method of Issuance.</u>  From and after the date hereof, all Feepayers applying for building permits or certificates of occupancy in connection with any residential construction within the Grand Oaks PUD shall pay the amount due under the Road Impact Fee Ordinance directly to the Applicant, its successors and assigns, to the extent there remain unused Road Impact Fee Credits available within the Grand Oaks PUD credit account. The Applicant, its successors and assigns, shall be fully responsible for notifying all Feepayers of this requirement and shall ensure that such payments are directly paid to the Applicant, its successors and assigns. Then, for so long as the total Road Impact Fee Credits for which the Applicant has issued vouchers under this Agreement is less than the total Road Impact Fee Credits authorized by this Agreement, the Applicant, its successors and assigns, shall issue such Feepayer a voucher evidencing full payment of Road Impact Fees in connection with such Feepayer's application for building permit or certificate of occupancy. The voucher issued by the Applicant, its successors and assigns, shall contain a statement setting forth the amount of Road Impact Fee paid. An example of said voucher is attached hereto as **<u>Exhibit "E"</u>** and incorporated herein by this reference. Upon presentation of such voucher by the Feepayer, the County shall issue a receipt to the Feepayer and deduct the amount of such voucher from the Grand Oaks PUD Road Impact Fee Credit account. In the event that the County institutes an alternate mechanism to the current vouchers for Road Impact Fee Credits, such as a voucher-less system, the Applicant, its successors and assigns, may use said alternate system.

      c.    <u>Sale of Development.</u>  In the event Applicant may determine to sell all or part of its Property, Applicant may sell, transfer, assign or convey all or part of its allocation of Road Impact Fee Credits to such purchaser, transferee, assignee or grantee for use only within the Grand Oaks PUD for such consideration as the Applicant determines. In such event, Applicant shall execute and deliver to the County, a copy of the instrument selling, transferring, assigning or granting its allocation of the Road Impact Fee Credit, or portion thereof, to a Feepayer. Applicant acknowledges that only one Road Impact Fee Credit account may exist at any given time for the Grand Oaks PUD.

    d.    <u>Limitations on Amount/Assignability/Use</u>.  In no event shall Applicant sell, transfer, assign or convey all or part of the Road Impact Credits for use outside the Grand Oaks PUD, without the approval of the County.  Further, Applicant acknowledges the total amount of such Road Impact Fee Credits may be further limited by Section 13 of Ordinance No. 87-57, as amended, and in effect at the time this Agreement becomes effective and Applicant covenants and agrees that it will not challenge by an judicial proceeding the interpretation of the County Attorney's Office that the Road Impact Fee Credits identified or granted by this Agreement are limited to the extent and/or amount of Road Impact Fees which are due or become due from the Concurrency Development.  Road Impact Fee Credits can be applied to extend the Final Certificate of Concurrency.

    11.    **Remedies**.

    If any party hereto fails to carry out any of its covenants or obligations contained herein, all parties shall be entitled to all remedies available at law or in equity, including the remedies of specific performance and all forms of injunctive relief.  Notwithstanding anything to the contrary herein, Applicant's obligations are expressly subject to the Applicant commencing development of the Grand Oaks PUD and said development requiring payment for concurrency pursuant to applicable Florida law.

    In addition to other remedies, the County may halt approval of additional plats or construction plans within the Property until and unless the Applicant complies with the terms and conditions of Sections 4 and 5 hereof.  If the construction bond posted by the Applicant and held by FDOT for the SR 16 Improvements fails to remain in good standing before and during construction, the County may halt approval of additional plats or construction plans until the bond is again in good standing.  The County may not withhold building permit approvals on platted lots owned by third parties as a result of failure of Applicant to comply with its payment guaranty.

    In addition to other remedies, if the Applicant defaults hereunder, the Per Unit Payments paid by the Applicant to date shall become non-refundable to the Applicant and shall be used by the County to construct a portion of the SR 16 Improvements or another road improvement

within the project impact area. Additionally, the Applicant must assign the Road Design documents and any Permits to the County, free of charge, within thirty (30) days of such default.

