## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Jacksonville Division

SOUTHEAST DEVELOPMENT
PARTNERS, LLC, a Florida
limited liability company; and
SOUTHEAST LAND VENTURES,
LLC, a Florida limited liability
company,

      Plaintiffs/Counter-
      Defendants,

vs.                                                   3:23-cv-00846-MMH-PDB

ST. JOHNS COUNTY, FLORIDA,
a political subdivision of the State
of Florida,

      Defendant/Counter-Plaintiff,

vs.

DAY LATE ENTERPRISES, INC.,
a Florida for-profit corporation,

      Counter-Defendant.

_____/

## ST. JOHNS COUNTY, FLORIDA'S
## SECOND AMENDED COUNTERCLAIM FOR
## <u>DECLARATORY JUDGMENT AND SUPPLEMENTAL RELIEF</u>

Defendant/Counter-Plaintiff, ST. JOHNS COUNTY, FLORIDA, (the

"County"), pursuant to Federal Rule of Civil Procedure 13, hereby sues

Plaintiff/Counter-Defendant SOUTHEAST DEVELOPMENT PARTNERS, LLC, ("Southeast Partners"), Plaintiff/Counter-Defendant SOUTHEAST LAND VENTURES, LLC ("Southeast Ventures"), and Counter-Defendant DAY LATE ENTERPRISES, INC. ("Day Late") for a Declaratory Judgment and Supplemental Relief and states as follows:

## Nature of the Action

1.      This is an action for declaratory judgment concerning the rights and obligations of the Parties under a certain Concurrency and Impact Fee Credit Agreement entered into on or about September 21, 2018, between the County and Southeast Partners (the "Agreement").  A true and correct copy of the Concurrency and Impact Fee Credit Agreement is attached to Plaintiffs' Amended Complaint as **Exhibit A** and is incorporated herein by reference.   Southeast Partners' commitments and obligations under the Agreement are binding upon Southeast Partners and its successors and assigns, including Southeast Ventures.

2.      The County is a political subdivision of the State of Florida and has all powers granted to it under the Constitution and Laws of the State of Florida.

3.      Southeast Partners is a Florida limited liability company doing business within St. Johns County, Florida.

2

4.      Southeast Ventures is a Florida limited liability company doing business within St. Johns County, Florida.  Southeast Ventures is the assignee of Southeast Partners' rights under the Agreement, having acquired such rights on or about October 3, 2018.  A copy of the assignment of development rights is attached to Plaintiffs' Amended Complaint as **Exhibit B** and is incorporated herein by reference.  Given this assignment, Southeast Partners and Southeast Ventures are collectively referred to herein as the "Developer".

5.      Southeast Partners and Southeast Ventures were incorporated on the same date and are managed by the same two members: Marc Harris and Keith Hyatt.

6.      Day Late is a Florida for-profit corporation doing business within St. Johns County, Florida.  Day Late is or was the legal title holder of the real property which is the subject of the Agreement.  At the time the Agreement was executed, Day Late owned the entire approximate 524-acre subject property, but now, after conveying individual parcels or tracts, Day Late holds title to the remaining acreage. Day Late's presence is necessary for this Court to grant complete relief in the determination of the County's counterclaim.  Day Late, as owner of the real property subject to the Agreement, possesses an interest in the subject of the action and is so situated that disposing of the action will impair or impede Day Late's interest in the

3

development rights afforded under the Agreement. Day Late is joined hereto as required by Federal Rule of Civil Procedure 19(a)(1)(B).

7.      Day Late was the original applicant under the County's Proportionate Fair Share Program, having submitted its application to the County on or about June 20, 2018. Day Late sought to obtain the County's approval of a Concurrency and Impact Fee Credit Agreement to develop residential and commercial units on Day Late's property. In its application, Day Late proposed to widen an approximately three-mile segment of State Road 16 from two lanes to four lanes to mitigate the development's transportation impacts within the proposed impact area. A copy of the application is attached hereto as **Exhibit 1**. Thereafter, Southeast Partners also applied to obtain the County's approval of a Concurrency and Impact Fee Credit Agreement to develop residential and commercial units on Day Late's property under the same terms and conditions.

