**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**Jacksonville Division**

SOUTHEAST DEVELOPMENT PARTNERS, LLC, a Florida limited liability company; and SOUTHEAST LAND VENTURES, LLC, a Florida limited liability company,

Plaintiffs/Counter-Defendants,

vs. 3:23-cv-00846-MMH-PDB

ST. JOHNS COUNTY, FLORIDA, a political subdivision of the State of Florida,

Defendant/Counter-Plaintiff,

vs.

DAY LATE ENTERPRISES, INC., a Florida for-profit corporation,

Counter-Defendant.
_____________________________________/

**ST. JOHNS COUNTY, FLORIDA'S RESPONSE IN OPPOSITION TO DAY LATE ENTERPRISES, INC.'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM**

Defendant/Counter-Plaintiff St. Johns County, Florida (the "County"), by and through undersigned counsel, and in opposition to Counter-Defendant Day Late

Enterprises, Inc.'s Motion to Dismiss Second Amended Counterclaim and Incorporated Memorandum of Law (Doc. 33) states as follows:

**SUMMARY OF PROCEEDINGS**

On March 14, 2023, Southeast Development Partners, LLC ("Southeast Partners") filed a five-count complaint seeking declaratory, injunctive, and other relief in the Circuit Court of the Seventh Judicial Circuit in and for St. Johns County, Florida. Following waiver and acceptance of service, the County filed its counterclaim against Southeast Partners and two other entities on May 16, 2023. Southeast Partners sought leave to file an amended complaint, which was granted on June 26, 2023. Plaintiffs' Amended Complaint for Declaratory, Injunctive, and Other Relief ("Amended Complaint") (Doc. 5) seeks a declaration that the County's contract default finding involving Southeast Partners was improper, and includes claims for breach of contract, inverse condemnation, and violations of due process under 42 U.S.C. § 1983.[1] In response, the County timely filed an Answer, Affirmative Defenses, and Amended Counterclaim ("Amended Counterclaim") (Doc. 16). On July 20, 2023, the County removed the state court action based upon federal claims raised for the first time in the Amended Complaint. (Doc. 1). Following removal, Counter-Defendant Day Late Enterprises, Inc. ("Day Late")

[1] The Amended Complaint joins Southeast Land Ventures, LLC ("Southeast Ventures") as a co-plaintiff.

filed its Motion to Dismiss Amended Counterclaim and Incorporated Memorandum of Law (Doc. 15) on August 4, 2023. The County responded in opposition on August 24, 2023 (Doc. 17), then moved unopposed for leave to file a second amended counterclaim (Doc. 29) on December 29, 2023. Such leave was granted on January 2, 2024 (Doc. 30), and the County filed its Second Amended Counterclaim for Declaratory Judgment and Supplemental Relief the following day (Doc. 31). Day Late filed its Motion to Dismiss Second Amended Counterclaim and Incorporated Memorandum of Law (Doc. 33) on January 17, 2024, to which the County now responds.[2]

## MEMORANDUM OF LAW

### I. LEGAL STANDARD.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Willborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019) (unpublished) (quoting Fed. R. Civ. P. 8). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must

[2] This Response in Opposition addresses Day Late's dismissal arguments in a different order than contained in the Motion to Dismiss (Doc. 33).

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## II. EVALUATION OF THE SUFFICIENCY OF THE SECOND AMENDED COUNTERCLAIM IS PURSUANT TO FEDERAL LAW.

As an initial matter, the County's Second Amended Counterclaim pleads claims pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. (Doc. 31 ¶ 9). It does not, as Day Late suggests, plead claims under the Florida Declaratory Judgment Act, Fla. Stat. §§ 86.011, *et seq.* (See Doc. 33 at 10–12). Because Day Late makes no argument related to the Federal Declaratory Judgment Act, and instead focuses on inapplicable state law, its Motion to Dismiss should be denied. See Wilmington Sav. Fund Soc'y, FSB v. Bus. Law Grp., P.A., No. 8:15-cv-2831-T-36TGW, 2016 U.S. Dist. LEXIS 196258, at *12, 2016 WL 11491321, at *4–5 (M.D. Fla. Sept. 30, 2016) ("Because Defendants have made no argument that the claim should be dismissed under this [Federal Declaratory Judgment] Act, at this juncture, the Court will deny Defendants' motion to dismiss . . . ."); see also Rock Custom Homes, Inc. v. Am. Zurich Ins. Co., 2019 U.S. Dist. LEXIS 158908, at *4, 2019 WL 4477819 (M.D. Fla. Sept. 17, 2019) ("Neither party makes argument

