# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| **SOUTHEAST DEVELOPMENT PARTNERS, LLC, & SOUTHEAST LAND VENTURES, LLC,**<br><br>   **Plaintiffs and Counter-Defendants,**<br><br>**v.**<br><br>**ST. JOHNS COUNTY, FLORIDA,**<br><br>   **Defendant and Counterclaimant.** | **3:23-cv-00846-CRK-PDB** |

## INTRODUCTION

This case involves a dispute arising from a contract between a county and a developer, where the cost to improve a road in connection with a development under the contract far exceeded estimated costs. The county maintains the developer committed to building the road regardless of the cost, while the developer maintains that its cost commitments were limited. Before the Court is a motion for summary judgment filed by Defendant and Counterclaimant St. Johns County, Florida (the "County"), and a motion for partial summary judgment filed by Plaintiffs and Counter-Defendants Southeast Development Partners, LLC ("SEDP") and Southeast Land Ventures, LLC ("SELV"),[1] filed in connection with the suit brought in this Court

---

[1]  Although SEDP and SELV are both named plaintiffs, as will be discussed more fully below, SEDP assigned its rights and obligations under the Agreement to SELV. See County Mot. at 10–11; Dev. Mot. at 8.

**OPINION AND ORDER - 1**

by SEDP and SELV.  <u>See generally</u> [County's] Mot. Summ. J. & Memo. L Supp'n, Apr. 26, 2024, ECF No. 44 ("County Mot."); [Dev.'s] Mot. Partial Summ. J., Apr. 26, 2024, ECF No. 47 ("Dev. Mot.").  The County moves for summary judgment on its claims as well as those alleged by SELV and SEDP.  <u>See</u> County Mot. at 1–2; <u>see also</u> [Dev.'s] Am. Compl. For Decl., Inj., & Other Relief at ¶¶ 51–77, July 21, 2023, ECF No. 5 ("Am. Compl."); [County's] Sec. Am. Counterclaim For Decl. J. & Supp. Relief at ¶¶ 35–42, Jan. 3, 2024, ECF No. 31 ("SACC").  SELV and SEDP similarly move for summary judgment on all of the County's claims and all of their own except for their allegations of unlawful exaction, under 42 U.S.C. § 1983, against the County in Count IV of the amended complaint.  <u>See</u> Dev. Mot. at 1–2; Am. Compl. at ¶¶ 51–77; SACC at ¶¶ 35–42.  For the following reasons, the County's motion is granted, and SEDP and SELV's motion is denied.

## BACKGROUND[2]

In September of 2016, SEDP applied to the County for a large-scale comprehensive plan[3] amendment for the Grand Oaks Planned Unit Development ("Grand Oaks PUD"), consisting of approximately 524 acres of land owned by Day Late (the "Property"), located on the south side of State Road 16 ("SR 16").  County Mot. at 3; Dev. Mot. at 7.  SEDP's proposed development of a "mixed-use project

---

[2]  The factual background is based on the agreed upon facts in the parties' statements of undisputed facts, contained in their respective motions before the Court and the exhibits filed in support of their motions.

[3]  A county's "comprehensive plan" provides "the principles, guidelines, standards, and strategies for the orderly and balanced future economic, social, physical, environmental, and fiscal development of the area that reflects community commitments to implement the plan and its elements."  Fla. Stat. § 163.3177(1).

**OPINION AND ORDER - 2**

3:23-cv-00846-CRK-PDB

including a maximum of 999 residential units, 100,000 square feet of commercial space, and 50,000 square feet of office space."[4]  County Mot. at 3; <u>see</u> Dev. Mot. at 8. The County's comprehensive plan required SEDP to show a "public benefit" that would justify changing zoning designations.  County Mot. at 5; Dev. Mot. at 7.

Additionally, the County's Land Development Code required SEDP to enter into a Concurrency and Impact Fee Credit Agreement (the "Agreement"),[5] with the County to initiate the Grand Oaks PUD.  <u>See</u> St. John's County's Land Development Code, as codified in St. Johns, Fla., Land Dev. Code art. XI § 11.09.00 (implementing Fla. Stat. § 163.3190) ("LDC").  <u>See</u> County Mot. at 4; Dev. Mot. at 4, 7.  The Concurrency Agreement would mitigate transportation impacts of the development. County Mot. at 4; Dev. Mot. at 10.  The BOCC determined that the Grand Oaks PUD

---

[4] SEDP also submitted a map amendment to the Comprehensive Plan Future Land Use Map, changing the Property's designation from Rural/Silviculture to Residential C.  County Mot. at 4; Dev. Mot. at 7.  SEDP applied to rezone the Property from Open Rural to Planned Unit Development to accommodate the proposed units in the development.  County Mot. at 4; Dev. Mot. at 7.

[5] Concurrency ensures that public facilities and services expand at the same time as the demands of a new development.  <u>See</u> Fla. Stat. § 163.3180(5)(d); <u>see also</u> LDC § 11.09.01 (explaining the purpose of transportation concurrency is to mitigate the impacts of a development on transportation).  Consequently, concurrency requires subject property developers to "'pay for a proportionate share of the costs of the expansion of public services' if the 'existing public services are inadequate' to support a new development."  <u>Eisenhower Prop. Grp., LLC v. Hillsborough Cnty.</u>, No. 8:21-CV-229-VMC-TGW, 2021 WL 2660973, at *1 (M.D. Fla. June 29, 2021) (citing Fla. Stat. § 163.3180).  The County, having adopted transportation concurrency, implements the system through its Proportionate Fair Share Program ("Program"), codified in Section 11.09.00 of the County's LDC.  <u>See</u> LDC § 11.09.01.  Proportionate share contributions "may include, without limitation, separately or collectively, private funds, contributions of land, and construction and contribution of facilities," which are then applied as credit toward the road impact fees for the development. LDC §§ 11.09.06A, E.

**OPINION AND ORDER - 3**

3:23-cv-00846-CRK-PDB

would generate additional external peak hour trips on various roadway segments, including the parts of SR 16 serving as the access road to the development. County Mot. at 4; Dev. Mot. at 10. Because the BOCC staff had determined that the affected roads were inadequate to accommodate the impacts to the development, SEDP contracted Chindalur Traffic Solutions, Inc. (the "Analyst") to perform a land development traffic analysis. County Mot. at 4 (first citing Exh. 11B: Agenda for the BOCC Meeting, July 17, 2018, ECF No. 42-17; and then citing Exh. 11C: Agenda Item & Staff Rep. For Appr. Proportionate Fair Share Agr. at 4, June 15, 2018, ECF No. 42-17 ("Staff Rep.")); Dev. Mot. at 10. The analysis yielded an estimated proportionate share contribution amount of $10,132,643.00 to remedy roadway link deficiencies attributable to the Grand Oaks PUD. County Mot. at 4; Dev. Mot. at 10.

To satisfy both its concurrency obligations and the public benefit requirement, SEDP proposed to widen three miles of SR 16 leading up to the entrance of the Grand Oaks PUD ("SR 16 Improvements"). County Mot. at 5; Dev. Mot. at 9. At the time, SEDP's Analyst estimated the SR 16 Improvements to total $15,000,000.00. County Mot. at 5; Dev. Mot. at 8. Of that total, the BOCC would consider $10,132,643.00 to be SEDP's proportionate share contribution in satisfaction of its concurrency obligations, and the remaining $4,867,357.00 to be the public benefit. County Mot. at 5; Dev. Mot. at 8. The Concurrency Agreement provided for the funding of the improvements to SR 16:

> At the time [SEDP] achieves Commencement, [SEDP] may apply to the County for a release of the Escrow Funds to [SEDP], which [SEDP] shall then have the right to use for payment of all Pre-Construction Costs, Permits Costs and costs related to construction of

**OPINION AND ORDER – 4**

> the SR 16 Improvements (the "Construction Costs"). [SEDP] understands that the Escrow Funds shall not be sufficient to pay the Estimated Total Cost of the SR 16 Improvements and [SEDP] agrees that it shall pay all costs for the SR 16 Improvements which are in excess of the Escrow Funds.

Agr. at § 4e(vi); see County Mot. at 7–8; id. at 8 n.2

After Commencement,[6] SEDP can request that the County disburse the Escrow Funds to fund the SR 16 Improvements. Agr. at § 4e(vi); see County Mot. at 9–10, 31; Dev. Mot. at 12. "Escrow Funds" refers to the specific amounts that SEDP would pay the County ("Per Unit Payments") at certain times. Agr. at § 4e(iv); see County Mot. at 9; Dev. Mot. at 12.[7] The County agreed to "hold the aggregate Per Unit Payments" in "a separate escrow account"—defined as "Escrow Funds"—to be used exclusively for SR 16 Improvements.[8] Agr. at § 4e(iv)(b); see County Mot. at 9; Dev. Mot. at 12. As Grand Oaks PUD was developed, the Per Unit Payments, collected by the County pursuant to Section 4e(iv) of the Agreement, were identified by the County in a balance sheet liability account within the "transportation trust fund," earmarked for expenditures related to the Grand Oaks PUD. See Exh. 14:

---

[6] Commencement is defined as "the Applicant posting a bond for the SR 16 Improvements with [the Florida Department of Transportation ('FDOT')]." Agr. at § 4e(v); see Dev. Mot. at 14.

[7] For the first 212 residential units constructed in the development, SEDP would pay $7,500.00 per unit. Agr. at § 4e(iv)(a); see County Mot. at 9; Dev. Mot. at 12. Starting with the 213th unit, SEDP's owed sum rose to $15,000.00 per unit within each plat. Agr. at § 4e(iv)(b); see County Mot. at 9; Dev. Mot. at 12.

[8] Although the Agreement requires that SEDP pay the County the Escrow Funds, SEDP structured the transactions to be paid by the homebuilders who acquire property within the Grand Oaks PUD to construct the homes. See Exh. 3: Dep. Keith Hyatt at 95:10–97:14, Mar. 13, 2024, ECF No. 42-3 ("Hyatt Dep."); County Mot. at 12; Dev. Resp. at 14.

**OPINION AND ORDER – 5**

Dep. Jesse Dunn at 18:5–20:22, Dec 8, 2023, ECF No. 42-21 ("Dunn Dep."). The account was not a separate bank account, but rather a separately identified account within the fund accounting system used by the County. See Exh. 19: Dep. Wade Schroeder at 85:1–85:24, 102:14–104:8, Mar. 20, 2024, ECF No. 42-19 ("Schroeder Dep.").