12.   **Future Impact Fee Assessments, Proportionate Fair Share Refunds**.

a.      Nothing in this Agreement shall be deemed to require the County to continue to levy or collect Road Impact Fees, or if levied, to levy them for any certain amount.

b.      Notwithstanding any other provision in this Agreement, no land, except the Grand Oaks PUD, shall be, implicitly or explicitly, considered approved for concurrency, by virtue of this Agreement.

c.      In the event that the proposed or constructed Concurrency Development is so modified as to create a net reduction of impacts to the impacted transportation or public facilities systems from those outlined in Section 3 herein and its related application for concurrency (CONMAJ 2018-10), the Applicant, its successors and assigns, shall have the right to obtain a pro rata reduction by modification of this Agreement pursuant to the review and approval of a Concurrency Modification that results in reduced transportation impacts.   In the event that the Proportionate Share Amount described at Section 4 hereof has already been paid, Applicant shall hold a transportation concurrency credit for the Grand Oaks PUD equal to the pro rata reduction based on reduced transportation impacts.

d.      The Road Impact Fee Credits to be awarded pursuant to this Agreement shall be honored by the County toward payment of Road Impact Fees for development within the residential and commercial/office portions of the Grand Oaks PUD or toward payment of any fee which replaces impact fees or connection fees if the County eliminates Road Impact Fees and replaces them with some other road impact payment system for road construction.

13.   **Binding Effect**.

The burden of this Agreement shall be binding upon, and the benefits of this Agreement shall inure to, all successors in interest to the parties to this Agreement.   The rights and obligations of Applicant may be assigned and delegated to a successor or owner/developer and, in such event, the assignor shall be relieved of further liability under this Agreement.  If the

-15-

Applicant assigns its rights and obligations hereunder to another party, the Applicant must provide a copy of the instrument transferring or assigning the obligation(s) and specifying which obligation is being transferred and to whom.

14.   **Applicable Law; Jurisdiction of Venue.**

This Agreement and the rights and obligations of the parties hereto as they may appear herein, shall be governed by, construed under and enforced in accordance with the laws of the State of Florida.  Venue for any litigation pertaining to the subject matter hereof shall be exclusively in St. Johns County, Florida.  The parties waive trial by jury.  If any provision of this Agreement, or unenforceable by a court of competent jurisdiction, then the remainder of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  The fact that this Agreement does not detail all laws, rules, regulations, permits, conditions, terms and restrictions that must be satisfied to complete the development contemplated by this Agreement shall not relieve any party, or its successors in interest of the obligations to comply with the law governing such permit requirements, conditions, terms and restrictions.  Notwithstanding the foregoing, the interests of each party may be mortgaged in connection with a mortgage of any portion of the Property.

15.   **Joint Preparation**.

Preparation of this Agreement has been a joint effort of the parties and the resulting document shall not, solely as a matter of judicial construction, be construed more severely against one of the parties than the other.

16.   **Exhibits**.

All exhibits attached hereto contain additional terms of this Agreement and are incorporated herein by reference.

17.   **Captions or Paragraph Headings**.

Captions and paragraphs headings contained in this Agreement are for convenience and reference only, and in no way define, describe, extend or limit the scope of intent of this Agreement, nor the intent of any provision hereof.

-16-

JAX\2530252_4

18.    **Counterparts**.

This Agreement may be executed in several counterparts, each constituting a duplicate original, but all such counterparts constituting one and the same Agreement.

19.    **Effective Date**.

This Agreement shall become effective the date it is executed by all parties (the "**Effective Date**") as first written above.

20.    **Amendment**.

This Agreement may be amended by mutual written consent of the parties so long as the amendment meets the requirements of the Code.

21.    **Duration of Permits**.

The Applicant acknowledges that, except for the extension of the concurrency reservation of transportation capacity, this Agreement does not extend the duration of any other permits or approvals.

22.    **Further Assurances**.

Each of the parties hereto agrees, to the extent permitted by law, to do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, all such further acts and assurances as shall be reasonable requested by the other party in order to carry out the intent of this Agreement and give effect thereto to the extent allowed and in a manner permitted by law.  Without any manner limiting the specific rights and obligations set forth in this Agreement or illegally limiting or infringing upon the governmental authority of the County, the parties hereby declare their intention to cooperate with each other in effecting the terms of this Agreement, and to coordinate the performance of their respective obligations under the terms of this Agreement.

23.    **Notices**.

Any notices or reports required by this Agreement shall be sent to the following:

JAX\2530252_4

For the County:                     County Administrator
                                    St. Johns County
                                    500 San Sebastian View
                                    St. Augustine, Florida 32084

With a copy to:                     County Attorney
                                    St. Johns County
                                    500 San Sebastian View
                                    St. Augustine, Florida 32084

For Applicant:                      Keith Hyatt
                                    Southeast Development Partners, LLC
                                    P.O. Box 662
                                    Ponte Vedra Beach, Florida 32004

With a copy to:                     Ellen Avery-Smith
                                    Rogers Towers, P.A.
                                    100 Whetstone Place, Suite 200
                                    St. Augustine, Florida 32086

24.   **Miscellaneous Provisions**:

a.     This Agreement and any Exhibits made a part of this Agreement, constitute the entire Agreement and understanding of the parties and shall not be modified or amended except by written agreement duly executed by the parties.

b.     This Agreement is made for the sole benefit and protection of the parties (their successors and assigns) and no other persons shall have any right of action under this Agreement.

c.     All covenants, agreements, representations and warranties made in this Agreement shall be deemed to be material and relied on by each party to this Agreement.

d.     If the Applicant has met all of its obligations under this Agreement, then, the rights granted to Applicant under this Agreement shall survive the termination of this Agreement and shall continue for so long as there remain any unused Road Impact Fee Credits.

e.     Nothing in this Agreement shall act to allow Applicant to receive Road Impact Fee Credits for contributions provided by a government entity including, but not limited

-18-

to a Community Development District but if a Community Development District makes such payments on behalf of a party, then it shall be entitled to the Road Impact Fee Credits.