8.      Venue is proper in this Court as the property which is the subject of the Agreement is located within St. Johns County.

9.      This Court has jurisdiction under the provisions of 28 U.S.C. §§ 1367, 1441, and 2201, and Federal Rule of Civil Procedure 57.

10.      An actual, immediate, substantial, justiciable controversy exists between the Parties concerning the obligations of the Parties under the Agreement

4

and whether the Developer has failed to comply with its covenants and obligations under the Agreement, including sections 4 and 5. Further, an additional controversy exists regarding whether, as a result of the default by the Developer: (1) the County may halt approval of additional plats or construction plans within the Property unless and until the Developer complies with the conditions of Section 4 and 5 of the Agreement; (2) the Per Unit Payments paid under the Agreement have now become non-refundable; and (3) the Per Unit Payments shall now be used by the County to construct a portion of the SR 16 Improvements or another road improvement within the project impact area.

11.     There is a bona fide, actual, present, practical need for the declaration, and the rights, powers, and obligations of the County and the Developer are dependent on the facts or the law applicable to the facts. The requested relief is not merely the giving of legal advice by the courts or the answers to questions propounded from curiosity.

12.     The Parties have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law. The requested declaratory relief deals with a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts. The County has joined all known interested parties in this action, and the antagonistic and adverse interests are all before the Court by proper process.

13.     The County is entitled to a declaratory judgment determining that the Developer has failed to comply with its material covenants and obligations under the Agreement and that as a result, that the County is entitled to the following remedies: (1) to halt the approval of additional plats or construction plans within the Property until and unless the Developer complies with the conditions of Sections 4 and 5 of the Agreement; (2) that, pursuant to Section 11, the Per Unit Payments paid by the Applicant to date shall become non-refundable to the Developer and the County shall use such Payments to construct a portion of the SR 16 Improvements or another road improvement within the project impact area; (3) require the Developer to assign the Road Design documents and any Permits to the County, free of charge; and as alternative relief, (4) specific performance to require the Developer perform its obligations under the Agreement.

## Background

14.     On or about September 19, 2016, the Developer applied to the County for the approval of a large-scale Comprehensive Plan amendment for the Grand Oaks PUD (the "Development").   The subject property consists of approximately 524 acres and is located on State Road 16, west of Interstate 95 (the "Property").   The Developer proposed a mixed-use project on the Property that included a maximum of 999 single family dwelling units with related amenities, a maximum of 100,000

6

square feet of commercial space, and a maximum of 50,000 square feet of office space.  The Property was to be developed in one ten (10) year phase.

15.    To obtain the approval of the Development, various actions were required by the Board of County Commissioners of St. Johns County (the "BOCC"). Initially, there was a requirement that the County's Comprehensive Plan Future Land Use Map be amended to change the classification of the Property from Rural/Silviculture to Residential C.  Additionally, there would be an additional text amendment addressing the limitations of the Development to a maximum of 999 single family dwelling units with related amenities, a maximum of 100,000 square feet of commercial space, and a maximum of 50,000 square feet of office space. Further, the BOCC would be required to approve the rezoning of the Property from Open Rural (OR) to Planned Unit Development (PUD).

16.    As the Grand Oaks PUD projected the generation of a total of 1,099 new external P.M. peak hour trips, the impacts from the development would result in significant adverse impacts to several roadway segments within the studied areas surrounding the Development, including various segments of State Road 16.  In conjunction with the amendment to the County's Comprehensive Plan Future Land Use Map, the Comprehensive Plan itself, and the rezoning of the Property to allow

the Development, an agreement was necessary to address the various impacts of the development on the infrastructure in the subject area.