related to the Federal Declaratory Judgment Act, instead focusing on the inapplicable state law. For that reason alone, the Motion could be dismissed.”).

## III. THE SECOND AMENDED COUNTERCLAIM STATES CAUSES OF ACTION FOR DECLARATORY RELIEF.

The Federal Declaratory Judgment Act grants federal courts the power to “declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.” 28 U.S.C. § 2201(a). The Federal Rules of Civil Procedure “govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201.” Fed. R. Civ. P. 57. Therefore, “the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions, . . . .” Thomas v. Blue Cross & Blue Shield Ass’n, 594 F.3d 823, 830 (11th Cir. 2010) (internal citation and quotation omitted).

To maintain a claim under the Federal Declaratory Judgment Act, an actual controversy must exist. 28 U.S.C. § 2201(a). An “actual controversy” requires a “definite and concrete” controversy. Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Const. Co., 607 F.3d 1268, 1275 n. 14 (11th Cir. 2010) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)). The issue is “whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.” MedImmune, Inc. v. Genentech,

Inc., 549 U.S. 118, 127 (2007) (internal citation omitted). A claim should proceed "if declaratory relief would (1) serve a useful purpose in clarifying and settling the legal relations in issue, and (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Rock, 2019 U.S. Dist. LEXIS 158908, at *4–5 (internal quotation marks and citation omitted). A controversy that is unripe, moot, or purely advisory will not support a declaratory judgment claim. See Blitz Telecom Consulting, LLC v. Peerless Network, Inc., 151 F. Supp. 3d 1294, 1302 (M.D. Fla. Dec. 21, 2015).

With the federal requirements in mind, an examination of the County's Second Amended Counterclaim (Doc. 31) reveals the following. Day Late owns real property within St. Johns County, Florida. (See Doc. 31 ¶ 6). Together, Day Late and Southeast Partners proposed to develop a mixed-use project on Day Late's land, consisting of up to 999 single-family homes and up to 150,000 square feet of commercial and office space (the "Grand Oaks Planned Unit Development" or the "Development"). (Doc. 31 ¶¶ 6, 7, 14; Doc. 5, Ex. A at 2, 4).[3] Consistent with this plan, Southeast Partners submitted multiple development applications to the County

---

[3] In lieu of reattaching and incorporating the identical exhibits attached to Plaintiffs' Amended Complaint, the County's Second Amended Counterclaim cited to the Amended Complaint when referencing the exhibits. (See Doc. 31 ¶ 1). Such citations are used herein.

seeking various types of development approvals for Day Late's land. (Doc. 31 ¶¶ 14–15). The Development's size was anticipated to greatly impact the surrounding infrastructure, including specifically, State Road 16, which runs adjacent to the project and was projected to receive more than 1,000 new external P.M. peak hour trips per day. (Doc. 31 ¶ 16). In addition to the development approvals, execution of a certain Concurrency and Impact Fee Credit Agreement (the "Agreement") was required in order to address the Development's impacts on the surrounding infrastructure. (Id.).