Further, SEDP would, within sixty days of the effective date of the Agreement, (1) commence acquisition of offsite drainage ponds ("Pond Acquisition") for the SR 16 Improvements and (2) in coordination with FDOT, commence design of the SR 16 Improvements ("Road Design"). Agr. at § 4e(i); see County Mot. at 9; Dev. Mot. at 13. Section 4e(ii) required that Section 4e(i) be completed "prior to the earlier of" either fourteen months of the effective date, or the BOCC's approval of a plat containing the 443rd residential unit as a condition of such approval, defined as "the Design Period." Agr. at § 4e(ii); see County Mot. at 9; Dev. Mot. at 13. Within 30 days following the end of the Design Period, SEDP would "apply for and pursue all FDOT, environmental and other permits and required governmental approval for the SR 16 Improvements," all of which had to be obtained within one year of the end of the Design Period. Agr. at § 4e(iii); see County Mot. at 9; Dev. Mot. at 13.

The Agreement required the County to adopt SEDP's SR 16 Improvements "into the County's Five-Year Schedule of Capital Improvements in the County's Capital Improvements Element ("CIE") of its Comprehensive Plan at the next scheduled update." Agr. at § 6c; see County Mot. at 10; Dev. Mot. at 9–10.

**OPINION AND ORDER - 6**

Finally, the Agreement set forth the remedies for breach, including (1) "all remedies available at law or in equity", (2) specific performance, (3) injunctive relief, (4) the County's right to "halt approval of additional plats or construction plans," and (5) the County's right to retain the Escrow Funds.  Agr. at § 11; see County Mot. at 10.  The parties incorporated into the Agreement an attachment titled "Exhibit C," which contained the "SR 16 Improvements and Engineering Cost Estimate" as prepared by SEDP's Analyst.  See Agr. at Exh. C; County Mot. at 7; Dev. Mot at 11–12; see also Agr. at § 16 (incorporating all exhibits appended to the Agreement).

On October 1, 2018, in accordance with Section 13 of the Agreement,[9] SEDP executed an instrument, Assignment of Dev. Rights at 1–2, Oct. 1, 2018, ECF No. 5-2 ("Assignment") assigning its development rights under the Agreement to SELV. County Mot. at 10–11; Dev. Mot. at 8.  Specifically, SEDP contracted to sell, assign, transfer, convey, and allocate to SELV all:

> present and future rights, title and interest, if any, relating to the Property in the following[]: existing permits, approvals, rights, plans, reports, studies, site plans, surveys, marketing and engineering studies and reports, engineering plans, warranties, utility rights and capacities including all water and sewer agreements, guaranties, bonds and similar rights and interests relating solely to the Property, including but not limited to, all site improvement construction plans and engineering drawings together with all other planned unit development rights, entitlements and concurrency and impact fee agreements pertaining to or benefiting the Property issue by [the County].

---

[9]  Under Section 13 of the Agreement, all rights and obligations of SEDP could be "assigned and delegated to a successor or owner/developer."  Agr. at § 13; County Mot. at 2, 9–11; Dev. Mot. at 8, 12.  If SEDP assigned its rights to such a party, then SEDP would be "relieved of further liability under this Agreement."  Agr. at § 13; County Mot. at 2, 9–11; Dev. Mot. at 8, 12.

**OPINION AND ORDER - 7**

Assignment at 1–2.  Clause 4 of the Assignment stated that transfer of rights "shall be binding on and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns, and the benefits hereof shall run with the land."  Id. at 2.  The County acknowledged the Assignment on October 3, 2018.[10]  Id. at 3.

Starting in November 2018, SELV sought to toll its deadlines for the Grand Oaks PUD, citing declared states of emergency in Florida pursuant to under Fla. Stat. § 252.363(1)(b).  See Dev. Mot. at 17; [County] Resp. Opp'n [Dev. Mot.] at 4, May 17, 2024, ECF No. 50 ("County Resp.").  Specifically (1) on November 27, 2018, it invoked the opioid epidemic, Hurricane Maria, and Hurricane Florence; (2) on March 5, 2020, it invoked Hurricane Dorian; and (3) on August 28, 2021, it invoked the Covid-19 pandemic.  See Exhs. 16A–E: Grand Oaks E.O. Ext. Not., Nov. 26–27, 2018, Mar. 5, 2020, Aug. 18, 2021, Sept. 8, 2021, ECF Nos. 48-19–48-23 ("EO Ext. Nots."); see also Dev. Mot. at 17; County Resp. at 4.

In August of 2021, a contractor hired by SELV began coordinating with FDOT to design the SR 16 Improvements pursuant to Section 4e(i) of the Agreement.  See Dep. William Earnest Schaefer, II at 76:14–22, 83:3–84:25, Mar. 29, 2024, ECF No. 48-10 ("Schaefer Dep."); see also County Mot. at 15–16; Dev. Mot. at 15–16.  FDOT indicated that revisions to the plan were required, including some that amounted to a "complete redesign" of those drafted by SELV.  See, e.g., Schaefer Dep. at 81:4–19;

---

[10]  SELV began development of the Grand Oaks PUD on October 1, 2018.  County Mot. at 10–11; Dev. Mot. at 8.

**OPINION AND ORDER - 8**

Schaefer Dep. at Exh. 42; <u>see also</u> County Mot. at 16–17; Dev. Mot. at 15–16.  The SR 16 Improvements with FDOT's revisions increased SEDP's funding obligations to an estimated cost of $57 million.  <u>See, e.g.</u>, Schaefer Dep. at 81:4–19; Schaefer Dep. at Exh. 42; <u>see also</u> County Mot. at 16, 46; Dev. Mot. at 15–16.

After FDOT's revisions of the SR 16 Improvements design, SELV, in a series of communications over multiple months, sought to amend the Agreement with the County.  County Mot. at 15; Dev. Mot. at 19.  The amendment proposed, inter alia, that SELV pay FDOT $15,000,000.00—the amount equal to its Total Project Transportation Contribution under the Agreement—who would then design and complete the SR 16 Improvements.  County Mot. at 16; Dev. Mot. at 19.  The $15,000,000.00 payment would effectively satisfy SELV's obligations to construct the SR 16 Improvements under the Agreement.  County Mot. at 16; Dev. Mot. at 19.

In May of 2022, a check for approximately $2,415,000.00 Per Unit Payment check was issued to the County.  County Mot. at 13; Dev. Mot. at 21.  However, that check was never deposited into the account holding the Per Unit Payments.  County Mot. at 13; Dev. Mot. at 21.  In February of 2023, the check was reissued to and deposited by the County into the account.  County Mot. at 13; Dev. Mot. at 21.  A few months later, in May of 2023, the County Clerk moved the Per Unit Payments into a newly established separate bank account with Bank of America, where all Per Unit Payments currently remain.  County Mot. at 13; Dev. Mot. at 12–13.  To date, the account contains $5,040,000.00 in payments made under the Agreement.  County Mot. at 13; Dev. Mot. at 13.

OPINION AND ORDER - 9

3:23-cv-00846-CRK-PDB

On February 21, 2023, the BOCC held a hearing on SELV's proposed amendment to the Agreement.  County Mot. at 17; Dev. Mot. at 19.  The BOCC rejected SELV's proposed amendment.  County Mot. at 17; Dev. Mot. at 20.  Moreover, the BOCC found SELV in default of the Agreement for failing to comply with certain terms of the Agreement.  County Mot. at 17; Dev. Mot. at 20.  Given the finding of SELV's default, the BOCC directed that the $5,040,000.00 collected from the Per Unit Payments, now non-refundable under Section 11 of the Agreement, be transferred to the FDOT for commencement and completion of the SR 16 Improvements.  County Mot. at 17; Dev. Mot. at 20.

On March 14, 2023, SEDP and SELV filed a civil action against the County in the Circuit Court of the Seventh Judicial Circuit in and for St. Johns County, Florida.  See Civil Cover Sheet, Mar. 14, 2023, ECF No. 1-4.  In responding to the state court complaint, the County counterclaimed against SEDP and SELV and impleaded third-party Defendant Day Late under Florida Rule of Civil Procedure 1.170 and Fla. Stat. § 86.091.  See generally Def. Answer & Aff. Defs. to Compl., Counterclaim, & Third P. Compl., May 16, 2023, ECF No. 1-4; Summons, May 16, 2023, ECF No. 1-4.[11]  After the complaint was amended, the County removed the action to the United States

_____

[11] On January 17, 2024, Day Late moved to dismiss the County's claims against it in the SACC for misjoinder and for failure to state a claim upon which relief could be granted.  See generally [Day Late's] Mot. Dismiss [SACC] & Inc. Memo. L., Jan. 17, 2024, ECF No. 33.  On September 10, 2024, the Court dismissed Day Late from the instant action under Federal Rule of Civil Procedure 21.  See Order & Opinion, Sept. 10, 2024, ECF No. 68.

OPINION AND ORDER – 10

**3:23-cv-00846-CRK-PDB**

District Court for the Middle District of Florida.  <u>See</u> Not. Removal at 1–3, July 20, 2023, ECF No. 1.

On July 21, 2023, SEDP and SELV filed the amended complaint.  <u>See generally</u> Am. Compl.  They allege four causes of action, including those for declaratory, injunctive, and other relief, against the County concerning the Agreement, including: judgment declaring the County's interpretation of the Agreement and finding of default invalid, illegal, and unconstitutional (Count I); a permanent injunction enjoining the County from breaching the Agreement and disbursing the Escrow Funds (Count II); a finding of inverse condemnation under Fla. Const. art. X, § 6(a) (Count III); a finding of unlawful exaction under 42 U.S.C. § 1983 (Count IV).  <u>Id.</u> at ¶¶ 51–77.

The County, after amending its answer, affirmative defenses, and counterclaim in response to the amended complaint, filed the SACC on January 3, 2024.  <u>See generally</u> SACC.  In the SACC, the County counterclaimed against SEDP, SELV, and Day Late, impleaded under Federal Rule of Civil Procedure 19(a)(1)(B), for two causes of action.  <u>See id.</u> at ¶¶ 6, 35–42.  Count I alleges breach of contract and requests judgment declaring the rights and authority of the County upon the SELV's breach of the Agreement, including its ability (1) to halt approval and construction of additional plats, (2) to retain the Escrow Funds, and (3) require SELV to assign the Road Design documents and any permits to the County, free of charge. <u>Id.</u> at ¶¶ 35–39.  In the alternative, Count II request declaratory judgment for SELV's specific performance under the Agreement as valid and binding.  <u>Id.</u> at ¶¶ 39–42.