25. **Force Majeure**.

Notwithstanding any other provision of this Agreement to the contrary, all of the obligations of the County or Applicant (whether or not a specific reference to this Section has been made), shall be subject to an excuse for the period of delay in the performance of its obligations under this Agreement when such delay is occasioned by cause or causes beyond the control of such party and the time for performance shall be automatically extended for a like period. Such causes shall include, without limitation, all labor disputes, casualty (whether or not insured), materials shortages, civil commotion, war, war-like operations, sabotage, terrorism, governmental or judicial regulations, government imposed moratoriums, legislation, inability to obtain (or delay in obtaining) any necessary materials or services, inability to obtain (or delay in obtaining) after using reasonable efforts from any governmental authority or utility company or other authority the issuance of certificates, licenses, permits, authorizations, consents and approvals, and acts of God, but shall not include unavailability of financing or funds.

[Signatures on Following Pages]

-19-

**IN WITNESS WHEROF**, the parties hereto, through their duly authorized representatives, have executed this Agreement on the day(s) and year set forth below.

| WITNESS: | ST. JOHNS COUNTY, FLORIDA |
|---|---|
| *Pam Halterman*<br>Name: Pam Halterman<br><br>*[signature]*<br>Name: Natasha McGee | By: *[signature]*<br>Name: Michael D. Wanchick,<br>County Administrator<br><br>Date: 9/21/18<br><br>LEGALLY SUFFICIENT<br>*[signature]*<br>Name<br>Date: 9/20/18 |

STATE OF FLORIDA
COUNTY OF ST. JOHNS

The foregoing instrument is hereby acknowledged before me this **21** day of **Sept**, 2018, by **MICHAEL D. WANCHICK**, who is the **COUNTY ADMINISTRATOR FOR ST. JOHNS COUNTY, FLORIDA** and is authorized to execute this Agreement on behalf of St. Johns County, Florida.   He/She has produced _____ as identification and (did/did not) take an oath.

*Pamela Halterman*
NOTARY PUBLIC, State of Florida
Name: Pamela Halterman
My Commission Expires: 9/4/21
My Commission Number is: GG 140467

PAMELA HALTERMAN
MY COMMISSION # GG140467
EXPIRES: September 04, 2021

JAX\2530252_4

**IN WITNESS WHEROF**, the parties hereto, through their duly authorized representatives, have executed this Agreement on the day(s) and year set forth below.

| WITNESS: | SOUTHEAST DEVELOPMENT PARTNERS, LLC, a Florida limited liability company |
|---|---|
| Name: _RAFAEL PENNONIE_ | By: _____ <br> Name: KEITH HYATT <br> Title: MEMBER |
| Name: _JAY BRAXTON_ | Date: 9/21/2018 |

STATE OF FLORIDA
COUNTY OF ST. JOHNS

The foregoing instrument is hereby acknowledged before me this _21_ day of _SEPTEMBER_, 2018, by _KEITH HYATT_ who is the _MEMBER_ for **SOUTHEAST DEVELOPMENT PARTNERS, LLC**, a Florida limited liability company, and is authorized to execute this Agreement on behalf of the company. He/She has produced _FL DRIVER LICENSE_ as identification and (did/did not) take an oath.

NOTARY PUBLIC, State of Florida
Name: _JAY BRAXTON_
My Commission Expires: 01-16/2021
My Commission Number is: GG 62510

JAY BRAXTON
NOTARY
My Comm. Expires
January 16, 2021
No. GG 62510
STATE OF FLORIDA
PUBLIC