17.     To address these adverse impacts on the transportation network resulting from the Development, the Developer's Traffic Consultant submitted a calculation for the proportionate share amount for the Development pursuant to the County's Concurrency Management Ordinance in the amount of $10,132,643.  The Developer also proposed a Public Benefit Contribution of $4,867,357 which would also be used for its transportation contribution.  Both amounts combined equaled $15,000,000.

18.     However, in lieu of paying the monetary contributions, the Developer proposed to meet its transportation impacts by providing for the improvement of an approximately three (3) mile segment of State Road 16, from San Giacomo Road to the eastern project entrance.  At the time, based upon the cost estimates prepared by the Developer's Traffic Consultant, the estimated cost of the proposed improvement was $15,013,392 (the "SR 16 Improvements").  In addition, the Developer would dedicate approximately sixteen (16) acres of rights-of-way for County Road 2209. Upon the Developer making these contributions, the remaining impacts of the Grand Oaks PUD on the other road segments would be the responsibility of the State and the County.

19.     Ultimately, all of the various required BOCC approvals were granted in conjunction with each other at the same public meeting.  More specifically, the approval of the amendment to the Comprehensive Plan Future Land Use Map, the approval of the Comprehensive Plan Text Amendment, and the approval of the rezoning of the Property to the Grand Oaks PUD were granted with the understanding, based on the Developer's representations, that the impacts of the Development on the transportation network and other infrastructure systems within St. Johns County would be addressed by the Developer.

20.     The Developer and the County entered into the Agreement on or about September 21, 2018, to implement the Developer's proposal to address the impacts to the transportation network, including the construction of the SR 16 Improvements. Also included within the Agreement was a mechanism that would provide for periodic contributions by the Developer towards the proposed cost of the SR 16 Improvements.  Under this mechanism, the Developer would contribute the amount of $7,500 for each unit within each plat for the first 212 units within the concurrency development.  For unit 213 and above, the Developer would contribute $15,000 per unit (the "Per Unit Payment").  All funds contributed on the per unit basis would be available to the Developer for its use in the construction of the SR 16 Improvements. As of March 2023, a total of $5,040,000 had been contributed through the Per Unit

Payments made pursuant to the Agreement. Further, road impact fee credits were granted for all of the Per Unit Payments made at the Development.

21. The Agreement imposed multiple obligations upon the Developer, including acquisition of all necessary ponds, design of the SR 16 Improvements, application for and obtainment of all necessary permits, construction of the SR 16 Improvements, and acceptance of the SR 16 Improvements by FDOT (collectively, the "Conditions of the Agreement").

22. Under the Agreement, prior to the earlier of fourteen (14) months of the Effective Date of the Agreement, or the BOCC's approval of a plat containing the 443rd residential unit, and as a condition of such approval, the Developer would acquire offsite pond sites necessary to provide drainage for the SR 16 Improvements and would complete design of the SR 16 Improvements.

23. The Agreement also required the Developer apply for, pursue, and obtain all Florida Department of Transportation ("FDOT"), environmental, and other permits and required government approval for the SR 16 Improvements within one (1) year of the end of the deadline for acquiring the pond sites and completing design of the SR 16 Improvements.

24. Further, prior to the earlier of the BOCC's approval, and as a condition of approval, of a plat containing the 581st residential unit, or within 180 days

following receipt of a written notice from the County to the Developer indicating that the traffic capacity of SR 16 Improvements had reached 90% of its level volume, the Developer was required to commence construction on the SR 16 Improvements. There was no prohibition from the Developer beginning the SR 16 Improvements earlier.

25.     The Agreement also expressly provided that the Developer would obtain FDOT acceptance of the completed SR 16 Improvements within three (3) years after posting a bond for the SR 16 Improvements with FDOT.

26.     As of Spring of 2022, development of the Grand Oaks PUD had reached the threshold point where the Developer was required to fulfill some or all of the Conditions of the Agreement.  However, to date, the Developer has failed to satisfy some or all of the Conditions of the Agreement.