On September 21, 2018, the Developer[4] entered into the Agreement with the County. (Doc. 31 ¶ 1). The Developer does not own the real property subject to the Agreement, but instead is the contract purchaser of approximately 524 acres of real property currently owned or formerly owned by Day Late. (Doc. 31 ¶ 6; Doc. 5, Ex. A at 1). When the Agreement was executed, Day Late owned the entire 524-acre subject property, but now, after selling or conveying individual parcels or tracts, Day

[4] For practical purposes, Plaintiffs/Counter-Defendants Southeast Partners and Southeast Land Ventures, LLC ("Southeast Ventures") are the same entity. Both companies were incorporated on the same date, and both are managed by the same two members: Marc Harris and Keith Hyatt. (Doc. 31 ¶ 5). After Southeast Partners acquired development approvals from the County, Southeast Partners assigned the development rights to Southeast Ventures. (Doc. 31 ¶ 4; Doc. 5, Ex. B). Thus, Southeast Partners and Southeast Ventures are collectively referred to as the "Developer."

Late holds title to the remaining acreage subject to the Agreement. (Doc. 31 ¶ 6). The Agreement governed the Developer's—and its successors' and assigns'—responsibilities and obligations to implement transportation concurrency in relation to the Grand Oaks Planned Unit Development. (Doc. 31 ¶¶ 16, 20; Doc. 5, Ex. A at 2, 4).

The Developer voluntarily entered into the Agreement to implement its proposal to address the impacts of the Development on the local transportation network. (Doc. 31 ¶ 20). This included construction of certain improvements to State Road 16 (the "SR 16 Improvements") to minimize the overwhelming adverse impacts to several roadway segments adjacent to the Development. (Doc. 31 ¶ 18). Specifically, the Developer proposed to remedy the Development's transportation impacts by improving a three-mile segment of State Road 16. (Id.). Day Late also made the same road-widening proposal to the County. (Doc. 31 ¶ 7; Ex. 1).

To partially fund the road-widening project, the Developer agreed to make incremental payments to the County, which the County would separately account for. (Doc. 31 ¶ 20; Doc. 5, Ex. A at 7). The SR 16 Improvements, the Developer underestimated, would cost $15,013,392.49. (Doc. 31 ¶ 18; Doc. 5, Ex. A at 5). The voluntarily executed Agreement—jointly authored by the Developer with the advice and consent of the Developer's counsel—also included specific timing requirements relating to the SR 16 Improvements. (Doc. 31 ¶¶ 20–25; Doc. 5, Ex. A at 5–9). As

of Spring 2022, the Grand Oaks Planned Unit Development had reached the threshold point where the Developer was required to fulfill some or all of the specified conditions of the Agreement (*e.g.*, acquire all necessary stormwater ponds, design the SR 16 Improvements, apply for and obtain all necessary permits, construct the SR 16 Improvements, and/or obtain acceptance of the SR 16 Improvements by the Florida Department of Transportation[5]). (Doc. 31 ¶ 26).

Instead of fulfilling its obligations under the Agreement, the Developer sought to amend the Agreement after the Developer determined that the costs of the SR 16 Improvements had increased. (Doc. 31 ¶ 27). In spite of express contract language to the contrary, the Developer asserted that the Agreement did not contemplate that the Developer, or its successors or assigns, would be responsible for the full costs of the SR 16 Improvements. (Doc. 31 ¶ 28; Doc. 5, Ex. A at 8, § 4.e.(vi)). The Board of County Commissioners of St. Johns County denied the Developer's request to modify its obligations under the Agreement and found the Developer in default of the Agreement for failing to commence construction of the SR 16 Improvements within the required time. (Doc. 31 ¶ 29). The Board of County Commissioners subsequently directed that specific action, expressly authorized by the Agreement,

[5] Collectively, these requirements are referred to as the "Conditions of the Agreement." (Doc. 31 ¶ 21).

occur to remedy the Developer's breach of the Agreement. (Doc. 31 ¶¶ 30–31; Doc. 5, Ex. A at 14–15, § 11).

The County filed its Second Amended Counterclaim seeking declaratory judgment on multiple bases: (1) that Southeast Partners (and its assignee, Southeast Ventures) actually breached and/or anticipatorily breached the Agreement by failing to comply with the Conditions of the Agreement (Doc. 31 ¶ 32–33); (2) that the County has all rights and remedies as set forth in the Agreement (Doc. 31 ¶ 33); and (3) that the County is entitled to the alternative remedy of specific performance to enforce the Developer's and its assigns' compliance with the Conditions of the Agreement (Doc. 31 ¶ 42).