**OPINION AND ORDER - 11**

3:23-cv-00846-CRK-PDB

On April 26, 2024, the parties submitted their respective motions before the Court. <u>See generally</u> County Mot; Dev. Mot. The motions were fully briefed on May 31, 2024. <u>See generally</u> [Dev.'s] Resp. Opp'n [County Mot.], May 17, 2024, ECF No. 51 ("Dev. Resp."); [County's] Reply Supp'n [County Mot.], May 31, 2024, ECF No. 52 ("County Reply"); [Dev.'s] Reply To [County Resp.], May 31, 2024, ECF No. 53 ("Dev. Reply").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Court has supplemental jurisdiction "over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).[12] When a state claim attaches to a federal claim under Section 1367, the Court must apply substantive state law to those claims. <u>Lundgren v. McDaniel</u>, 814 F.2d 600, 605 (11th Cir. 1987).

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the

---

[12] Count IV of the amended complaint seeks declaratory relief against the County for "violating due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution" pursuant to 42 U.S.C. § 1983, thus giving the Court federal question subject-matter jurisdiction. <u>See</u> Am. Compl. at ¶¶ 71, 77. The remaining state law claims attach to Count IV under 28 U.S.C. § 1367(a). <u>See</u> <u>id.</u> at ¶¶ 51–69; SACC at ¶¶ 35–42.

3:23-cv-00846-CRK-PDB

burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). The moving party must support its motion with the relevant portions of the pleadings, answers to interrogatories, depositions, admissions on file, and any affidavits, which it believes demonstrate its entitlement to summary judgment. Id. at 323–24.

If the movant shows there are no genuine issues of material fact, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 257; Varnedoe v. Postmaster Gen., No. 21-11186, 2022 WL 35614, at *3 (11th Cir. Jan. 4, 2022). A fact is "material" if it may affect the outcome of the suit under governing law. See Burgos v. Chertoff, 274 F. App'x 839, 841 (11th Cir. 2008). If a party fails to properly support an assertion of fact or address another party's assertion of fact, the Court may consider the fact undisputed or grant summary

OPINION AND ORDER – 13

3:23-cv-00846-CRK-PDB

judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

The Court resolves all reasonable doubts in favor of the nonmoving party when evaluating a motion for summary judgment. Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013). When conflicts arise between the facts presented by the parties, the Court credits the nonmoving party's version. Id. at 1252. Moreover, the Court cannot weigh conflicting evidence to resolve factual disputes. See Skop v. City of Atlanta, 485 F.3d 1130, 1140 (11th Cir. 2007). Summary judgment must be denied if the Court determines there are factual issues disputed by the parties, and the case proceeds to trial. Marquez v. Costco Wholesale Corp., 550 F. Supp. 3d 1256, 1272 (S.D. Fla. 2021).

## DISCUSSION

### I.   Claims For Declaratory Relief

The County seeks a declaration of rights of the Agreement, including that: (1) under the Agreement, SELV is obligated to pay all costs for the SR 16 Improvements; (2) SELV breached the Agreement by failing to comply with the Conditions of the Agreement; (3) the County, in responding to a breach of the Agreement, has authority to (i) halt approval of additional plats or construction plans within the Grand Oaks PUD until and unless SELV complies with the conditions of the Agreement or some other entity constructs the SR 16 Improvements; (ii) use the Per Unit Payments, now non-refundable to SELV, to construct the SR 16 Improvements or another road improvement; and (iii) require SELV to assign the Road Design documents and any

OPINION AND ORDER - 14

**3:23-cv-00846-CRK-PDB**

Permits to the County, free of charge.[13]  See County Mot. at 19, 35, 37; SACC at

¶¶ 35–39.  The County also challenges SEDP's standing to bring claims for

declaratory relief under the Agreement given its assignment of all contractual rights

to SELV.  See County Mot. at 46–47.  SEDP and SELV dispute the County's

contentions, arguing that both SEDP and SELV have standing to bring claims under

the Agreement, and further seeks declaratory relief because (1) the County's default

finding was improper based on SELV's tolling of any deadlines and the County's

subsequent waiver of enforcement, and (2) the County breached the Agreement.  Dev.

Mot. at 23–37; Am. Compl. at ¶¶ 51–64.  Because summary judgment for the County

is proper on all claims, its motion is granted; SEDP and SELV's motion is denied.

    **A.**    **Standing**

    The County challenges SEDP's standing to assert rights under the Agreement

as contained in Counts I and II, arguing that SEDP lacks standing because of its

assignment to SELV on October 1, 2018.[14]  County Mot. at 39–47; see also Dev. Mot.

at 44–45.  SEDP argues the claims in Count I and Count II survive despite the

assignment because of SELV's standing to bring the claims, as the "presence of one

party with standing is sufficient" to satisfy Article III.  Dev. Mot. at 44–45.  For the

---

[13]  Alternatively, the County seeks a final judgment declaring that SELV breached the Agreement and should specifically perform its obligations pursuant to the terms and parameters set forth in the Agreement.  County Mot. at 37–38; SACC at ¶¶ 40–42.

[14]  Standing is necessary for subject-matter jurisdiction, which is a threshold inquiry as it empowers the Court to hear a case.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 559–60 (1992); United States v. Cotton, 535 U.S. 625, 630 (2002).

**OPINION AND ORDER - 15**

following reasons, SELV has standing to bring Counts I and II of the amended complaint.

A plaintiff must have standing to sue under Article III of the U.S. Constitution. U.S. Const. art. III, § 2; FDA v. All. for Hippocratic Med., 602 U.S. 367, 378 (2024); Lujan, 504 U.S. at 560. To have standing, plaintiffs must demonstrate that they have a "personal stake" in the issue sought to be heard by a federal court. See All. for Hippocratic Med., 602 U.S. at 379 (citing TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)). A plaintiff possesses a personal stake in a matter if: (1) the plaintiff suffered an injury in fact (2) that was fairly traceable to the defendant's actions, and (3) that the injury will likely be redressed by a favorable decision from the Court. Id. at 380, TransUnion, 594 U.S. at 423; Lujan, 504 U.S. at 560–61. "The party invoking federal jurisdiction bears the burden of establishing standing—and, at the summary judgment stage." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 411–12 (2013) (internal citations, quotations, and alterations omitted).

Under Florida contract law,[15] "[a]ll contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment." Kohl v. Blue Cross & Blue Shield of Fla., Inc., 988 So.2d 654, 658 (Fla. Dist. Ct. App. 2008); see also Kitsos v. Stanford, 291 So.2d 632, 634 (Fla. Dist. Ct. App. 1974). "Once an assignment has

---

[15] The parties do not challenge the applicability of Florida contract law. See generally County Mot. (citing Florida contract law throughout); Dev. Mot. (citing Florida contract law throughout).

3:23-cv-00846-CRK-PDB

been made, the assignor no longer has a right to enforce the interest because the assignee has obtained all rights to the thing assigned." <u>One Call Prop. Servs. Inc. v. Sec. First Ins. Co.</u>, 165 So.3d 749, 752 (Fla. Dist. Ct. App. 2015) (internal quotations and citation omitted).

Here, the undisputed facts show that SEDP assigned its rights under the Agreement to SELV.[16] <u>See</u> Assignment 1–2; County Mot. at 10–11; Dev. Mot. at 8. Under the terms of Section 13 of the Agreement:

> The rights and obligations of Applicant may be assigned and delegated to a successor or owner/developer and, in such event, the assignor shall be relieved of further liability under this Agreement.  If the applicant assigns its rights and obligations hereunder to another party, the Applicant must provide a copy of the instrument transferring or assigning the obligation(s) and specifying which obligation is being transferred and to whom.

Agr. at § 13.[17]  It is undisputed that SELV has expended resources in constructing the completed portions of the Grand Oaks PUD.  <u>See</u> County Mot. at 15 (acknowledging that plats containing 442 residential units have been approved to date); Dev. Mot. at 22 (same).  It is undisputed that the County's finding of SELV in default of the Agreement halted development of the project.  <u>See</u> County Mot. at 15–

---

[16]  SELV's first and second affirmative defenses, claiming that it (1) did not accept obligations under the assignment and thus cannot be liable for any breaches of the Agreement; and (2) lacks privity with the County, are thus rejected.  <u>See</u> [SELV's] Answer & Affirm Defs. [SACC] at 5–9, Jan. 17, 2024, ECF No. 34 ("SELV Answer").
[17]  Neither party disputes the validity of the assignment, as it satisfied the parameters of the Agreement: SEDP, as the assignor, expressly "s[old], assign[ed], transfer[ed], convey[ed] and allocate[d]" its "present and future rights" relating to the Grand Oaks PUD to SELV, the assignee; and the County acknowledged receipt of a copy of the assigning instrument on October 3, 2018.  Assignment at 1–4; County Mot. at 10–11; Dev. Mot. at 8.

**OPINION AND ORDER - 17**

23; Dev. Mot. at 20–22; Dev. Resp. at 3–7. Thus, the County's interpretation of the Agreement, and subsequent finding of default against SELV, is at odds with SELV's ability to complete its contractual obligations as SELV understands those obligations. Finally, the relief SELV seeks would allow it to complete construction by declaring its interpretation of the Agreement valid and the County's finding of default invalid under the Agreement. Am. Compl. at ¶¶ 57, 64, 77. Accordingly, SELV has standing to bring Counts I and II and the Court need not address whether SEDP would have standing for Counts I and II.[18]

## B. The Agreement

The Agreement states:

> At the time [SELV] achieves Commencement, [SELV] may apply to the County for a release of the Escrow Funds to [SELV], which [SELV] shall then have the right to use for payment of all Pre-Construction Costs, Permits Costs and costs related to construction of the SR 16 Improvements[]. [SELV] understands that the Escrow Funds shall not be sufficient to pay the Estimated Total Cost of the SR 16 Improvements and [SELV] agrees that it shall pay all costs for the SR 16 Improvements which are in excess of the Escrow Funds.

Agr. at § 4e(vi).[19] Thus, the Agreement requires SELV to pay all costs for SR 16 Improvements.

As explained above, the Agreement defines the term "SR 16 Improvements" to mean SELV's duty to "widen an approximately three (3) mile-segment of State Road

---

[18] "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." Rumsfeld v. Forum for Acad. & Institutional Rights, Inc., 547 U.S. 47, 53 (2006).

[19] The Agreement defines "Commencement" as "[SELV] posting a bond for the SR 16 Improvements with FDOT in a form and amount to be determined by FDOT by separate agreement or approval with the [SELV] for same." Agr. at § 4e(v).