JAX\2530252_4

## EXHIBIT "A"

Legal Description of Property

EAST PARCEL

A PORTION OF SECTIONS 26, 34, 35 AND 36, TOWNSHIP 6 SOUTH, RANGE 28 EAST, ST. JOHNS COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE INTERSECTION OF THE WESTERLY LINE OF SAID SECTION 26, AND THE SOUTHWESTERLY RIGHT-OF-WAY LINE OF STATE ROAD NO. 16, (A 200 FOOT RIGHT-OF-WAY, AS SHOWN ON THE STATE OF FLORIDA ROAD DEPARTMENT RIGHT-OF-WAY MAP, SECTION NO. 78060-2509, DATED 09-09-68); THENCE SOUTH 19°22'30" WEST, ALONG SAID WESTERLY LINE OF SECTION 26, A DISTANCE OF 4407.30 FEET, TO THE NORTHERLY LINE OF SAID SECTION 34, AND A POINT HEREINAFTER REFERRED TO AS REFERENCE POINT "A"; THENCE RETURN TO THE POINT OF COMMENCEMENT; THENCE SOUTHEASTERLY, SOUTHWESTERLY AND NORTHEASTERLY, ALONG SAID SOUTHWESTERLY RIGHT-OF-WAY LINE OF STATE ROAD NO. 16, RUN THE FOLLOWING FIVE (5) COURSES AND DISTANCES: COURSE NO. 1: SOUTH 47°52'58" EAST, 1112.56 FEET; COURSE NO. 2: SOUTH 42°07'05" WEST, 230.00 FEET; COURSE NO. 3: SOUTH 47°52'58" EAST, 140.00 FEET; COURSE NO. 4: NORTH 42°07'05" EAST, 230.00 FEET; COURSE NO. 5: SOUTH 47°52'58" EAST, 653.67 FEET TO THE EASTERLY LINE OF THOSE LANDS DESCRIBED AND RECORDED IN OFFICIAL RECORDS BOOK 866, PAGE 1979 OF THE PUBLIC RECORDS OF SAID COUNTY AND THE POINT OF BEGINNING; THENCE SOUTHWESTERLY, SOUTHEASTERLY, AND SOUTHERLY, ALONG LAST SAID LINE, RUN THE FOLLOWING FIVE (5) COURSES AND DISTANCES:  COURSE NO. 1: SOUTH 36°43'37" WEST, 199.37 FEET; COURSE NO. 2: SOUTH 53°12'28" EAST, 40.00 FEET; COURSE NO. 3: SOUTH 36°40'16" WEST, 649.98 FEET; COURSE NO. 4: SOUTH 06°00'19" WEST, 556.50 FEET; COURSE NO. 5: SOUTH 16°42'47" WEST, 383.52 FEET TO A POINT HEREINAFTER REFERRED TO AS REFERENCE POINT "B"; THENCE RETURN TO THE POINT OF BEGINNING; THENCE SOUTH 47°52'58" EAST, ALONG THE AFORESAID SOUTHWESTERLY RIGHT-OF-WAY LINE OF STATE ROAD NO. 16, A DISTANCE OF 140.62 FEET, TO THE WESTERLY LINE OF THOSE LANDS DESCRIBED AND RECORDED IN OFFICIAL RECORDS BOOK 847, PAGE 366, SAID PUBLIC RECORDS; THENCE SOUTHWESTERLY, NORTHWESTERLY, AND SOUTHERLY, ALONG LAST SAID LINE, RUN THE FOLLOWING FIVE (5) COURSES AND DISTANCES: COURSE NO. 1: SOUTH 36°43'37" WEST, 186.32 FEET; COURSE NO. 2: NORTH 53°12'28" WEST, 40.00 FEET; COURSE NO. 3: SOUTH 36°40'16" WEST, 633.40 FEET; COURSE NO. 4: SOUTH 06°00'19" WEST, 545.61 FEET; COURSE NO. 5: SOUTH 13°46'33" WEST, 307.65 FEET, TO THE SOUTHERLY LINE OF LAST SAID LANDS; THENCE SOUTH 79°35'28" EAST, ALONG LAST SAID LINE, 745.42 FEET, TO THE WESTERLY LINE OF THOSE LANDS DESCRIBED AND RECORDED IN OFFICIAL RECORDS BOOK 73, PAGE 425, SAID PUBLIC RECORDS; THENCE SOUTH 00°31'26" EAST, ALONG LAST SAID LINE, AND ALONG THE WESTERLY LINE OF THOSE LANDS DESIGNATED "PARCEL A", AS DESCRIBED AND RECORDED IN OFFICIAL RECORDS BOOK 3267, PAGE 1092, SAID PUBLIC RECORDS, A DISTANCE OF 1146.58 FEET, TO THE SOUTHERLY LINE OF SAID LANDS DESIGNATED "PARCEL A"; THENCE NORTH 89°27'53" EAST, ALONG LAST SAID LINE, AND ALONG THE SOUTHERLY LINE OF THOSE LANDS DESCRIBED AND RECORDED IN OFFICIAL RECORDS BOOK 3297, PAGE 404, SAID PUBLIC RECORDS, A DISTANCE OF 1447.54 FEET, TO THE WESTERLY LINE OF THOSE LANDS DESIGNATED "PARCEL B", AS DESCRIBED AND RECORDED IN SAID OFFICIAL RECORDS BOOK 3267, PAGE 1092; THENCE SOUTH 00°36'00" EAST, ALONG LAST SAID LINE, 99.99 FEET, TO THE SOUTHERLY LINE OF LAST SAID LANDS; THENCE NORTH 89°26'57" EAST, ALONG LAST SAID LINE, 1209.14 FEET; THENCE NORTH 89°45'26" EAST, CONTINUING ALONG LAST SAID LINE, 1264.32 FEET, TO THE AFORESAID SOUTHWESTERLY RIGHT-OF-WAY LINE OF STATE ROAD NO. 16, AND TO THE ARC OF A CURVE LEADING SOUTHEASTERLY; THENCE SOUTHEASTERLY, ALONG LAST