27.     Additionally, through its words and actions, the Developer has unequivocally evinced its intention to refuse to perform under the Agreement, specifically as it pertains to the construction of the SR 16 Improvements.  On February 21, 2023, the Developer's representative sought to amend the Agreement to limit its obligation to provide the SR 16 Improvements purportedly due to the increased costs of the road project.  The Developer stated that the cost of the Project had increased from an estimate of approximately $15,000,000 in 2018 to

11

$57,000,000 in 2022, and the Developer would not fund the SR 16 Improvements itself.   The Developer sought an amendment which drastically reduced its obligations to fund the SR 16 Improvements to a specific dollar amount.   Under the amendment to the Agreement sought by the Developer, the Developer would no longer be obligated to construct the SR 16 Improvements, the platting triggers would be removed so that the Development would no longer be phased in accordance with the design and commencement of construction, and the Developer's financial obligation would be capped at the amount of $16,700,000, which consisted of the $15,000,000 in proportionate share and public benefit contributions and the amount of $1,700,000 from the conveyance of various ponds and engineering costs.

28.   The Developer suggested that the Agreement did not contemplate that the Developer would be responsible for all of the costs of the SR 16 Improvements. However, the Agreement, which was jointly authored and executed by the Developer with the advice and consent of Developer's counsel, expressly addressed the potential that costs would increase prior to the construction of the SR 16 Improvements.   The Agreement also made it clear that the obligation for the construction of the SR 16 Improvements continued to be the Developer's, even if the cost exceeded the estimate or the amount contributed through the Per Unit Payments.   Section 4.e.(vi) of the Agreement provided as follows:

12

(vi)   At the time the Applicant achieves Commencement, the Applicant may apply to the County for a release of the Escrow Funds to the Applicant which the Applicant shall then have the right to use for payment of all Pre-Construction Costs, Permits Costs and cost related to construction of the SR 16 Improvements (the "Construction Costs").   <u>Applicant understands that the Escrow Funds shall not be sufficient to pay the Estimated Total Cost of the SR 16 Improvements and Applicant agrees that it shall pay all costs for the SR 16 Improvements which are in excess of the Escrow Funds.</u>

Agreement § 4.e.(vi).  (emphasis added).

29.    After consideration of the request of the Developer to modify the Agreement, the BOCC denied the request and found that the Developer was in default as the Developer had not commenced the construction of the SR 16 Improvements within the time required by the Agreement.

30.    Pursuant to that determination, the BOCC directed that the money which had been received as Per Unit Payments be provided to FDOT to allow them to begin preliminary work on the SR 16 Improvements.  As a result of this litigation, FDOT requested that the initial contribution toward the design work on the SR 16 Improvements be from revenues other than the Per Unit Payments.  To facilitate the request of FDOT and allow desperately needed preliminary work on SR 16 Improvements that was not completed by the Developer to go forward, the County subsequently agreed to advance funds to FDOT from other sources, subject to being

repaid from the Per Unit Payments at the end of this litigation.  As of the date of this filing, the Per Unit Payments continue to be in the possession of the County.

31.     The provisions of the Agreement expressly authorized the Board to take such action.  Under the provisions of Section 11, the Agreement provided as follows:

> In addition to other remedies, if the Applicant defaults hereunder, the Per Unit Payments paid by the Applicant to date shall become non-refundable to the Applicant and shall be used by the County to construct a portion of the SR 16 Improvements or another road improvement within the project impact area.  Additionally, the Applicant must assign the Road Design documents and any Permits to the County, free of charge, within thirty (30) days of such default.

Agreement § 11 Remedies.

32.     The Developer has breached the Agreement by failing to comply with the Conditions of the Agreement.  The Developer's failure to comply with the Conditions of the Agreement constitutes a material breach of the Agreement.