The County's Second Amended Counterclaim (Doc. 31) sufficiently states causes of action under the Federal Declaratory Judgment Act. Actual, bona fide, substantial controversies exist between the County and the Developer, and by extension, Day Late. Specifically, the Second Amended Counterclaim sufficiently alleges disputes involving: (1) whether the Agreement obligates the Developer to pay all costs for the SR 16 Improvements; and (2) whether the Developer breached the Agreement by failing to comply with the Conditions of the Agreement. The Second Amended Counterclaim also adequately alleges the need and usefulness in clarifying whether the County possesses the authority to exercise particular remedies due to the Developer's breaches, including utilizing the alternative remedy of

specific performance. The County's request for a declaration that the County has the authority to halt the approval of additional plats or construction plans—*i.e.*, to halt development on Day Late's land—directly affects Day Late and its interest in its real property. Any determination or declaration relating to the development rights attached to Day Late's real property (*i.e.*, those rights held by the Plaintiffs under the Agreement and the corresponding development approvals) inherently affects Day Late and the ultimate ability to develop its land. The County's allegation of necessity for a declaration of rights and the County's allegation of no adequate remedy at law support the County's doubt as to its rights and powers under the Agreement, including whether it may take certain actions which would directly affect Day Late's property interests (*e.g.*, halting all additional development upon Day Late's land unless and until the Developers satisfy their contractual obligations). (See Doc. 31 ¶¶ 38–39). Granting declaratory relief would terminate the uncertainties surrounding the Agreement and the Parties' obligations, rights, and privileges thereunder. Finally, the controversies are neither unripe, moot, nor purely advisory. The Second Amended Counterclaim properly asserts the bona fide, actual, present need for the declarations based upon the Parties' present, adverse, and antagonistic interests in both the facts of the disputes and the law governing the Parties' positions. (Doc. 31 ¶¶ 11–12). As such, the County's Second Amended Counterclaim states a cause of action for multiple declaratory relief claims under the

Federal Declaratory Judgment Act, and Day Late's Motion to Dismiss should be denied.[6]

## IV. DAY LATE IS A PROPERLY JOINED PARTY TO THE COUNTY'S SECOND AMENDED COUNTERCLAIM.

Initially, Day Late was required to be joined to the instant action under Florida Rule of Civil Procedure 1.170(h), and was permitted to be joined by Section 86.091, Florida Statutes. Following removal and amendment, Day Late remains a properly joined party; Rule 19, Federal Rules of Civil Procedure, obligates the County to include Day Late as a party to its Second Amended Counterclaim.

Rule 19(a)(1)(B), Federal Rules of Civil Procedure, requires joinder of a party, whose joinder will not deprive the court of subject matter jurisdiction, if:

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or

---

[6] Analysis under the Florida Declaratory Judgment Act yields the same result. The Second Amended Counterclaim sufficiently alleges: (1) actual, bona fide disputes between the Parties; (2) justiciable questions regarding whether the County may exercise certain remedies based upon the Developer's actual and/or anticipatory breaches of the Agreement; (3) doubt as to the County's rights and privileges under the Agreement; and (4) the bona fide, actual, present need for the declaration based upon the Parties' present, adverse, and antagonistic interests in both the facts of the disputes and the law governing the Parties' positions. See Sec. First Ins. Co. v. Phillips, 312 So. 3d 502, 503 (Fla. 5th DCA 2020) (internal citations omitted).

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).

Under Federal Rule of Civil Procedure 19(a)(1)(B)(i), Day Late is a necessary party to the instant litigation. Neither Southeast Partners nor its assignee, Southeast Ventures, is the legal title holder of any of the property subject to the Concurrency and Impact Fee Credit Agreement. Southeast Partners is the contract purchaser of approximately 524 acres of real property currently owned or formerly owned by Day Late. (Doc. 31 ¶ 6; Doc. 5, Ex. A at 1, Ex. B at 1). After Southeast Partners acquired development approvals from the County, Southeast Partners assigned those development rights to Southeast Ventures. (Doc. 31 ¶ 4; Doc. 5, Ex. B). The County seeks to have this Court declare that, pursuant to the Agreement and due to the breaches by the Developer, the County has the authority to, among other things, halt the approval of additional development on Day Late's property. (Doc. 31 at 16).