3:23-cv-00846-CRK-PDB

16 between San Giacomo Road and the eastern entrance into [the Grand Oaks PUD] from two (2) lanes to four (4) lanes, in the location depicted in Exhibit C attached hereto and incorporated herein by this reference." Agr. at § 4d. Exhibit C contains a note explaining that the itemized estimated costs for the total SR 16 Improvements "may vary with actual design and the cost of material at the time of construction." Agr. at Exh. C.

The Agreement envisions that Escrow Funds will be used to construct the SR 16 Improvements, but that those Escrow Funds will be insufficient. The Agreement explicitly acknowledges that "[SELV] understands that the Escrow Funds shall not be sufficient to pay the Estimated Total Cost" and then adds that "[SELV] agrees that it shall pay all costs for the SR 16 Improvements which are in excess of the Escrow Funds." Agr. at § 4e(vi). The Agreement does not require SELV to pay the difference between the amount of the Escrow Funds and the Estimated Total Cost,[20] but rather it requires SELV to pay the difference between the amount in the Escrow Funds and "all costs for the SR 16 Improvements." Id.[21] Accordingly, the Agreement requires that SELV pay for the entirety of the SR 16 Improvements.

---

[20] As the total residential units within the Grand Oaks PUD was capped at 999 units, approval of all residential plats would yield a total Per Unit Payment sum of $13,395,000.00 as Escrow Funds, with $1,590,000.00 paid for approval of the first 212 units, and $11,805,000.00 paid for approval of the remaining units. See Agr. at § 3 (explaining that the total residential units would reach a maximum of 999 units). Thus, the Agreement recognizes that the money held Escrow Funds would be insufficient to pay the total estimated cost for the SR 16 Improvements.
[21] Although SELV's Analyst predicted the SR 16 Improvements would total $15,013,392.49, Exhibit C explicitly contemplates that the estimate could vary. See Agr. at §§ 4d, 16, Exh. C.

OPINION AND ORDER - 19

3:23-cv-00846-CRK-PDB

SELV argues that there is an implied limitation to the maximum amount it might be required to pay for the SR 16 Improvements.  <u>See</u> Dev. Resp. at 3–7.  It first argues that the itemized list of estimated costs, incorporated into the Agreement through Exhibit C, and that the definition of the SR 16 Improvements, stating that the costs are "based upon the written estimate and preliminary design" of SELV's Analyst, supports the reading that SELV need only pay the difference between the Escrow Funds and the estimated total cost of $15,013,392.49.  <u>Id.</u> at 3–5.  However, SELV's argument elides the plain language in the Agreement that it shall pay "all costs for the SR 16 Improvements."  SELV's argument also ignores Exhibit C's admonition that the costs "may vary with actual design and the cost of material at the time of construction."  <u>See</u> Agr. at Exh. C.  Although SELV is correct that the projected cost was estimated to be just over $15 million, the provision it references to support its interpretation expressly states that the ultimate costs of the SR 16 Improvements was subject to change from the estimates contained in the Agreement. <u>See</u> <u>id.</u>

SELV attempts to circumvent this language by arguing that its duty to pay the SR 16 Improvements is limited "to the scope of work contained in Exhibit C."[22]  Dev. Resp. at 5–6.  The additional requirements imposed by the FDOT, after SELV's Analyst prepared the construction estimates, is therefore "beyond the scope of Exhibit

_____

[22] In response to the County's motion, SEDP argues that the County's interpretation of the Agreement would require the Court to add the words "without cost limitation." Dev. Resp. at 3.  The Court disagrees.  The Agreement explains that SEDP agrees to pay "all costs" for the SR 16 Improvements.  Agr. at § 4e(vi).

**OPINION AND ORDER - 20**

3:23-cv-00846-CRK-PDB

C" and consequently any funding obligations under the Agreement.  See id.  But no language in the Agreement supports reading in such a distinction.  To the contrary, the costs in Exhibit C explicitly refer to "SR 16 Improvements," comprised of "adding two lanes in one direction" of SR 16.  See Agr. at §§ 4d, 16, Exh. C.  Nothing in either Exhibit C or the definitions of the Agreement condition or limit SELV's obligation to fund the SR 16 Improvements to certain portions, phases, or particular designs of the construction.  That FDOT required additions to the final design for the SR 16 Improvements does not affect SELV's obligations as the Agreement requires SELV pay for "all costs" for the SR 16 Improvements exceeding monies in the Escrow Fund, and that the engineer's estimates are subject to variance at the time of construction.[23] Accordingly, the County's motion for summary judgment on its claim for declaratory relief is granted and the SELV's motion for summary judgment on the County's motion for declaratory relief is denied.

---

[23]   Assuming arguendo that SELV's interpretation of its obligations under the Agreement is a reasonable alternative to the County's, the County argues parol evidence supports its interpretation.  See County Mot. at 22–23; County Resp. at 3; County Reply at 3.  For example, the County's staff report to the BOCC, shared with SEDP, describes SEDP's duty to construct the SR 16 Improvements "regardless of cost."  See Staff Rep. at 4. SEDP made no objection to the report.  See Exh. 7–8: Dep. of Ellen Avery-Smith at 101:23–04:22, Mar. 27, 2024, ECF No. 42-12–13 ("Avery-Smith Dep.").  At the BOCC approval meeting, counsel for SEDP and SELV the improvements would be completed at "the developer's risk," even if the total construction amount rose by $5,000,000.00.  See Tr. [BOCC] Meeting [On July 17, 2018] at 32:22–33:2, July 17, 2018, ECF No. 42–22 ("BOCC Meeting Minutes").  SELV offers no response to the County's parol evidence.  However, in light of the plain meaning of the terms of the Agreement, resort to parol evidence is unnecessary.

OPINION AND ORDER - 21

### C.    SELV's Breach and the County's Default Determination

The County alleges SELV breached the contract by failing to adhere to the material obligations under the Agreement and moves for summary judgment in its favor.  See County Mot. at 35–36.  SELV seeks summary judgment on its challenge to the County's default finding that SELV's failed to "honor the contractual commitments" to complete the SR 16 Improvements.  Dev. Mot. at 20, 23.  SELV alleges that the finding was "erroneous, improper, and illegal" because the deadlines under the Agreement were tolled due to various executive orders declaring states of emergency, and alternatively that the County waived its claims for any breaches by SELV.  Id. At 4; id. At 25–28.    The undisputed facts establish SELV breached the Agreement and therefore the Court grants the County summary judgment on Counts I and II in the amended complaint and Counts I and II in the SACC and denies SELV motion with respect to those claims.

Under Florida Law, a breach of contract claim requires a party to establish (1) that a contract existed; (2) which was materially breached; and (3) that damages flowed from that breach.  Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009); Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1313 (11th Cir. 2019); see also In re Standard Jury Instructions—Contract & Bus. Cases, 116 So. 3d 284, 306 (Fla. 2013) ("An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages").[24]  A breach is

---

[24]  SELV contends that "materiality" is not an element of breach of contract under Florida law.  Dev. Resp. at 9.  The Supreme Court of Florida, however, has declared

3:23-cv-00846-CRK-PDB

material if a party's failure to perform goes "to the essence of the contract."
Marchisio, 919 F.3d at 1313 (citing Sublime, Inc. v. Boardman's Inc., 849 So.2d 470,
471 (Fla. Dist. Ct. App. 2003)). An essential, or material, term is "[a] contractual
provision dealing with a significant issue such as subject matter, price, payment,
quantity, quality, duration, or the work to be done." See Material Term, Black's Law
Dictionary (11th ed. 2019); Term, Black's Law Dictionary (11th ed. 2019); see also
United States Doe v. Health First, Inc., No. 614-CV-501-ORL-37DCI, 2017 WL
1929700, at *4 (M.D. Fla. May 10, 2017) (citing unaltered definitions in the 9th edition
of Black's Law Dictionary). As a corollary, the failure to perform some minor aspect
or term of an agreement is not a material breach. See Covelli Fam., L.P. v. ABG5
L.L.C., 977 So.2d 749, 752 (Fla. Dist. Ct. App. 2008). Where one party to a contract
materially breaches the contract's terms, the non-breaching party is excused from
performance. Hamilton v. Suntrust Mort. Inc., 6 F. Supp 3d 1300, 1309 (S.D. Fla.
2014) (citing Indemnity Ins. Corp. of DC. V. Caylao, 130 So.3d 783, 786 (Fla. Dist. Ct.
App. 2014)).

Here, the undisputed facts establish that SELV breached the Agreement by
failing to satisfy certain material terms within the timeframe to which it was
contractually bound. Section 4d(ii) of the Agreement requires that SELV complete

---

that it is an element for an adequately pled breach of contract action, evinced in its
standard jury instructions in 2013. See In re Standard Jury Instructions, 116 So.3d
at 306; id. at 287 ("This Court is confident that these forms of instructions, as
recommended by the Committee, state as accurately and correctly as a group of
experienced lawyers and judges could state the substantive law of Florida in language
understandable by jurors").

**OPINION AND ORDER - 23**

3:23-cv-00846-CRK-PDB

Pond Acquisition—the acquisition of the offsite drainage ponds—and Road Design—coordination with FDOT to design the SR 16 Improvements—at the earlier of either: (1) fourteen months after the Agreement went into effect, which was November 21, 2019, or (2) the BOCC's approval of the 443rd unit in the Development.  Agr. at § 4d(ii).  The parties do not dispute that neither the Pond Acquisition nor the Road Design had been satisfied within the timeframe provided by the Agreement.  See County Mot. at 35–36; Dev. Mot. at 24.  Thus, SELV breached the agreement.

SELV argues that the presence of five separate states of emergency in Florida, existing either at the time the of the Agreement or declared during performance, tolled the Pond Acquisition and Road Design deadlines until September 29, 2024, under Fla. Stat. § 252.363 through the notices sent to the County by SELV.  See Dev. Mot. at 25–28; see also Exhs. 1A–1JJ, Apr. 26, 2024, ECF Nos. 46-1–46-36 ("EOs"); EO Ext. Nots. (conveying intent to exercise tolling for the Opioid Epidemic, expiring April 1, 2019; Hurricane Maria, expiring December 16, 2018; Hurricane Florence, expiring on November 13, 2018; Hurricane Dorian, expiring June 16, 2020; and Covid-19 pandemic expiring on June 16, 2021).  The County responds that Fla. Stat. § 252.363 did not apply to the Agreement and that SELV's notices were deficient under the statute.  County Resp. at 4–7.