SAID RIGHT OF WAY LINE, AND ALONG AND AROUND THE ARC OF SAID CURVE, CONCAVE SOUTHWESTERLY, HAVING A RADIUS OF 1839.86 FEET, AN ARC DISTANCE OF 97.07 FEET, SAID ARC BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF SOUTH 37°57'37" EAST, 97.06 FEET; THENCE SOUTH 36°40'23" EAST, CONTINUING ALONG LAST SAID RIGHT OF WAY LINE, 1268.49 FEET, TO THE NORTHWESTSERLY LINE OF THOSE LANDS DESCRIBED AND RECORDED IN OFFICIAL RECORDS BOOK 2694, PAGE 1145, SAID PUBLIC RECORDS; THENCE SOUTH 54°14'33" WEST, ALONG LAST SAID LINE, 2475.50 FEET, TO THE NORTHERLY LINE OF THOSE LANDS DESCRIBED AND RECORDED IN OFFICIAL RECORDS BOOK 1742, PAGE 1399, SAID PUBLIC RECORDS; THENCE SOUTH 89°27'02" WEST, ALONG LAST SAID LINE, 6733.00 FEET, TO THE WESTERLY LINE OF AFORESAID SECTION 34; THENCE NORTH 19°22'30" EAST, ALONG LAST SAID LINE, 2330 FEET, MORE OR LESS, TO THE CENTERLINE OF TURNBULL CREEK; THENCE NORTHEASTERLY, SOUTHEASTERLY, NORTHERLY, AND EASTERLY, ALONG THE MEANDERINGS OF SAID CENTERLINE OF TURNBULL CREEK, 775 FEET, MORE OR LESS, TO AN INTERSECTION WITH A LINE BEARING NORTH 89°27'02" EAST FROM AFORESAID REFERENCE POINT "A", ALSO BEING THE NORTHERLY LINE OF SAID SECTION 34; THENCE 89°27'02" EAST, ALONG LAST SAID LINE, 75 FEET, MORE OR LESS, TO THE SOUTHWEST CORNER OF AFORESAID SECTION 26; THENCE NORTH 00°32'10" WEST, ALONG THE AFORESAID WESTERLY LINE OF SECTION 26, A DISTANCE OF 465 FEET, MORE OR LESS, TO THE AFORESAID CENTERLINE OF TURNBULL CREEK; THENCE NORTHEASTERLY, SOUTHEASTERLY, NORTHERLY, NORTHWESTERLY AND EASTERLY, ALONG THE MEANDERINGS OF SAID CENTERLINE OF TURNBULL CREEK, 2010 FEET, MORE OR LESS, TO AN INTERSECTION WITH A LINE BEARING NORTH 53°58'46" WEST FROM AFORESAID REFERENCE POINT "B", ALSO BEING THE SOUTHERLY LINE OF AFORESAID LANDS DESCRIBED AND RECORDED IN OFFICIAL RECORDS BOOK 866, PAGE 1979; THENCE SOUTH 53°58'46" EAST, ALONG LAST SAID LINE, 805 FEET, MORE OR LESS, TO SAID REFERENCE POINT "B", AND CLOSE.

CONTAINING 523.9 ACRES, MORE OR LESS.

## **EXHIBIT "B"**

Concurrency Development Impacts

EXHIBIT A

Table 05
Project Proportionate Share Calculations
Grand Oaks LDTA - St. Johns County, FL