33.     The County seeks a declaratory judgment that the Developer has breached and/or anticipatorily breached the Agreement, and that the County has all rights and remedies as set forth in the Agreement.

34.     All conditions precedent have been satisfied for the maintaining of this action.

14

## COUNT I
### Declaratory Judgment – Breach of Contract

35.    The County realleges the allegations in paragraphs 1 through 34 of the Counterclaim as if set forth in their entirety.

36.    The Developer has materially breached the Agreement by failing to comply with the Conditions of the Agreement.  As a result of this breach, and to the County's detriment, the Developer has extensively developed the Property and created substantial impacts on the transportation network within St. Johns County but failed to comply with its Agreement to address those impacts.

37.    The County has been damaged by the breach of the Agreement by the Developer.  Under the terms of Section 11 of the Agreement, upon a breach, the County is granted the right and authority to: (1) halt the approval of additional plats or construction plans within the Property until and unless the Developer complies with the conditions of Sections 4 and 5 of the Agreement; (2) determine that the Per Unit Payments paid by the Applicant to date shall become non-refundable to the Developer and the County shall use such Payments to construct a portion of the SR 16 Improvements or another road improvement within the project impact area; and (3) require the Developer to assign the Road Design documents and any Permits to the County, free of charge.

38.     A declaration of the rights and authority of the County upon a material breach of the Agreement by the Developer is necessary and appropriate at this time for the reasons stated above.

39.     The County has no adequate remedy at law and prays the Court will grant a declaratory judgment and determine that the County has the authority to utilize its remedies under the Agreement.

**WHEREFORE,** the County prays the Court will enter a declaratory judgment in favor of the County as follows:

A.     To enter a Final Judgment determining and declaring that:

   (1)     under the Agreement, the Developer is obligated to pay all costs for the SR 16 Improvements; and

   (2)     the Developer breached the Agreement by failing to comply with the Conditions of the Agreement.

B.     Declare that, pursuant to the Agreement and the breach by the Developer, the County has the authority and may exercise such authority as follows:

   (1)     to halt the approval of additional plats or construction plans within the Property until and unless the Developer complies with

16

the conditions of Sections 4 and 5 of the Agreement or some other entity constructs the SR 16 Improvements; and

(2)    that the Per Unit Payments paid for units at the Property to date shall become non-refundable to the Developer and the County may use such Payments to reimburse the advance of funds paid to FDOT for the work on the SR 16 Improvements or construct a portion of the SR 16 Improvements or another road improvement within the project impact area with such funds; and

(3)    require the Developer to assign the Road Design documents and any Permits to the County, free of charge.

C.    That the County be awarded its costs incurred in this action; and

D.    Such other and further relief as the Court deems just and proper.

## COUNT II
### Declaratory Judgment – Specific Performance
### (Alternative Claim for Relief to Count I)

40.    The County realleges the allegations in paragraphs 1 through 34 of the Counterclaim as if set forth in their entirety.

41.    The County has no adequate remedy at law from the breach of the Agreement by the Developer.  The Developer has entered into an Agreement and substantially received the benefit from that Agreement by committing to construct

17

the SR 16 Improvements to address the impacts of its development.  The Developer has received the benefit of the Agreement by developing the Property and substantially increasing the impacts on the transportation network within St. Johns County.  Having achieved the significant benefit from the development, it now seeks to avoid its obligation to address those impacts.

42.    The Agreement is a valid and binding Agreement with definite and certain terms.  It further contains a mutuality of obligations between the parties.  The County is entitled to the specific performance under the Agreement and that the Developer shall comply with the Conditions of the Agreement, including design and construction of the SR 16 Improvements.    The construction of the SR 16 Improvements is unique and specifically required to address the obligations under the Agreement and the impacts of the development upon the transportation network within the County.