All of the rights to develop Day Late's property, afforded under the Agreement, are held by the Plaintiffs. Those development rights for Day Late's property are now in dispute. To the extent those development rights are impacted by the declaratory relief sought by the County, Day Late's rights are necessarily impacted by the same relief. Because Southeast Partners and Southeast Ventures maintain certain development rights under the Agreement related to Day Late's

remaining acreage, it necessarily follows that Day Late, the actual title holder of the land to be developed, also has a claim or interest in the outcome of the County's declaratory claims seeking to vitiate those development rights. Day Late, as owner of the real property subject to the Agreement, possesses an interest in the subject of the action and is so situated that disposing of the action will impair or impede Day Late's interest in the development approvals.

Day Late's interest in the Second Amended Counterclaim is clear: because Day Late is the legal title holder of the remaining, to-be-developed land, if the County is granted the declaratory relief sought, Day Late stands to lose all of the current development potential on its land for an indeterminate amount of time. Specifically, approval of additional plats or construction plans within Day Late's property would be halted unless and until the Developer complies with its obligations under the Agreement or some other entity constructs the SR 16 Improvements. Joinder in the Second Amended Counterclaim provides Day Late the opportunity to protect its interests in the development rights afforded under the numerous development approvals from the St. Johns Board of County Commissioners. (See Doc. 31 ¶¶ 15, 19). If Day Late is not joined, Day Late's interest in the development rights currently attached to its real property may be affected without Day Late's ability to protect its interests.

Further, because Day Late maintains a present interest in the real property subject to the Agreement, unless and until all development rights under the Agreement are severed from the land owned by Day Late, Day Late retains an ongoing interest in the outcome of the litigation and remains a necessary party. This is the type of factual scenario Rule 19 contemplates, and joinder under Rule 19 is appropriate.[7] Had the County failed to include Day Late as a party to its Second Amended Counterclaim, the counterclaim could be subject to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(7).

The nature of the Second Amended Counterclaim undoubtedly affects Day Late's rights and interests. Day Late's presence is necessary for this Court to grant complete relief in the determination of the County's Second Amended Counterclaim, and thus, the County is obligated to join Day Late under Federal Rule of Civil Procedure 19.

[7] Day Late's third-party beneficiary argument noted in Footnote 3 of its Motion to Dismiss is similarly problematic. The development approvals granted as a result of, and in conjunction with, execution of the Agreement directly benefit Day Late. It is unreasonable to suggest that the landowner is not an intended beneficiary of the approvals to develop the landowner's real property.

## CONCLUSION

For the foregoing reasons, Counter-Defendant Day Late Enterprises, Inc.'s Motion to Dismiss Second Amended Counterclaim and Incorporated Memorandum of Law (Doc. 33) should be denied.

                              Respectfully submitted,

                              s/ Gregory T. Stewart
                              GREGORY T. STEWART – Lead Counsel
                              Florida Bar No. 203718
                              CARLY J. SCHRADER
                              Florida Bar No. 14675
                              MATTHEW R. SHAUD
                              Florida Bar No. 122252
                              Nabors, Giblin & Nickerson, P.A.
                              1500 Mahan Drive, Suite 200
                              Tallahassee, Florida 32308
                              (850) 224-4070
                              (850) 224-4073 (Facsimile)
                              gstewart@ngnlaw.com
                              cschrader@ngnlaw.com
                              mshaud@ngnlaw.com
                              legal-admin@ngnlaw.com

                              **ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF ST. JOHNS COUNTY, FLORIDA**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the U.S. District Court, Middle District of Florida, via the CM/ECF system, which will also serve a copy to all counsel of record, on this 6th day of February, 2024.

s/ Gregory T. Stewart
GREGORY T. STEWART