At the time of the Agreement,[25] Fla. Stat. § 252.363 read, in pertinent part:

---

[25] Because the 2018 version of Fla. Stat. § 252.363 was in effect at formation of the Agreement, the 2018 version applies.  See Fla. Beverage Corp. v. Div. of Alcoholic Beverages & Tobacco, 503 So.2d 396, 398 (Fla. Dist. Ct. App. 1987); see also Shavers v. Duval Cnty., 73 So.2d 684, 689 (Fla. 1954).

OPINION AND ORDER - 24

3:23-cv-00846-CRK-PDB

> (1)(a) The declaration of a state of emergency by the Governor tolls the period remaining to exercise the rights under a permit or other authorization for the duration of the emergency declaration. Further, the emergency declaration extends the period remaining to exercise the rights under a permit or other authorization for 6 months in addition to the tolled period. This paragraph applies to the following:
>
>> 1. The expiration of a development order issued by a local government.[26] . . .
>
> (b) Within 90 days after the termination of the emergency declaration, the holder of the permit or other authorization shall notify the issuing authority of the intent to exercise the tolling and extension granted under paragraph (a). The notice must be in writing and identify the specific permit or other authorization qualifying for extension.

Fla. Stat. § 252.363(1)(a)–(b) (2018). The term "development order" is defined under the Florida statutes as "any order granting, denying, or granting with conditions an application for a development permit." Fla. Stat. § 163.3164(15) (2018). A "development permit" is similarly defined under the same statute as "any building permit, zoning permit, subdivision approval, rezoning, certification, special exception, variance, or any other official action of local government having the effect of permitting the development land." Fla. Stat. § 163.3164(16) (2018).

Here, no toll applies because the 2018 version of Fla. Stat. § 252.363 does not apply to the Agreement. See Fla. Beverage Corp., 503 So.2d at 398 ("The laws in force at the time of the making of a contract enter into and form a part of the contract

---

[26] In 2021, the Florida legislature amended Subsection (1)(a) to apply to two additional items, including "[t]he expiration of a development permit or development agreement authorized by Florida Statutes, including those authorized under the Florida Local Government Development Agreement Act, or issues by a local government or other governmental agency." See Fla. Stat. § 252.363(1)(a)(6) (2021); see also S.B. 912, 2021 Leg., 123rd Sess. (Fla. 2021).

**OPINION AND ORDER - 25**

as if they were expressly incorporated into it").[27]  Nothing in the Agreement indicates that it functions as a permit or development order.  To the contrary, Section 6a limits the scope of the Agreement to serve "as a basis for granting traffic or transportation concurrency and public facilities concurrency" for the Grand Oaks PUD but does not "expressly or impliedly relieve[] any party to this Agreement of the obligation to secure any and all other state, federal, and local permits necessary to authorize" construction of the project.  Agr. at § 6a.  Indeed, Section 9 explicitly states that SELV "acknowledges its obligation to obtain all necessary local development permits which may be needed for the Grand Oaks PUD", indicating that the Agreement itself is not an order as envisioned by § 252.363.  See Agr. at § 9.[28]

---

[27]  The parties dispute the precise classification of the Agreement as relevant to the text of Fla. Stat. § 252.363.  Compare County. Resp. at 5–6 (classifying the Agreement as a "development agreement"), with Dev. Reply at 2–5 (classifying the Agreement as a "proportionate share agreement pursuant to Section 163.3180").  The precise classification of the Agreement here does not affect the Court's determination, as the Agreement is not a permit regardless of what it is called, and therefore does not fall within the tolling statute.  SEDP's argument that Fla. Stat. § 252.363 extends mitigation efforts connected to a construction effort authorized by permit is inapposite when, as here, there is no permit.  See Fla. Stat. § 252.363(c); Dev. Reply at 5–6.

[28]  Even if Fla. Stat. § 252.363 applied, the notices provided by SELV were facially deficient.  The statute requires that any notice of tolling "be in writing and identify the specific permit or other authorization qualifying for extension."  Fla. Stat. § 252.363(1)(b).  Apart from the Agreement itself not operating as a permit for the development of the Property, no specific permits were identified by the notices in the EO extension notices, as it is undisputed that no permits had been acquired for the relevant Pond Acquisition or Road Design sought to be extended.  County Mot. at 35–36; Dev. Mot. at 31.  A concurrency agreement is an agreement to proceed in a particular manner, i.e., to provide facilities concurrent with development.  It is not a development order or a permit authorizing construction.  Thus, mere reference to the Agreement in SELV's tolling notices is insufficient to satisfy the requirements of the tolling statute.  See Fla. Stat § 252.363(1)(b) ("The notice must be in writing and identify the specific permit or other authorization qualifying for extension").

Alternatively, SELV claims that the County waived any claims for breach of the Agreement because it continued performance under the contract despite such breach.[29]  Dev. Mot. at 28–31.  The County responds that it did not waive its ability to claim breach.  County Resp. at 7–9.  Essential to waiver of a contractual right is the existence, at the time of the waiver, of the right which may be waived; knowledge of that right; and the intent to relinquish such right.  Arbogast v. Bryan, 393 So.2d 606, 608 (Fla. Dist. Ct. App. 1981).  Florida contract law recognizes implied waiver of legal rights, the crux of which rests on "actions or conduct warranting an inference that a known right has been relinquished."  Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc., 601 F.3d 1159, 1181 (11th Cir. 2010) (citing Hammond v. DSY Developers, LLC, 951 So.2d 985, 988 (Fla. Dist. Ct. App. 2007)); Ferry–Morse Seed Co. v. Hitchcock, 426 So.2d 958, 962 (Fla. 1983).  Waiver may be inferred from conduct.  Arbogast, 393 So.2d at 608; Sacred Heart, 601 F.3d at 1181; see also Acosta v. Dist. Bd. Of Trs. Of Miami-Dade Cmty. Coll., 905 So.2d 226, 229 (Fl. Dist. Ct. App. 2005) (noting where a party fails to declare a breach and continues to perform it may be deemed to have waived its rights).  However, waiver must be demonstrated by conduct, acts, or circumstances that make out "a clear case," and may not be inferred from ambiguous or doubtful circumstances.  See Multiquimica Dominicana v. Chemo Int'l, Inc., 707 F. App'x 692, 695 (11th Cir. 2017); Fireman's Fund Ins. Co. v. Vogel,

---

[29] Both SEDP and SELV assert waiver as an affirmative defense on the same grounds as their motion in their respective answers to the SACC.  See [SEDP's] Answer & Affirm. Defs. [SACC] at 7–8, Jan. 17, 2024, ECF No. 35 ("SEDP Answer"); SELV Answer at 7.

3:23-cv-00846-CRK-PDB

195 So.2d 20, 24 (Fla. Dist. Ct. App. 1967). "Mere delay is insufficient to support waiver." Smith v. Carlton, 348 So.3d 52, 57 (Fla. Dist. Ct. App. 2022).

SELV's waiver argument is unavailing. SELV fails to allege conduct from which a jury could conclude that the County waived its rights to enforce the Pond Acquisition and Road Design deadlines. See Multiquimica, 707 F. App'x at 696; Vogel, 195 So.2d at 24. SELV points to the County's engagement with SELV concerning the proposed amendment to the Agreement, after the Pond Acquisition and Road Design deadlines had passed, as evidence of waiving its right to enforce such deadlines. Dev. Mot. at 30. The County's and SELV's post deadline meetings and communications did not pertain to SELV's obligations to commence and complete Pond Acquisition or Road Design and thus cannot serve as a basis to infer the County relinquished its ability to respond to such failures. See Arbogast, 393 So.2d at 608 (requiring an intent to relinquish the specific rights at issue); Naples Ests. Ltd. P'ship v. Muston, 327 So. 3d 419, 423 (Fla. Dist. Ct. App. 2021) (finding no waiver where party's actions did not convey intent to waive specific right under contract). Indeed, SELV offers no pronouncements by the County that demonstrate a waiver of its right to enforce the deadlines of the Agreement. See Air Prod. & Chems., Inc. v. Louisiana Land & Expl. Co., 867 F.2d 1376, 1379–80 (11th Cir. 1989) (rejecting claim of waiver without oral or written pronouncements evincing intentional or voluntary waiver of rights).[30]

_____

[30] SELV claims that the County's acceptance of the Per Unit Payments "under the guise of performing pursuant to the Agreement" constitutes waiver. Dev. Mot. at 30–

3:23-cv-00846-CRK-PDB

Moreover, the County's delay in exercising its ability to find SELV in default does not constitute waiver of its right to do so.  See Air Prod. & Chems., 867 F.2d at 1379–80.  The County's delay in declaring a default does not illustrate a conclusive waiver of its right to claim that SELV breached the Agreement.  See, e.g., Air Prod. & Chems., 867 F.2d at 1380 (finding no clear waiver after five-year delay); Mercede v. Mercede Park Italian Restaurant, Inc., 392 So.2d 997 (Fla. Dist. Ct. App. 1981) (finding no waiver after ten-month delay); Goodwin v. Blu Murray Ins. Agency, Inc., 939 So. 2d 1098, 1104 (Fla. Dist. Ct. App. 2006) (finding delay of four-years did not amount to clear case of waiver).  Accordingly, SELV's motion for summary judgment on its challenge to the County's default finding is denied, and the County's motion for summary judgment is granted.[31]

---

31. SELV implies that the County impermissibly took advantage of the Agreement's benefits and then stopped performance.  See id. at 30 (citing Burger King Corp. v. Hinton, Inc., 203 F. Supp. 2d 1357, 1365 (S.D. Fla. 2002)).  SELV's argument is unpersuasive, because the acceptance of the Per Unit Payments—held in a separate account by the County and earmarked for SELV's use in the SR 16 Improvements— is not a benefit received by the County.  Rather, the terms of the Agreement instruct that the Per Unit Payments be used by SELV to aid it in satisfying its contractual obligations.  Both SEDP and SELV's affirmative defenses that the County accepted the benefit of the Agreement are rejected.  See SEDP Answer at 8; SELV Answer at 9.  Even if the County waived claims for breach of the Pond Acquisition and Road Design deadlines, it is undisputed that SELV further breached the Agreement when it halted the SR 16 design work in July of 2022 after the County accepted the Per Unit Payments in May of 2022.  See Hyatt Dep. at 88:7–90:5; Exh. 11: Dep. Christine Valliere at 102:6–22; 236:7–15, Mar. 26, 2024, ECF No. 48-13 ("Valliere Dep."); County Mot. at 16; County Resp. at 8; Dev. Mot. at 17, 30 n.12, 30–31.