| MRN Link ID | Roadway | From/To | Residential Project Traffic for Propshare Calculations | Non-Resi Project Traffic for Propshare Calculations | Total Project Traffic for Propshare Calculations | Segment Length (miles) | Approved Peak Hour Service Volume | Approved LOS Table Peak Hour Service Volume | Improvement Required | Improved LOS D MSV | Increase in MSV |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 73.1 | International Golf Pkwy. | SR 16 to Royal Pines Parkway | 39 | - | 39 | 1.50 | 3,580 | 3,580 | Widen from 4 to 6 lanes | 5,390 | 1,810 |
| 73.2 | International Golf Pkwy. | Royal Pines Parkway to SR 9 (I-95) | 181 | - | 181 | 0.90 | 3,580 | 3,580 | Widen from 4 to 6 lanes | 5,390 | 1,810 |
| 91.2 | SR 16 | International Golf Pkwy to CR 2209 | 241 | 136 | 377 | 0.20 | 1,600 | 1,600 | Widen from 2 to 4 lanes | 3,580 | 1,980 |
| 92.1 | SR 16 | CR 2209 to Project West Entrance | 333 | 165 | 498 | 1.55 | 2,190 | 2,190 | Widen from 2 to 4 lanes | 5,660 | 3,470 |
| 92.1 | SR 16 | Project West Entrance to Project East Entrance | 333 | 165 | 498 | 1.17 | 2,190 | 2,190 | Widen from 2 to 4 lanes | 5,660 | 3,470 |
| 92.1 | SR 16 | Project East Entrance to West Mall Entrance | 333 | 165 | 498 | 1.63 | 2,190 | 2,190 | Widen from 2 to 4 lanes | 5,660 | 3,470 |
| 92.2 | SR 16 | West Mall Entrance to I-95 | 242 | 124 | 366 | 0.82 | 3,200 | 3,200 | Widen from 4 to 6 lanes | 4,820 | 1,620 |
| 93.1 | SR 16 | SR 9 (I-95) to Inman Rd. | 213 | - | 213 | 0.34 | 3,200 | 3,200 | Widen from 4 to 6 lanes | 4,820 | 1,620 |
| 132 | SR 9 (I-95) | International Golf Pkwy. to CR 210 | 166 | - | 166 | 8.90 | 9,190 | 9,190 | Widen from 6 to 8 lanes | 12,170 | 2,980 |

Table 05
Project Proportionate Share Calculations
Grand Oaks LDTA - St. Johns County, FL

| MRN Link ID | Roadway | From/To | Project Traffic Percent of Increase in MSV | Cost of Improvement Per Mile | Cost of Construction This Segment | Cost of ROW (17% of Const.) | Cost of Bridge Construction | Number of Signals for Modification | Cost of Signal Modification | Cost of Design and CEI (16% of ROW + Const) | Total Cost of Improvement This Segment | Total Project Proportionate Share | Residential Project Proportionate Share | Non-Residential Project Proportionate Share |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 73.1 | International Golf Pkwy. | SR 16 to Royal Pines Parkway | [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | | | $ - | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ - |
| 73.2 | International Golf Pkwy. | Royal Pines Parkway to SR 9 (I-95) | [illegible] | $ [illegible] | $ [illegible] | $ 764,277 | | 1 | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ - |
| 91.2 | SR 16 | International Golf Pkwy to CR 2209 | [illegible] | $ [illegible] | $ [illegible] | | | 1 | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] |
| 92.1 | SR 16 | CR 2209 to Project West Entrance | [illegible] | $ [illegible] | $ [illegible] | | $ [illegible] | | $ - | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] |
| 92.1 | SR 16 | Project West Entrance to Project East Entrance | [illegible] | $ [illegible] | $ [illegible] | | | | | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] |
| 92.1 | SR 16 | Project East Entrance to West Mall Entrance | [illegible] | $ [illegible] | $ [illegible] | | | 1 | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] |
| 92.2 | SR 16 | West Mall Entrance to I-95 | [illegible] | $ [illegible] | $ [illegible] | | | 1 | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] |
| 93.1 | SR 16 | SR 9 (I-95) to Inman Rd. | [illegible] | $ [illegible] | $ [illegible] | | | 3 | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ - |
| 132 | SR 9 (I-95) | International Golf Pkwy. to CR 210 | [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | | | $ - | $ [illegible] | $ [illegible] | $ [illegible] | $ [illegible] | $ - |
| | | | | | | | | | | | Total Roadway Segments Propshare Share | $ [illegible] | $ [illegible] | $ [illegible] |

# EXHIBIT "C"

## SR 16 Improvements and Engineering Cost Estimate

*Chindalur Traffic Solutions, Inc.*
*8515 Baymeadows Way, Suite 401*
*Jacksonville, FL 32255*



**Engineer's Opinion of Probable Construction Cost**

Date:                   5/10/2018
Project Name:           Widening of SR 16 - San Giacomo Road to Project Eastern Entrance
Engineer's Name:        Rajesh K. Chindalur, P.E., PTOE
Engineer's Company:     Chindalur Traffic Solutions, Inc.
Address:                8515 Baymeadows Way, Suite 401
                        Jacksonville, FL 32256