**WHEREFORE,** as an alternative remedy to the claim for relief contained within Count I of the Counterclaim, the County prays the Court will enter a declaratory judgment in favor of the County as follows:

A.    To enter a Final Judgment determining and declaring that the Developer is in breach of the Agreement by its failure to comply with the Conditions of the Agreement;

18

B.     That the Developer shall specifically perform its obligations under the Agreement and comply with the Conditions of the Agreement, and that compliance with the Conditions of the Agreement shall be completed within the parameters contained within the Agreement;

C.     That the County may hold in abeyance plat or other Development approvals unless and until the SR 16 Improvements are commenced and completed in accordance with the terms of the Agreement;

D.     That the County be awarded its costs incurred in this action; and

E.     Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Gregory T. Stewart*
GREGORY T. STEWART – Lead Counsel
Florida Bar No. 203718
CARLY J. SCHRADER
Florida Bar No. 14675
MATTHEW R. SHAUD
Florida Bar No. 122252
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
(850) 224-4070
(850) 224-4073 (Facsimile)
gstewart@ngnlaw.com
cschrader@ngnlaw.com
mshaud@ngnlaw.com
legal-admin@ngnlaw.com

**ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF
ST. JOHNS COUNTY, FLORIDA**

20

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served via electronic mail to all counsel of record, on this 29th day of December,

2023.


/s/ *Gregory T. Stewart*
GREGORY T. STEWART – Lead Counsel

Exhibit 1



**St. Johns County**
**Growth Management Department**
**4040 Lewis Speedway**
**St. Augustine, FL 32084**
**904/2090609**

| Proportionate Fair Share | Agreement Application | Date: | 6-20-18 |

This application, together with ALL REQUIRED EXHITIBTS and application fee, should be complete and filed with the Growth Management Department.  An Initial Determination is required prior to application

| Owner | Day Late Enterprises, Inc. | Phone Number | (904) 412-4853 |
| | (or Owner representing group of owners) | Fax Number | |
| Address | 4185 State Road 16 | e-mail | denismsmithjr@msn.com |
| City | St. Augustine | State | FL | Zip Code | 32092 |

| Agent | Ellen Avery-Smith, Esq. of Rogers Towers, P.A. | Phone Number | (904) 825-1615 |
| Address | 100 Whetstone Place, Suite 200 | Fax Number | (904) 396-0663 |
| City | St. Augustine | State | FL | Zip Code | 32086 | e-mail | |

Project Location | South of State Road 16, west of Interstate 95, east of Pacetti Road and north of County Road 208

Future Land Use Designation | C-RES     Current Zoning | OR     Proposed Zoning | PUD

Property Tax ID No | 027420-0000, 027440-0010, 027370-0000; 027270-0000

Statement of Reasons for the Request:

Applicant seeks to obtain the County's approval of a Concurrency and Impact Fee Credit Agreement for development of a maximum of 674 non-age-restricted single-family units, a maximum of 325 age-restricted single-family units, a maximum of 100,000 square feet of commercial space and a maximum of 50,000 square feet of office space with related amenities.

Results of Initial Determination:

The County has determined that the proposed development will require a transportation proportionate fair share payment or related mitigation.

Brief Description of Proposed Mitigation:

Applicant proposes to widen an approximately three-mile segment of State Road 16 between San Giacomo Road and the eastern Grand Oaks Entrance from two to four lanes to mitigate for the development's transportation impacts within the project impact area.

I HEREBY CERTIFY THAT ALL INFORMATION IS PROVIDED HEREIN IS CORRECT TO THE BEST OF OUR KNOWLEDGE:
Signature of all owners or person authorized to represent this application:

Signed By

Printed or typed name(s) | Ellen Avery-Smith, Esq.

Person to receive all correspondence regarding this application:

| Name | Ellen Avery-Smith, Esq. | Phone Number | (904) 825-1615 |
| Address | 100 Whetstone Place, Suite 200 | Fax Number | (904) 396-0663 |
| City | St. Augustine | State | FL | Zip Code | 32086 | e-mail | eaverysmith@rtlaw.com |

Revised March 29, 2012