[31]  In their answers to the SACC, SEDP and SELV assert numerous affirmative defenses, including: unclean hands; anticipatory repudiation; frustration of purpose; estoppel; impossibility; ongoing discovery; election of sole remedy; and anticipatory breach.  See SEDP Answer at 5–9; SELV Answer at 5–9.  However, SEDP and SELV failed to raise or expound upon these defenses in their motion, response, or reply

**OPINION AND ORDER - 29**

### D.    The County's Alleged Breach

SELV contends that the County breached the Agreement by: (1) not adopting "the SR 16 Improvements into its Five-year Schedule of Capital Improvements in the [CIE] of its Comprehensive Plan 'at the next scheduled update"; (2) failing to properly account for and maintain the Per Unit Payments; (3) finding SELV in default and directing the funds in the escrow account to be paid to the FDOT; and (4) failing to cooperate with SELV to effectuate the terms of the Agreement, as required by Paragraph 22 of the Agreement.  Dev. Mot. at 33.  SELV moves for summary judgment on the first three assertions.  Id. at 1–2, 33.[32]  The County rejects SELV's characterization that it has breached the Agreement, and that even if any breach occurred, it was not material.  County Mot. at 9–14.  The County moves for summary judgment on all four of SELV's allegations of breach.  Id. at 1–2, 29–35.

The County is entitled to summary judgment.  First, SELV offers no evidence from which a reasonable finder of fact could conclude that the County breached the Agreement by failing to adopt the SR 16 Improvements into the Capital

---

briefs before the Court, and have therefore abandoned defenses.  See generally Dev. Mot.; Dev. Resp.; Dev. Reply; see also Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); MSC Trading, S.A. v. Delgado, No. 22-20075-CV, 2024 WL 3103942, at *6 (S.D. Fla. May 20, 2024) (applying abandonment reasoning in Dunmar Corp. to affirmative defenses not raised in summary judgment briefing), report and recommendation adopted, No. 1:22-CV-20075-DPG, 2024 WL 3564585 (S.D. Fla. July 29, 2024).

[32] SELV does not move for summary judgment on its claim that the County failed to cooperate with SELV to effectuate the terms of the Agreement because it believes there to be "disputed issue of material fact."  See Dev. Mot. at 33 n.14.

**OPINION AND ORDER – 30**

3:23-cv-00846-CRK-PDB

Improvements Schedule.  The County's obligation under Section 6c of the Agreement requires:

> The County will adopt [SELV's] Transportation Contribution . . . into the County's Five-Year Schedule of Capital Improvements in the County's [CIE] of its Comprehensive Plan at the next scheduled update.

Agr. at § 6c.  Although implementation of the CIE "must be reviewed by the local government on an annual basis" under Fla. Stat. § 163.3177, SELV fails to support its conclusory allegation that the County breached this term by pointing to any specific instance where the County had an opportunity to adopt the items into its Comprehensive Plan but refused.  See generally County Mot.; County Resp.; County Reply.  Indeed, SELV fails to provide any evidence that might refute the County's contention that the Five-Year Schedule of Capital Improvements has not been updated since the Agreement was approved.  See County Resp. at 9 (first citing Exh. 4: Dep. Richard "Dick" D'Souza at 188:1–192:2, Mar. 12, 2024, ECF No. 48-6; and then citing Valliere Dep. at 124:15–126:3).  Nor has SELV supported a showing that the County must adopt the SR 16 Improvements at the annual review of the CIE under Section 163.3177.  To the contrary, the term of the Agreement does not specify when such adoption must occur.  See Agr. at § 6c.[33]

---

[33] Even if the County were required to adhere to the terms of Section 6c at the annual review of the CIE, its failure to do so here would not be a material breach.  The requirement does not amount to an essential element of the Agreement, as it does not pertain to "subject matter, price, payment, quantity, quality, duration, or the work to be done."  See Material Term, Black's Law Dictionary (11th ed. 2019); Term, Black's Law Dictionary (11th ed. 2019).  Rather, the terms concern a minor aspect of the Agreement, a breach of which is insufficient to excuse performance.  See Covelli Fam., 977 So.2d at 752.

**OPINION AND ORDER - 31**

3:23-cv-00846-CRK-PDB

Second, SELV claims the County breached the Agreement by "failing to properly account for the Per Unit Payments and failing to maintain a separate escrow account." <u>See</u> Dev. Mot. at 35–37. Under Section 4e(iv) of the Agreement, the County must "hold the aggregate Per Unit Payments[] in a separate escrow account[] to be used only for the SR 16 Improvements." Agr. at § 4e(iv). SELV's arguments rests on its assumption that the account holding the Per Unit Payments must operate as an escrow account as defined under Florida law. <u>See</u> Dev. Mot. at 35–36; <u>see, e.g.</u>, <u>Carl v. Republic Sec. Bank</u>, 282 F. Supp. 2d 1358, 1367 (S.D. Fla. 2003) (noting under that Florida law, money held in escrow requires specific parameters, including a third party that holds the funds); <u>IberiaBank v. Coconut 41, LLC</u>, 984 F. Supp. 2d 1283, 1307 (M.D. Fla. 2013), <u>aff'd</u>, 589 F. App'x 479 (11th Cir. 2014). However, the term "Escrow Account" is a defined term under the Agreement, meaning a separate account where the "Escrow Funds"—i.e. "the aggregate Per Unit Payments"—are kept. Agr. at § 4e(iv)(b). The reference to "a separate escrow account" contained within § 4e(iv)(b) refers to the Escrow Account as defined by the agreement.

It is undisputed that the monies contained in the Escrow Account were indeed kept separate from other monies. Thus, SELV's reliance upon statements in Mr. Dunn's deposition, which it maintains show that the Per Unit Payments were commingled with funds unrelated to the Grand Oaks PUD fails. Dev. Mot. at 35 (citing Dunn Dep. at 67:10-19); Dev. Resp. at 11–12. The deposition establishes, and there is no dispute, that the County isolated the Per Unit Payments in a separate account, numbered "20502016," within the County's "Transportation Trust Fund," as

3:23-cv-00846-CRK-PDB

required under the Florida statutes.  See Dunn Dep. at 18:5–20:7; Schroeder Dep. at 19:22–20:22, 24:22–28:4, 29:18–31:17; see also Fla. Stat. § 218.33 (establishing uniform fiscal years and accounting practices and procedures); Fla. Stat. § 336.022 (requiring that all funds received by a county for transportation shall be deposited into a single transportation trust fund containing "a uniform accounts classification system").  The funds held in account number 20502016 were earmarked only for funding the SR 16 Improvements, and no other funds for any other purposes were held within the separate account with the Transportation Trust Fund.  Dunn Dep. at 19:24–20:7, 67:10-19; Schroeder Dep. at 19:22–20:22, 24:22–28:4, 45:4–46:11, 55:18–58:21, 60:13–61:24, 100:18–101:20.  SELV offers no evidence that the funds were commingled or used for expenditures unrelated to the Grand Oaks PUD apart from speculative and conclusory allegations.[34]  See, e.g., Dev. Mot. at 35–37.  Accordingly, SELV has failed to raise a dispute of the material fact that the Per Unit Payments were not held in accordance with Section 4e(iv) of the Agreement and the Florida Statutes.  See Agr. at § 4e(iv).[35]

---

[34] SELV invokes statements made by Mr. Dunn in his deposition that no reasonable juror could conclude support its argument that Per Unit Payments were commingled with funds from other sources.  Dev. Mot. at 35.  The deposition testimony reveals that the account that SELV believes was subject to commingling was not account number 20502016, but rather a larger fund within the Transportation Trust Fund.  See Dunn Dep. 65:19–66:22, 67:10–19.  SELV points to no other evidence that may suggest any commingling of funds.  Therefore, SELV's characterization of the funds in the account is unsupported, and a reasonable jury could not conclude that SELV raised a material issue of fact on its allegations of breach by the County.

[35] Assuming arguendo that the Agreement required the County to establish an escrow account under Florida law which was held by a third party, the County's failure to do so here would not have been a material breach of the Agreement.  See

3:23-cv-00846-CRK-PDB

Moreover, a jury could not conclude that the County's "failure to properly account for the Per Unit Payments" by misplacing a check materially breached the Agreement. See Dev. Mot. at 35. Although it is undisputed that the County mishandled a check for $2.4 million of the Per Unit Payments, ultimately requiring that the check be reissued nine months later, the money was subsequently recouped and transferred to the requisite separate account, where it presently remains. Dev. Mot. at 36; County Resp. at 13–14. SELV presents no facts and points to no authority that might suggest the mishandling of the check caused damages to SELV. See generally Dev. Mot.; Dev. Resp.; Dev. Reply. Because SELV cannot show damages, a jury could not conclude the County breached the Agreement. See Vega, 564 F.3d at 1272 (requiring damages as an element for breach of contract).

Third, SELV also claims breach for the County "(3) erroneously finding [SELV] in default of the Agreement and directing that funds paid into escrow be disbursed to FDOT." Dev. Mot. at 33. However, as discussed above, the County's default finding

---

Covelli Fam., 977 So.2d at 752; see also See Burlington & Rockenbach, P.A. v. L. Offs. of E. Clay Parker, 160 So. 3d 955 (Fla. Dist. Ct. App. 2015) (articulating an interpretive disagreement over contract language not a material breach of the contract where disagreeing party performed its obligations); American Fire & Casualty Co. v. Collura, 163 So.2d 784, 793-794 (Fla. 2d DCA 1964) (the failure of an insured to make demand upon the insurer to defend him in a negligence action, and to furnish the insurer with copies of the pleadings served upon him, was a immaterial breach because the insurer had timely received the required copies from plaintiff's attorney, in the negligence action); Covelli Fam., 977 So. 2d at 752 (Fla. Dist. Ct. App. 2008) (landlord committed an immaterial breach when landlord failed to obtain an estimate from an independent contractor prior to sending a notice of termination in violation of the notice provision of the lease because sending the notice of termination did not go to the essence of the contract); Vasilevskiy v. Wachovia Bank, Nat. Ass'n, 171 So. 3d 192 (Fla. Dist. Ct. App. 2015) (mortgage default notice to appellants with a specified cure date of only twenty-eight instead of thirty days' notice).

**OPINION AND ORDER - 34**

and direction of the Per Unit Payments was in accordance with its rights under the Agreement, and summary judgment is entered for the County on this claim.