Roadway Length = 2.92 Miles

| Item # | Description | Unit | Estimated Quantity | Unit Cost | Total Cost |
|---|---|---|---|---|---|
| **Roadway** | | | | | |
| 1 | Clearing and Grubbing | LS | 1.00 | $ 264,000.00 | $ 264,000.00 |
| 2 | Regular Excavation | CY | 24000.00 | $ 1.67 | $ 40,128.00 |
| 3 | Embankment (Avg. 3' Depth)+(Median 2.5' Avg.) | CY | 150000.00 | $ 7.76 | $ 1,164,240.00 |
| 4 | Milling 1 1/2" | SY | 58200.00 | $ 1.32 | $ 76,824.00 |
| 5 | Type SP Asphalt (1-1/2") (ND) + (3" Avg Overbuild SD Inside Lane) | TN | 8220.00 | $ 88.11 | $ 724,228.03 |
| 6 | FC 12.5 Friction Course (TRAFFIC C) (1-1/2") | TN | 11100.00 | $ 86.62 | $ 961,464.24 |
| 7 | Optional Base Group 1 (4" Limerock Base Shoulder) | SY | 20400.00 | $ 9.09 | $ 185,444.16 |
| 8 | Optional Base Group 9 (10" Limerock Base Travel Lanes) | SY | 57600.00 | $ 13.20 | $ 760,320.00 |
| 9 | Type B Stabilization (12") | SY | 72600.00 | $ 3.85 | $ 279,190.56 |
| 10 | Sodding (Bermuda) | SY | 51000.00 | $ 2.04 | $ 104,121.60 |
| 11 | Seed & Mulch | SY | 51600.00 | $ 0.33 | $ 17,255.04 |
| 12 | Sidewalk, Concrete (4") - Both Sides | SY | 18000.00 | $ 26.61 | $ 479,001.60 |
| 13 | Guardrail - Roadway, Gen TL-3 | LF | 450.00 | $ 15.49 | $ 6,969.60 |
| 14 | Appr Trans - Bridge Anch Assy, F&I | EA | 2.00 | $ 1,992.76 | $ 3,985.52 |
| 15 | Guardrail End Anch Assy/End Trea - Flared | EA | 4.00 | $ 2,162.33 | $ 8,649.31 |
| 16 | Guardrail End Anch Assy/End Tre - Type II | EA | 2.00 | $ 881.83 | $ 1,763.66 |
| 17 | Miscellaneous Asphalt Pavement | TN | 22.50 | $ 199.70 | $ 4,493.21 |
| | | | | **Roadway Total** | $ 5,082,078.54 |
| **Drainage** | | | | | |
| 18 | Concrete Curb & Gutter, Type E | LF | 28200.00 | $ 14.37 | $ 405,245.28 |
| 19 | Concrete Curb & Gutter (Type F, FDOT) | LF | 990.00 | $ 9.59 | $ 9,496.08 |
| 20 | Concrete Pipe Culvert (Storm Sewer) (Class III) (24") | LF | 6540.00 | $ 41.25 | $ 269,746.22 |
| 21 | Concrete Pipe Culvert (Storm Sewer) (Class III) (36") | LF | 960.00 | $ 62.32 | $ 59,828.74 |
| 22 | Mitered End Section, Optional Round, 24" SD | EA | 66.00 | $ 1,075.19 | $ 70,962.72 |
| 23 | Inlets, DBI, TYPE C, <10' | EA | 12.00 | $ 2,125.67 | $ 25,508.00 |
| 24 | Inlets, DBI, TYPE D, <10' | EA | 6.00 | $ 3,644.18 | $ 21,865.06 |
| 25 | Inlets, Curb, TYPE P-6, <10' | EA | 18.00 | $ 5,280.00 | $ 95,040.00 |
| | | | | **Drainage Total** | $ 863,652.10 |
| **Signing and Pavement Marking** | | | | | |
| 26 | Signing & Pavement Marking | LS | 1.00 | $ 185,000.00 | $ 185,000.00 |
| | | | | **Signing & Pavement Marking Total** | $ 185,000.00 |
| **Signalization** | | | | | |
| 27 | Signalization | LS | 2.00 | $ 310,000.00 | $ 620,000.00 |
| | | | | **Signalization Total** | $ 620,000.00 |
| **Structures** | | | | | |
| 28 | Bridge Construction (140 LF Length X 44 FT Wide) | SF | 5600.00 | $ 265.00 | $ 1,484,000.00 |
| | (Includes Piles, Barrier Walls, Rip Rap, Reinforcement) | | | **Structures Total** | $ 1,484,000.00 |
| | | | | | |
| A | | | | **Total** | 8,233,730.64 |
| B | | | Maintenance Of Traffic (10% of A) | 10.00% | 823,373.06 |
| C | | | Erosion Control (3% of A) | 3.00% | 247,011.92 |
| D | | | Mobilization (5% of A) | 5.00% | 411,686.53 |
| E | | | Contingency (15% of A + B + C + D) | 15.00% | 1,457,370.32 |
| F | | | **TOTAL CONSTRUCTION (A + B + C + D + E)** | | 11,173,172.48 |
| G | | | CEI (10% of F) | 10.00% | 1,117,317.25 |
| H | | | Stormwater Pond Sites Acqusition | LS | 600,000.00 |
| I | | | Survey (3% of F) | 3.00% | 335,195.17 |
| J | | | Design (10% of F) | 10.00% | 1,117,317.25 |
| K | | | Geotechnical (3% of F) | 3.00% | 335,195.17 |
| L | | | Drainage Analysis and Permitting (3% of F) | 3.00% | 335,195.17 |
| | | | **GRAND TOTAL (Sum A through K)** | | 15,013,392.49 |