Lastly, the County moves for summary judgment on SELV's claim for breach because the County failed "to cooperate with [SELV] to effectuate the terms of the Agreement and fail[ed] to coordinate the performance of respective obligations under the Agreement, as required by [Section 22] of the Agreement." County Mot. at 34–35; see Dev. Mot. at 33. Here, the undisputed facts show that SELV breached the Agreement, as discussed above, and further that the County engaged with SELV concerning its proposed amendment to the Agreement. See County Mot. at 15–20; Dev. Mot. at 15–20. SELV fails to properly respond to the County's assertion of fact that it cooperated with SELV to effectuate the terms of the Agreement in response to the County's motion. See generally Dev. Mot.; Dev. Resp.; Dev. Reply; see also County Mot. at 15–18, 34–35. Thus, the Court enters summary judgment in the County's favor on Count I and II in the amended complaint, as well as Counts I in the SACC; the Court declines to enter judgment for the County's alternative prayer for relief in Count II.[36]

### E.   Relief

The County requests final judgment in its favor, seeking declaration of various rights, authorities, and remedies under the Agreement under 28 U.S.C. § 2201 and

---

[36] Because the County did not breach the Agreement, SEDP and SELV's affirmative defenses that the County breached the Agreement and that the County "was not ready, willing, and able to perform under the Agreement" are rejected. See SEDP Answer at 5–6; SELV Answer at 8–9.

**3:23-cv-00846-CRK-PDB**

Federal Rule of Civil Procedure 57.  See County Mot. at 48; see also SACC at ¶ 9

(asserting jurisdiction under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57); id. at ¶¶ 39, 42.

Under Count I of the SACC, the County seeks a final judgment declaring that: (1)

"under the Agreement, [SELV] is obligated to pay all costs for the SR 16

Improvements; (2) and [SELV] breached the Agreement by failing to comply with the

Conditions of the Agreement."  SACC at ¶ 39A.  Second, the County requests that the

judgment declare that it may exercise its authority as follows:

> (3) to halt approval of additional plats or construction plans within the
> Property until and unless [SELV] complies with the conditions of
> Section 4 and 5 of the Agreement or some other entity constructs the
> SR 16 Improvements; and
> (4) that the Per Unit Payments paid for units at the Property to date
> shall become non-refundable to [SELV] and the County may use such
> Payments to reimburse the advance of funds paid to FDOT for the
> work on the SR 16 Improvements or construct a portion of the SR 16
> Improvements or another road improvement within the project
> impact area with such funds; and
> (5) require [SELV] to assign the Road Design documents and any
> Permits to the County, free of charge.

Id. at ¶ 39B.  Finally, the County requests (6) that it be awarded all costs incurred in

the action, and (7) "other and further relief as the Court deems just and proper."  Id.

at ¶ 39B–D.[37]

---

[37] As an alternative remedy to Count I, the County requests declaratory judgment
for Count II in the form of specific performance of the Agreement as follows:

> (1) To enter a Final Judgment determining and declaring that [SELV]
> is in breach of the Agreement by its failure to comply with the
> Conditions of the Agreement;
> (2) That [SELV] shall specifically perform its obligations under the
> Agreement and comply with the Conditions of the Agreement, and

**OPINION AND ORDER - 36**

3:23-cv-00846-CRK-PDB

Declaratory relief under the Federal Declaratory Judgment Act permits the Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The procedure for obtaining a judgment declaring the rights and legal relations of the interested parties to an action is governed by the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 57.  That another adequate remedy may exist does not foreclose declaratory judgment that is otherwise appropriate, as the powers conferred to the Court by the Act are discretionary in nature.  Id.; see Drummond Coal Sales Inc. v. Kinder Morgan Operating LP "C", 836 F. App'x 857, 869 (11th Cir. 2021); Gold-Fogel v. Fogel, 16 F.4th 790, 797 (11th Cir. 2021).  When determining whether declaratory relief is appropriate, considerations for the Court include "whether a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and whether it will terminate and afford relief from the

---

that compliance with the Conditions of the Agreement shall be completed within the parameters contained within the Agreement;
(3) That the County may hold in abeyance plat or other Development approvals unless and until the SR 16 Improvements are commenced and completed in accordance with the terms of the Agreement;
(4) That the County be awarded its costs incurred in this action; and
(5) Such other and further relief as the Court deems just and proper.

SACC at ¶ 42(A)–(E).  Under Florida law, specific performance is a remedy that "can be granted only when '1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it.'"  Invego Auto Parts, Inc. v. Rodriguez, 34 So. 3d 103, 104 (Fla. Dist. Ct. App. 2010) (quoting Castigliano v. O'Connor, 911 So.2d 145, 148 (Fla. Dist. Ct. App. 2005)).  The County has failed to show that specific performance here is warranted.  Moreover, because the Court grants declaratory relief for the County as to Count I, it need not address the County's alternative prayer for relief.

OPINION AND ORDER - 37

uncertainty, insecurity, and controversy giving rise to the proceeding." <u>Nview Health, Inc. v. David V.</u>, No. 8:21-CV-385-VMC-TGW, 2022 WL 16923585, at *15 (M.D. Fla. Nov. 14, 2022) (internal quotations and citations omitted).

Here, as discussed above, the County has established that the Agreement required SELV to construct the SR 16 Improvements and SELV breached the Agreement by failing to comply with its conditions. A declaration of the rights and relations under the Agreement is proper, as it settles the parties' legal relations under the Agreement, and it dispels the uncertainty surrounding the County's capacity to respond to SELV's breach. <u>See Nview Health</u>, 2022 WL 16923585, at *15.

Section 11 of the Agreement provides remedies for breach, namely:

> The County may halt approval of additional plats or construction plans within the Property until and unless the Applicant complies with the terms and conditions of Sections 4 and 5 hereof . . .
>
> In addition to other remedies, if the Applicant defaults hereunder, the Per Unit Payments paid by the Applicant to date shall become non-refundable to the Applicant and shall be used by the County to construct a portion of the SR 16 Improvements or another road improvement within the project impact area. Additionally, the Applicant must assign the Road Design documents and any Permits to the County, free of charge, within thirty (30) days of such default.

Agr. § 11.

Therefore, the County has authority to act pursuant to the terms of Section 11 of the Agreement, in that it may (1) halt approval of additional plats and construction plans within the Grand Oaks PUD until and unless SELV complies with the terms and conditions of Sections 4 and 5 of the Agreement; (2) declare the Per Unit Payments held in the separate account as non-refundable to SELV, which shall be

**OPINION AND ORDER - 38**

3:23-cv-00846-CRK-PDB

used by the County to construct a portion of the SR 16 Improvements or another road improvement within the project impact area; and (3) require SELV to assign the Road Design documents and any Permits to the County, free of charge, within thirty (30) days of the entry of judgment.   Finally, the County, as the prevailing party, is awarded costs incurred in this action other than attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(1).   See Morillo-Cedron v. Dist. Dir. for the U.S. Citizenship & Immigr. Servs., 452 F.3d 1254, 1257 (11th Cir. 2006); Head v. Medford, 62 F.3d 351, 355 (11th Cir. 1995); Doria v. Class Action Servs., LLC, 261 F.R.D. 678, 685 (S.D. Fla. 2009).

## II.   Inverse Condemnation

SEDP and SELV seek summary judgment on their claim for inverse condemnation in Count III of the amended complaint, alleging that the County has "unlawfully taken [SEDP and SELV's] property without just compensation, in violation of Article X, Section 6(a) of the Florida Constitution."   Dev. Mot. at 37–39; Dev. Resp. at 15–16; see also Am. Compl. at ¶¶ 65–69.   The County also moves for summary judgment on this count, arguing that SEDP and SELV lack standing to bring a claim for inverse condemnation and further that there was no unconstitutional taking.   County Mot. at 39–42; County Resp. at 15–17.   Because neither SEDP nor SELV have standing to pursue this claim, the County is entitled to summary judgment in its favor on Count III of the amended complaint, SEDP and SELV's motion for summary judgment for Count III is denied.

A plaintiff has standing by possessing a personal stake in the matter before the Court, consisting of an injury in fact that is fairly traceable to the defendant's actions, and that injury will likely be redressed by a favorable decision from the Court. See All. for Hippocratic Med., 602 U.S. at 379; TransUnion, 594 U.S. at 423; Lujan, 504 U.S. at 560–61. To demonstrate standing under the Takings Clause,[38] the claimant must show "proof of personal injury," described as "the requisite interest in the property at issue and the deprivation thereof by the [government]." Rhodes v. City of Jacksonville, Fla., No. 3:20-CV-665-BJD-MCR, 2022 WL 20538758, at *9 (M.D. Fla. Feb. 1, 2022) (internal quotations and citations omitted), report and recommendation adopted sub nom. Rhodes v. City of Jacksonville, No. 3:20-CV-665-BJD-MCR, 2022 WL 20538756, at *1 (M.D. Fla. Feb. 23, 2022).

A "requisite interest in the property" requires a claimant show ownership of the property in issue at the time of the alleged taking by the government. Radenhausen v. U.S. Coast Guard, No. 3:13-CV-268-J-39JRK, 2014 WL 12629932, at *4 (M.D. Fla. Feb. 13, 2014) (citing Maniere v. United States, 31 Fed. Cl. 410, 420 (Fed. Cl. 1994)); see Manhattan Ave. LLC v. Tampa, No. 8:22-CV-2925-SDM-CPT, 2023 WL 9958391, at *2 (M.D. Fla. May 5, 2023) ("under federal law, '[o]nly the owner of an interest in property at the time of the alleged taking has standing to assert that a taking has occurred" (quoting U.S. Olympic Comm. v. Intelicense Corp., S.A., 737

---

[38] An inverse condemnation claim brought under the Florida Constitution is guided by Fifth Amendment Takings Clause jurisprudence because Florida follows federal takings law.  Chmielewski v. City of St. Pete Beach, 890 F.3d 942, 949, 949 n.3 (11th Cir. 2018) (citing St. Johns River Water Mgmt. Dist. v. Koontz, 77 So.3d 1220, 1226 (Fla. 2011), rev'd on other grounds 570 U.S. 595 (2013)).

F.2d 263, 268 (2d Cir. 1984))).  Prior or subsequent ownership status does not provide grounds for a claimant to seek remedy if no ownership stakes in the property were possessed at the time of the taking.  United States v. Dow, 357 U.S. 17, 22 (1958); see Simon v. Deer Meadows Homeowners' Ass'n, Inc., 277 So.3d 197, 199 (Fla. Dist. Ct. App. 2019) (finding no taking where the claimant came into ownership of subject property after government acts occurred).