Source: Recent Local Industry Bids and FDOT Six Month Averge Unit Costs

Notes: The above estimated construction costs are based on the attached preliminary design for an ultimate sub-urban section (adding two lanes in one direction) and may vary with actual design and the cost of material at the time of construction. The sub-urban section anticipated to include raised median with curb and gutter on the inside and five foot buffered bicycle lanes on both sides and sidewalks on both sides of SR 16. This construction cost estimate includes the cost for only 5.4 acres of the total 9 acres of ROW that is anticipated to be required for storm water retention. Any costs associated with environmental and wetland impacts mitigation is to be determined.

**EXHIBIT "D"**

Platting Schedule

## SR 16 Improvemnts
## Developer Payments Schedule

**Platting Schedule:**

| Date Platted | Units Platted | Cumulative Platted | Amount Paid | Public Benefit | Total | Cumulative Paid |
|---|---|---|---|---|---|---|
| 2018 | | | | | - | - |
| 2019 | 212 | 212 | 2,067,000 | 1,116,183 | 3,183,183 | 3,183,183 |
| 2020 | 368 | 580 | 3,588,000 | 1,937,526 | 5,525,526 | 8,708,709 |
| 2021 | 581 | 581 | 4,085,250 | 2,206,041 | 6,291,291 | 15,000,000 |
| | | | $ 9,740,250 | $ 5,259,750 | $ 15,000,000 | |

*Assumes July 2018 CPA and PUD Adoption
**Absoprtion based upon market data and report from Urbanomics
***All Proportionate Share and Public Benefit is paid within 3 years from CPA and PUD Adoption

**EXHIBIT "E"**

Form of Impact Fee Credit Voucher

Voucher #_____

# St. Johns County Impact Fee Voucher
# GRAND OAKS

1. Name and address of Developer/Grantor:     Southeast Development Partners, LLC
                                              P.O. Box 662
                                              Ponte Vedra Beach, FL  32004

2. Name and address of Grantee:               _____

3. Legal description of subject property:     See attached Exhibit "A"

4. Subdivision or Master Development Plan name:  Grand Oaks Planned Unit Development

The   undersigned   Developer/Grantor   confirms   that   it   has   received   from
_____ on _____ funds sufficient for the
following impact fees required under the applicable St. Johns County Impact Fee Ordinance, as
amended, as indicated below.  Developer/Grantor gives notice to St. Johns County, Florida that
the following sums should be deducted from the applicable Impact Fee Credit account of the
Developer/Grantor.

_____ Roads                   Ordinance   No.   87-57   in   the   amount   of
                                  $_____

**SOUTHEAST DEVELOPMENT PARTNERS, LLC,**
a Florida limited liability company

By: _____
Print: _____
Its: _____



**St. Johns County**
**Clerk of the Circuit Court**
**Hunter S. Conrad**
**St. Augustine, FL 32084**
Office: (904) 819-3632

EXHIBIT A

| | | |
|---|---|---|
| Transaction # 1772976 | Agent # | Source: |
| Receipt # 2018055817 | Attention: | Returned: |
| Cashier Date: September 28, 2018 | Name: SOUTHEAST DEV | Will Call # |
| Cashier: NIKKI | Address: | |

---

AGREEMENT    CFN: 2018070392    Book: 4618 Page: 1451    Consideration:

From: SOUTHEAST DEVELOPMENT PARTNERS LLC    To: ST JOHNS COUNTY

100-RECORDING    $239.50

PAYMENT: CHECK    6669200917    AMOUNT: $239.50

| Total Payments: | Total Fees: | Shortage: | Check Overage: | Escrow Deposit: | Escrow Balance: |
|---|---|---|---|---|---|
| $ 239.50 | $ 239.50 | $ 0.00 | $ 0.00 | $0.00 | $0.00 |

9/28/2018  1:24:51P  Page 1 of 1