Here, neither SEDP nor SELV have standing to bring a claim for inverse condemnation because neither can establish an injury in fact.  Under the Agreement, SELV's right to access the Per Unit Payments only arises on commencement of the SR 16 Improvements and SELV applies to the County for release of the funds.  See Agr. at § 4e(vi).  It is undisputed that neither of these conditions have been satisfied. See County Mot. at 35–36; Dev. Mot. at 24.  Because neither SEDP nor SELV owned the Per Unit Payments when the County directed the funds to FDOT, and they cannot show the requisite interest in or right to the Per Unit Payments at the time of the taking to constitute an injury in fact necessary to confer standing for the claim. See Radenhausen, 2014 WL 12629932, at *4 (finding no taking where claimant had no ownership at time of taking); Manhattan Ave., 2023 WL 9958391, at *2 (same); Simon, 277 So.3d at 199 (same).

SEDP and SELV further contend that they "have a contractual interest in the funds that is clearly laid out in the Agreement," based off the provision governing collection of the Per Unit Payments "in escrow for the benefit of [SEDP or SELV]." Dev. Resp. at 14–15.  SEDP and SELV's claims are unpersuasive.  First, the case

**OPINION AND ORDER - 41**

3:23-cv-00846-CRK-PDB

cited in support of its argument, <u>Pinellas County v. Brown</u>, is distinguishable.  <u>See</u> Dev. Resp. at 14–15 (citing 450 So.2d 240, 242 (Fla. Dist. Ct. App. 1984)).  In <u>Brown</u>, the Court's finding of a taking by the defendant-county was premised on the county's "unreasonable" withholding of consent for an assignment of a contract between the assignor and plaintiff-assignee.  <u>See</u> 450 So.2d at 241–42.  Here, however, as discussed above, the County's default finding—and subsequent direction of the Per Unit Payments to FDOT—was not unreasonable, but rather a valid exercise of its rights under the Agreement.

Second, "[t]he existence of an enforceable contract with a state or local government entity does not give rise to a constitutionally protected property interest" for a takings claim.  <u>See</u> <u>Key W. Harbour Dev. Corp. v. City of Key West</u>, 987 F.2d 723, 728 (11th Cir. 1993); <u>Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trustees</u>, 775 F. App'x 496, 499 (11th Cir. 2019).  The Agreement is undisputedly between SELV and the County, under which the Court has determined neither SEDP nor SELV have any cognizable claims for breach.  Therefore, SEDP and SELV lack standing to bring their claim for inverse condemnation, and therefore the Court denies their motion.  The Court enters summary judgment in favor of the County on Count III of the amended complaint.

## III.   Unlawful Exaction

The County seeks summary judgment on the Developer's fourth count in the amended complaint, alleging unlawful exaction under 42 U.S.C. § 1983, arguing that both SEDP and SELV lack standing and further that there was no violation of any

**OPINION AND ORDER - 42**

3:23-cv-00846-CRK-PDB

Fifth or Fourteenth Amendment rights. <u>See</u> County Mot. at 43–47; County Reply at 7. The Developer responds that it has standing to bring the claim and that the County's request should be denied. Dev. Resp. at 16–18. Although SELV has standing to bring the unlawful exaction claim, the County is nonetheless entitled to summary judgment on Count IV of the amended complaint.

## A.    Standing

The County challenges SEDP and SELV's standing, arguing that they cannot establish standing because there was no injury in fact caused by the County's actions, and further that SEDP's assignment to SELV precludes SEDP's standing individually. County Mot. at 45–47. SEDP and SELV respond that they both have standing because "the County cannot provide a process allowing a 'qualified applicant' to enter into an agreement, but then argue that this qualified applicant does not have standing to challenge the government's actions with respect to such agreement." Dev. Resp. at 17–18.[39]

---

[39] SEDP and SELV rely on <u>Athens Cellular, Inc. v. Oconee Cnty.</u>, 886 F.3d 1094 (11th Cir. 2018) to support their claim that the status of a "qualified applicant" alone confers standing to bring their claim. <u>See</u> Dev. Resp. at 16–18. Apart from reliance on discussion of a peripheral issue before that court addressed only in a footnote, the case is distinguishable because the standing determination stemmed from the specific statute, the Telecommunications Act of 1996, that is not at issue here. Indeed, applying the specific provisions of that statute to the facts of the case, the court in <u>Athens Cellular</u> analogized and explained it had "previously agreed with a district court's determination that a plaintiff had standing to bring its application before a zoning board and had standing to bring a § 332(c)(7)(B)(iii) claim when it obtained a Limited Authorization to Act as Applicant from the property owner," thus warranting standing for the plaintiff before the court. <u>See</u> 886 F.3d at 1097 n.4. Neither the Telecommunications Act of 1996 nor the precise application at issue in that case are currently before the Court, rendering SEDP and SELV's assertions unsound. Regardless, SELV has standing under the traditional three factor test.

**OPINION AND ORDER - 43**

Here, only SELV has standing to bring Count IV in the amended complaint. See Lujan, 504 U.S. at 560 (requiring injury in fact, traceability, and redressability). The Agreement requires SELV to fund the SR 16 Improvements, estimated to cost $15 million, and the undisputed facts show that construction of the Grand Oaks PUD has been halted. See Agr. at § 4d–e; County Mot. at 15; Dev Mot. at 22. SELV claims that the County's actions have impeded its ability to complete development of the project. See Am. Compl. at ¶¶ 73–76. Moreover, SELV's injury would be redressed by a decision in its favor declaring the County's actions in violation of the Fifth and Fourteenth Amendments. Id. at ¶ 77. Thus, SELV has satisfied the requirements of standing for its unlawful exaction claim, and the Court need not address whether SEDP has standing. See Rumsfeld, 547 U.S. at 53.

### B.   Merits

The County argues that there was no violation of Fifth or Fourteenth Amendment because the price increases were outside of the County's control. See County Mot. at 43–47; County Reply at 7. SELV responds that the County's request should be denied because the County imposed monetary exactions that did not bear an essential nexus to a legitimate public purpose. Dev. Resp. at 18–20. The Court enters summary judgment for the County.

Section 1983 of Title 42 requires that any person acting under color of law that subjects any citizen of the United States to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]" 42 U.S.C.

§ 1983.  Where a claim is filed under Section 1983 alleging an unlawful exaction concerning a development permit granted by a government entity, the Court first considers whether an "essential nexus" exists between a "legitimate state interest" and the permit condition exacted by the government.  See Dolan v. City of Tigard, 512 U.S. 374, 386 (1994) (citing Nollan v. California Coastal Comm'n, 483 U.S. 825, 837 (1987)).  Once that nexus is established, the Court "must then decide the required degree of connection between the exactions and the projected impact of the proposed development."  Dolan, 512 U.S. at 386.  Stated simply, the government may "condition approval of a permit on the dedication of property to the public so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal."  Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 605–06 (2013) (synthesizing Nollan and Dolan).

Here, the Court enters summary judgment on Count IV of the amended complaint for the County because SELV fails to raise a dispute of a material fact for the claim.  A finder of fact could not conclude that the County imposed any conditions on SELV that lacked an essential nexus to a public purpose.  It is undisputed that the Agreement mitigates transportation impacts of the development, a legitimate state interest upon which a permit may be conditioned.  See Dolan, 512 U.S. at 387–88 (explaining that attempts to reduce local traffic congestion by a municipality qualifies as a legitimate public purpose); see also County Mot. at 4; Dev. Mot. at 10. The nexus between SELV's obligation to pay for the SR 16 Improvements that directly furthers the County's interest in traffic mitigation is readily apparent.

**OPINION AND ORDER - 45**

SEDP contracted to assume full responsibility for completion of the SR 16 Improvements to satisfy its concurrency requirements despite the availability of alternative avenues to satisfy its mitigation requirements under the County's LDC. See Dep. Phong Nguyen at 89:24–91:19, Mar. 21,2024, ECF No. 42-10; Agr. at § 42-10; see also LDC § 11.09.06A, E ("Proportionate fair share mitigation for concurrency impacts may include, without limitation, separately or collectively, private funds, contributions of land, and construction and contribution of facilities"). SELV does not challenge the lawfulness of the County's ability to impose mitigation requirements nor the mitigation requirements themselves. Dev. Resp. at 7 n.5. That SELV must now abide by the contractual terms to which it agreed does not place it under the ambit of the unconstitutional conditions doctrine. See Edwards, CDS, LLC v. City of Delray Beach, 699 F. App'x 885, 887 (11th Cir. 2017) ("the [unconstitutional conditions] doctrine is implicated when the government approves a land-development project 'on the condition that the applicant turn over property' or denies the project 'because the applicant refuses to do so'" (internal citations omitted)).

Moreover, SELV points to no unconstitutional conditions underlying the alleged exaction. Unlike Nollan, Dolan, and Koontz, SELV's obligation to fund the SR 16 Improvements under the Agreement did not arise as a necessary factor for approval of the Grand Oaks PUD. The County did not condition construction of the Grand Oaks PUD such that SELV was pressured into voluntarily giving up its property: unlike Nollan, the County did not demand an easement on any property already owned by SELV, see, 483 U.S. at 828; unlike Dolan, the County did not

3:23-cv-00846-CRK-PDB

condition approval of the Grand Oaks PUD by requiring that SELV dedicate its property for a public benefit, see 512 U.S. at 380; unlike Koontz, approval of the development was not predicated on an agreement of concessions called for by the County, see 570 U.S. at 601.  Thus, SELV cannot demonstrate a dispute to a material fact that may lead the finder of fact to conclude the County imposed an unconstitutional condition to the terms of the Agreement that were voluntarily offered by SEDP and assumed by SELV.  See Hillcrest Prop., LLP v. Pasco Cnty., 915 F.3d 1292, 1299 (11th Cir. 2019) (stating that a claim under the unconstitutional conditions doctrine must be predicated on "some other enumerated right").  Accordingly, SELV's claim for unlawful exaction fails, and the Court grants the County's motion on Count IV of the amended complaint.

## CONCLUSION

For the foregoing reasons the County's motion for summary judgment, see ECF No. 44, is granted for Counts I, II, III, and IV in the Amended Complaint, and Count I and the SACC.  SEDP and SELV's motion for summary judgment, see ECF No. 47, is denied.  Judgment will enter accordingly.


/s/ Claire R. Kelly
Claire R. Kelly, Judge[*]


Dated:          September 13, 2024
                New York, New York


---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**OPINION AND ORDER - 47**